Mark D. Plevin  (State Bar No. 146278)
PLEVIN & TURNER LLP
580 California Street, Suite 1200
San Francisco, California  94104
Telephone:     (202) 580-6640
Email:          mplevin@plevinturner.com

Miranda H. Turner (admitted *pro hac vice*)          Alexander Potente (State Bar No. 208240)
Jordan A. Hess (admitted *pro hac vice*)             Jason J. Chorley (State Bar No. 263225)
PLEVIN & TURNER LLP                                  CLYDE & CO US LLP
1701 Pennsylvania Avenue, N.W., Suite 200            150 California Street, 15th Floor
Washington, D.C.  20004                              San Francisco, California  94111
Telephone:     (202) 5809-6640                       Telephone:  (415)_365-9800
Email:          mturner@plevinturner.com,            Email:  alex.potente@clydeco.us,
jhess@plevinturner.com                               jason.chorley@clydeco.us

Attorneys for Century Indemnity Company, Pacific
Indemnity Company, and Westchester Fire
Insurance Company

[additional counsel listed in signature blocks below]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO,<br><br>       Debtor and<br>       Debtor in Possession.<br><hr><br>CENTURY INDEMNITY COMPANY, *et al.,*<br><br>       Appellants,<br><br>vs.<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, *et al.,*<br><br>       Appellees. | Case No.  25-cv-08563-WHO<br><br>**INSURERS' MOTION FOR (i) STAY PENDING APPEAL AND (ii) *EMERGENCY* INTERIM STAY TO ALLOW THE COURT TO CONSIDER THE MOTION FOR A STAY PENDING APPEAL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |

# Table of Contents

Page

Insurers' Motion for (i) Stay Pending Appeal and (ii) *Emergency* Interim Stay to Allow the Court to Consider the Motion for a Stay Pending Appeal ....................................4

    Factual and procedural background ...........................................................................4

        The bankruptcy case ...................................................................................4

        The underlying sexual abuse claims against Debtor....................................4

        Debtor's adversary proceeding and the Injunction Motion........................5

        Debtor's Stipulation with the Committee and certain claimants, and the Insurers' opposition thereto .........................................................................5

        The bankruptcy court grants stay relief and approves the Stipulation ....................8

        The bankruptcy court denies the Insurers' stay motion .............................9

        Negotiations between Debtor and the Insurers .........................................11

    Relief requested ........................................................................................12

Memorandum of Points and Authorities in Support.....................................................16

    This Motion is properly filed in this Court at this time....................................16

    Legal standard................................................................................................16

    Argument .......................................................................................................16

    I.     An emergency interim stay is appropriate and necessary here to maintain the *status quo* while this Court determines the merits of the Insurers' motion for a stay pending appeal ............................................17

    II.    The Insurers are likely to succeed on appeal..........................................17

    III.   The Insurers likely will be irreparably injured absent a stay...................24

    IV.   Issuance of a stay pending appeal will not injure any other parties interested in the proceeding..........................................................................26

    V.    Issuance of a stay pending appeal will not harm the general public ....................28

    Conclusion....................................................................................................29

INSURERS' MOTION FOR STAY PENDING APPEAL

1

## Table of Authorities

2

**Page(s)**

3

**Cases**

4

*Alliance for the Wild Rockies v. Cottrell,*
5
    632 F.3d 1127, 1131 (9th Cir. 2011) .......................................................................... 16

6

*Camelot by the Bay Condo. Owners' Assn. v. Scottsdale Ins. Co.,*
    27 Cal. App. 4th 33 (1994) ...................................................................................... 20
7

8

*City of Chicago, Illinois v. Fulton,*
    592 U.S. 154 (2021) ............................................................................................... 27

9

*Elrod v. Oregon Cummins Diesel, Inc.,*
10
    195 Cal. App.3d 692 (1987) .................................................................................... 20

11

*Flathead-Lolo-Bitterroot Citizen Task Force v. Montana,*
    98 F.4th 1180 (9th Cir. 2024) ................................................................................. 17
12

13

*Guerrero v. Rodan Termite Control, Inc.,*
    163 Cal. App.4th 1435 (2008) ................................................................................. 20
14

15

*Hartline v. Kaiser Found. Hosps.,*
    132 Cal. App.4th 458 (2005) ................................................................................... 20

16

*In re 400 Walnut Assocs. LP,*
17
    454 B.R. 601 (Bankr. E.D. Pa. 2011) ...................................................................... 19

18

*In re Akhlaghpour,*
19
    2018 WL 3357367 (Bankr. C.D. Cal. July 9, 2018) .................................................. 16

20

*In re Blixseth,*
    509 B.R. 701 (Bankr. D. Mont. 2014) ................................................................17, 24
21

22

*In re Curtis,*
    40 B.R. 795 (Bankr. D. Utah 1984) ......................................................................... 19

23

*In re Enron Corp.,*
24
    300 B.R. 201 (Bankr. S.D.N.Y. 2003) ..................................................................... 19

25

*In re Irish Bank Resol. Corp. Ltd.,*
26
    2019 WL 4740249 (D. Del. Sept. 27, 2019) ............................................................ 19

27

*In re MPM Silicones, LLC,*
    2014 WL 4436335 (Bankr. S.D.N.Y. 2014) ............................................................. 19
28

*In re Parker*,
    2019 WL 386842 (Bankr. N.D. Cal. Jan. 29, 2019) *aff'd in part, vacated in part, and remanded, In re Parker*, 644 B.R. 805 (N.D. Cal. 2021) ........................................................ 19

*Lair v. Bullock*,
    697 F.3d 1200 (9th Cir. 2012) .................................................................................... 17, 24

*Nken v. Holder*,
    556 U.S. 418 (2009) .................................................................................................... 16

*Planet Bingo LLC v. Burlington Ins. Co.*,
    62 Cal. App.5th 44, 54 (2021) .................................................................................... 19

*Schoenmann v. Schoenmann (In re Schoenmann)*,
    2025 WL 438716 (Bankr. N.D. Cal. Feb. 7, 2025) ...................................................... 16

*Strauss v. Farmers Ins. Exch.*,
    26 Cal. App.4th 1017 (1994) ...................................................................................... 20

**Statutes and Rules**

11 U.S.C. § 105 ............................................................................................................ 4, 6, 17

11 U.S.C. § 362 .................................................................................................................... 4

11 U.S.C. § 1123(a)(4) ........................................................................................................ 21

Bankruptcy Rule 4001(a)(4) ...................................................................................... 6, 8, 9, 10

Bankruptcy Rule 8007 .......................................................................................................... 4

Bankruptcy Rule 8007(a)(1)(A) ............................................................................................ 11

Bankruptcy Rule 8007(a)(1) ................................................................................................. 16

Bankruptcy Rule 8007(b)(1) ................................................................................................. 16

Bankruptcy Rule 8007(b)(2) ................................................................................................. 16

Cal. Civil Code § 998 .......................................................................................................... 20

Cal. Civil Code § 2860 .......................................................................................................... 7

N.D. Cal. Local Bankruptcy Rule 9013-1(d)(2) ...................................................................... 18

INSURERS' MOTION FOR STAY PENDING APPEAL

**INSURERS' MOTION FOR (i) STAY PENDING APPEAL AND (ii) *EMERGENCY* INTERIM STAY TO ALLOW THE COURT TO CONSIDER THE MOTION FOR A STAY PENDING APPEAL**

The appellant-insurers identified in the signature blocks below (collectively, the "Insurers") hereby move (i) pursuant to Rule 8007(b) of the Federal Rules of Bankruptcy Procedure, for a stay pending appeal of those portions of the bankruptcy court's *Docket Text Order* issued on September 2, 2025 at 9:07 a.m. (the "Text Order") and its *Order Granting Debtor's Motion to Approve Compromise and Stipulation Modifying the Automatic Stay* (the "Order") that authorize claimants to serve Debtor with written demand letters and (ii) pursuant to 11 U.S.C. § 105, for an emergency stay of such portions of the Text Order and the Order (collectively, the "Orders"), to permit this Court to consider whether to grant the stay pending appeal sought in clause (i) above.

As grounds for this Motion, Insurers state as follows:

**Factual and procedural background**

*The bankruptcy case*

1.      The Roman Catholic Archbishop of San Francisco (the "Debtor") filed for Chapter 11 bankruptcy on August 22, 2023 to address "over 500" pending lawsuits alleging claims for sexual abuse.[1]  The automatic stay of 11 U.S.C. § 362 went into effect immediately upon Debtor's bankruptcy filing, staying all of the lawsuits against Debtor.

*The underlying sexual abuse claims against Debtor*

2.      Approximately 541 abuse claimants Survivors filed civil actions against Debtor, virtually all of which were consolidated (along with other Northern California clergy cases naming other defendants) into a coordinated proceeding entitled *In re Northern California Clergy Cases*, Judicial Council Coordination Proceeding No. 5108 in the Superior Court of California, County of Alameda (the "State Court").[2]  Some of the actions against Debtor also named as

---

[1]   Dkt. No. 1 (voluntary petition); Dkt. No. 14 at 18 (first-day declaration of Debtor's CFO).  Unless otherwise stated, all citations to "Dkt. No." are to the bankruptcy court's docket in the underlying bankruptcy case, No. 23-30564 (Bankr. N.D. Cal.).

[2]   Dkt. No. 1285, ¶ 4.

1  defendants non-debtor affiliates of Debtor, who were not protected by the automatic stay.[3]

2  *Debtor's adversary proceeding and the Injunction Motion*

3      3.    On April 28, 2025, Debtor filed a complaint for declaratory and injunctive

4  relief, initiating Adversary Proceeding No. 25-03019 (the "adversary proceeding").   Debtor's

5  complaint sought to enjoin, for the duration of Debtor's bankruptcy case, prosecution of actions

6  naming as defendants both Debtor and any of its non-debtor affiliates.[4]

7      4.    On May 29, 2025, Debtor stipulated that the official creditors' committee

8  (the "Committee") would be permitted to intervene in the adversary proceeding, and the

9  bankruptcy court approved the stipulation.[5]

10      5.    On May 29, 2025, Debtor filed a motion (the "Injunction Motion") asking

11  the bankruptcy court to "extend" the automatic stay to all State Court cases in which Debtor

12  and/or one of its non-debtor affiliates was named as a defendant.[6]

13
14  *Debtor's Stipulation with the Committee and certain claimants, and the Insurers'*
    *opposition thereto*

15      6.    On August 7, 2025, Debtor filed a motion in the bankruptcy court to

16  approve a stipulation among Debtor, the Committee, and counsel for certain claimants (the

17  "Stipulation") "to resolve the Injunction Motion and other pending issues in the Debtor's

18  Bankruptcy Case."[7]  The motion asked the bankruptcy court, pursuant to the Stipulation, to

19  modify the automatic stay to (a) release five out of 541 pending lawsuits from the automatic stay,

20  (b) allow those five cases (the "Five Cases") to proceed to trial and judgment in the State Court,

21  (c) if judgments in favor of the plaintiffs were obtained, to allow the judgment creditors to seek to

22  recover from Debtor's insurers, (d) to allow all 541 claimants to serve policy-limits demand letters

23  on Debtor and any non-debtor defendants, for Debtor and such non-debtor defendants to tender

24  _____

25  [3]  *Id.*, ¶ 5.

26  [4]  *Id.*, ¶ 6.
    [5]  *Id.*, ¶ 7.

27  [6]  *Id.*, ¶ 8.

28  [7]  *Id.*, ¶ 13.

to insurers for payment, and (e) to waive the 14-day stay imposed on lift-stay orders by

Bankruptcy Rule 4001(a)(4).[8]  The Stipulation further provides that a stipulated injunction

pursuant to 11 U.S.C. § 105(a) would be issued, enjoining prosecution of abuse claims against

Debtor's non-debtor affiliates.[9]

7.       Debtor's motion was noticed for a hearing in the bankruptcy court on

September 4, 2025.[10]

8.       Debtor's motion was supported by a single declaration from Fr.

Summerhays, the vicar general and moderator of the Curia of the archdiocese,[11] and a request that

the bankruptcy court take judicial notice of various items previously filed on the docket of the

bankruptcy case.[12]  In his declaration, Fr. Summerhays stated that "Debtor believes that the

Stipulation is in the best interests of the Debtor's estate and its creditors because it resolves the

Injunction Motion with little or no additional expense to the estate" and, in his opinion, "the

Stipulation is adequate, fair, and reasonable, and is in the best interests of the estate and

creditors."[13]  But he provided no facts to support these conclusory statements.  And he said

nothing at all about the portion of the Stipulation concerning issuance of demand letters.

9.       The Stipulation absolved Debtor and its non-debtor affiliates of any

potential financial responsibility for the Five Cases, instead putting all of the financial

responsibility on the Insurers.  Thus, the Stipulation provided that "Entry of a judgment against

any defendant in the Released State Court Actions [*i.e.*, the Five Cases] shall not create a lien

against any non-insurance asset of the Debtor or any Non-Debtor Affiliate.  Nothing in this

Stipulation should be construed to prevent a lien from attaching to the Debtor's and/or any Non-

Debtor Affiliate's insurance policies or the proceeds of such policies, or the assets of any

---

[8]    *Id.*, ¶¶ 13-16; Stipulation (Dkt. No. 1331) at 3-7 of 34.

[9]    Dkt. No. 1285, ¶ 14.

[10]   *See* Dkt. No. 1285 at 1.

[11]   Dkt. No. 1288.

[12]   Dkt. No. 1287.

[13]   Dkt. No. 1288 at 3.  The Insurers objected to admission of Fr. Summerhays' declaration into evidence because it states legal conclusions and offers improper lay opinions.  Dkt. No. 1302 at 4 n.6.

1  defendant that is not the Debtor or a Non-Debtor Affiliate or the enforcement of such lien."[14]

2       10.    The Insurers opposed Debtor's motion and objected to the Stipulation.[15]

3  The Insurers argued that Debtor had not established "cause" to lift the automatic stay.  The

4  Insurers' opposition rebutted Debtor's principal argument, which was that allowing the Five

5  Cases to proceed to trial and judgment would facilitate mediation.  The Insurers' opposition noted

6  that Debtor had provided no information about the Five Cases and did not show that they were

7  representative "bellwether" cases.  Accordingly, the Insurers argued, "[a]llowing the Five Cases to

8  proceed is therefore highly unlikely to influence the mediation in any way or lead to global

9  resolution of [the] bankruptcy case."[16]  The Insurers also explained that given the terms of the

10 Stipulation—which absolved Debtor of any financial risk from the Five Cases, and instead

11 imposed all of the financial risk on the Insurers—the bankruptcy court should condition any lift-

12 stay relief on the respective impacted Insurers being given "full control over the defense of each

13 of the cases," notwithstanding the provisions of Cal. Civil Code § 2860, which requires insurers to

14 provide "independent counsel" to defend their insureds in certain circumstances.[17]

15       11.    The Insurers' opposition also explained that the bankruptcy court should

16 not grant leave to all 541 claimants to serve policy-limits demand letters.  The Insurers pointed

17 out that Debtor offered no evidence in support of the relief, instead relying solely on "a single,

18 conclusory sentence" in Debtor's motion, which stated, "Further, modification of the stay to the

19 extent necessary to allow demand letters to be sent to the Debtor will assist in facilitating the

20 mediation process."  The Insurers showed that the "*Curtis* factors," a test used by bankruptcy

21 courts in this circuit to determine whether the lift the stay, established that lifting the stay would

22 significantly interfere with the bankruptcy case, with no offsetting benefit, and that Debtor's

23

---

24 [14]   Stipulation (Dkt. No. 1331), ¶ 3(c).  The Stipulation continued, "No Plaintiff may create or take
        any action to effectuate the creation or imposition of any lien against any non-insurance asset(s) of the
25 Debtor or any Non-Debtor Affiliate.  Further, no Survivor may collect, levy, execute, or otherwise
        enforce any judgment against any non-insurance asset(s) of the Debtor or any Non-Debtor Affiliate."
26 *Id.*, ¶ 3(d).

27 [15]   *See* Dkt. Nos. 1302, 1303.

28 [16]   Dkt. No. 1302 at 6.

[17]   *Id.* at 14.

1    motion therefore should be denied.[18]

2    　　　　12.　　Finally, the Insurers established that Debtor's request that the 14-day stay

3    of Bankruptcy Rule 4001(a)(4) be waived would prejudice the defense of the cases being released

4    from the stay and also interfere with the orderly processing of appeals the Insurers might file.[19]

5    　　　　*The bankruptcy court grants stay relief and approves the Stipulation*

6    　　　　13.　　The scheduled hearing on Debtor's motion never took place.  Instead, on

7    September 2, 2025, the bankruptcy court issued the Text Order, which "dropped" the hearing and

8    granted Debtor's motion.  In its entirety, the Text Order stated:

9    > **DOCKET TEXT ORDER** (no separate order issued:) Granted The court has
> considered the Motion To Approve Compromise, etc (Dkt 1285), the Objection and
10   > Joinder (Dkts 1302 & 1303) and the Replies by Debtor and the OCC (Dkts 1311 &
> 1315). It is worthy of note that not a single abuse claimant whose action will remain
11   > stayed has objected. The motion is well-taken, easily satisfies the A & C test by
> considering and weighing the factors, as the court does independently here, and
12   > represents a needed, good faith settlement of a bona-fide dispute. The objectors,
> assuming they even have standing, have shown no meaningful prejudice. The OCC did
13   > not unilaterally select the test cases.  What other courts have done in similar cases is
> interesting but not controlling.  The demand letters, if they even would be prohibited
14   > by the automatic stay, which is far from clear, are to some extent pass-throughs from
> the debtor as a conduit to the insurers, who cannot be surprised or harmed by them.
15   > All other objections are OVERRULED and the matter is DROPPED from the
> September 4 calendar.  The 14-day stay is waived. Debtor should serve and upload an
16   > appropriate order GRANTING the motion for the reasons stated in it and in this
> docket text order. (RE: related document(s)[1285] Motion to Approve Document filed
17   > by Debtor The Roman Catholic Archbishop of San Francisco). (Montali, Dennis)[20]

18   　　　　14.　　The fact that the bankruptcy court "dropped" the hearing precluded the

19   Insurers from having any opportunity to cross-examine Fr. Summerhays, the sole witness

20   proffered by Debtor in support of its motion.

21   　　　　15.　　The Insurers timely appealed from the Text Order on September 16,

22   2025.[21]  The same day, the Insurers filed a motion for a stay of the Text Order pending appeal.[22]

23   　　　　16.　　The next day, September 17, 2025, the bankruptcy court issued the Order,

24

---

25   [18]　*Id.* at 15-19.

26   [19]　*Id.* at 20-21.

27   [20]　The Text Order appears on the docket of the bankruptcy case, but without a docket number.
     [21]　Dkt. Nos. 1341, 1343, and 1344.

28   [22]　Dkt. No. 1342.

which reiterated that the court was granting the relief already granted by the Text Order.  The

Order did not state any grounds other than to repeat that "the legal and factual bases set forth in

[Debtor's] Motion establish just cause for the relief granted herein as set forth in [Debtor's]

Motion and the Court's Docket Text Order dated September 2, 2025."[23]  The Order further

stated that it was "effective immediately," and that the 14-day stay provided by Bankruptcy Rule

4001(a)(4) "shall not be applicable."[24]

17.    Immediately after entering the Order, the bankruptcy court issued another

docket text order, setting a briefing schedule on the Insurers' motion for a stay of the Text Order

pending appeal.  This text order gave Debtor and the Committee until September 30, 2025 to file

oppositions to the Insurers' stay motion.  The court did not set a hearing, instead stating that the

"court will consider the matter and issue an order or set the matter for hearing, as it deems

appropriate."[25]

18.    As a result of the Order's waiver of the Rule 4001(a)(4) stay and the

leisurely briefing schedule issued by the bankruptcy court, the Insurers' motion for a stay pending

appeal was effectively denied, since the Five Cases could proceed, and demand letters could issue,

without any restriction whatsoever.  Counsel for several Insurers convened a video meeting on

September 18 during which they asked counsel for Debtor and the Committee to agree to not

serve demand letters until after the bankruptcy court had ruled on the Insurers' motion for a stay

pending appeal.  The Committee agreed to not serve demand letters until after the bankruptcy

court ruled on the Insurers' motion for a stay pending appeal.  As of this writing, no demand

letters have been served on the Insurers.

### The bankruptcy court denies Insurers' stay motion

19.    On October 9, 2025, the bankruptcy court issued its *Order Denying Motion for*

---

[23]  Dkt. No. 1346 at 2.

[24]  *Id.* at 3.  The Insurers will shortly file appeals from the Order.

[25]  As with the Text Order, this order appears on the docket of the bankruptcy case, but without a docket number.

*Stay Pending Appeal.*[26]  In this order, the bankruptcy court ruled that the Insurers "are not likely to succeed on the merits of the appeal," that the Insurers will not suffer irreparable injury absent a stay, that other parties would be injured if a stay were issued, and that the public interest lies in favor of denying a stay.[27]  The bankruptcy court further denied the Insurers' request for imposition of a 14-day stay pursuant to Bankruptcy Rule 4001(a)(4).[28]

      a.    <u>*Likelihood of success*</u>:  Primarily, the bankruptcy court found that the Insurers were unlikely to succeed on appeal because the bankruptcy court had already considered and overruled their stay motion.  Yet, the rationale the bankruptcy court offered in denying a stay pending appeal was inconsistent with its Orders.  Notwithstanding its own characterization in the Docket Text Order of the Five Cases as "test cases," as well as the fact that the entire theory supporting the Stipulation was that the Five Cases would assist the mediation by providing relevant data points, the bankruptcy court disavowed any burden to determine whether the Five Cases were representative, bellwether cases.  Rather, the bankruptcy court stated, "[t]his was a compromise to allow only five cases, as opposed to thirty-nine, proceed to trial."[29]  The bankruptcy court also ruled that Insurers' complaints that it improperly considered the Summerhays declaration (including that the Insurers had no chance to cross-examine the declarant) were unlikely to succeed.  The court also said that any oral argument by the Insurers at a hearing would have been "extraneous."[30]

      b.    <u>*Irreparable harm*</u>.  The bankruptcy court concluded that the Insurers would not be harmed by receiving settlement demands which, the Committee candidly acknowledged, were designed not to advance resolution, but instead to artificially

---

[26]  Dkt. No. 1392.

[27]  *Id.* at 4-7.

[28]  *Id.* at 8.

[29]  *Id.* at 5.

[30]  *Id.*

INSURERS' MOTION FOR STAY PENDING APPEAL

create risk "that do[es]not presently exist"[31]—specifically, to expose the Insurers to what the Committee would contend is tens of millions of dollars of liability for bad faith, above and beyond contractual policy limits, should the Insurers not accept whatever outlandish demands were set forth in letters that otherwise serve no purpose. The court brushed off the Insurers' argument by stating that the Insurers were not required to pay the demands and could seek lift-stay relief from the court.[32]

    c.    *Harm to other parties*.  Without referring to any evidence, the court ruled that Debtor, the Committee, and claimants would be harmed if a stay pending appeal were granted.  The court imagined—contrary to statements made by Debtor[33]—that the mediation was in a "standstill" that could lead to dismissal of the bankruptcy case if a stay were to be entered.[34]

    d.    *Public interest*.  Again without any citation to evidence, the bankruptcy court found that the public interest weighted against a stay pending appeal because settlements are generally favored and the Stipulation "may represent a significant step toward a confirmable reorganization plan."[35]

    20.    The bankruptcy court having ruled on the Insurers' stay motion, this motion for a stay pending appeal is properly filed in the District Court pursuant to Bankruptcy Rule 8007(b).

### Negotiations between Debtor and the Insurers

    21.    Notwithstanding the bankruptcy court's various rulings, Debtor and the Insurers have been negotiating a potential agreement under which the Insurers would appoint defense counsel in each of the Five Cases.  The Insurers are hopeful that those negotiations will

---

[31] Dkt. No. 1342 at 4.

[32] *Id.* at 6.

[33] Debtor had recently represented to the bankruptcy court that the mediation was "progressing as expected." Dkt. No. 1318, ¶ 5. *See also id.*, ¶¶ 4, 12.

[34] Dkt. No. 1392 at 7.

[35] *Id.* at 7.

INSURERS' MOTION FOR STAY PENDING APPEAL

successfully conclude soon.  In light of these discussions, the Insurers are not seeking a stay

pending appeal of those portions of the bankruptcy court's orders that release the Five Cases

from the automatic stay.  Rather, the Insurers are presently asking this Court to stay only those

portions of the bankruptcy court's Orders that lift the automatic stay to permit claimants to serve

demand letters on Debtor, for Debtor to then tender to the Insurers.

22.     Notwithstanding the self-imposed limits on this motion for a stay pending

appeal, the Insurers reserve all rights in their forthcoming appeal briefs to seek reversal and/or

modification of any and all aspects of the Orders, including those portions of the bankruptcy

court's orders that release the Five Cases from the automatic stay.

**Relief requested**

23.     To maintain the *status quo* while this Court considers the present motion by

the Insurers for a stay pending appeal, this Court should immediately issue an **emergency** interim

stay of those portions of the Orders that authorize claimants to serve Debtor with written

demand letters, while this Court considers the present stay motion.  This would avoid irreparable

harm to the Insurers while the Court considers the Insurers' stay motion.

24.     In addition, the Insurers request that the Court issue a stay of those

portions of the Orders that authorize claimants to serve Debtor with written demand letters,

pending resolution of the Insurers' appeals in this Court.

25.     Counsel for the Insurers met and conferred with counsel for the

Committee to request that the Committee consent to some or all of the relief sought in this

motion; Committee counsel advised that the Committee does not consent.

WHEREFORE, the Insurers respectfully request that the Court:

1.     Grant an **emergency** stay of those portions of the Orders that authorize

claimants to serve Debtor with written demand letters, while this Court considers whether to

grant the stay pending appeal sought in this Motion;

2.     Issue a stay of those portions of the Orders that authorize claimants to

serve Debtor with written demand letters, pending resolution of the Insurers' appeals in this

Court; and

1      3.      Grant the Insurers such other and further relief as may be just and proper.

2      A memorandum of points and authorities in support of this motion follows.

3    DATED:  October 22, 2025                    Respectfully submitted,

4

5                                               By:  ___/s/ Mark D. Plevin___
                                                Mark D. Plevin  (State Bar No. 146278)
                                                PLEVIN & TURNER LLP
6                                               580 California Street, Suite 1200
                                                San Francisco, California  94104
7                                               Telephone:    (202) 580-6640
                                                Email:        mplevin@plevinturner.com
8
                                                Miranda H. Turner (admitted *pro hac vice*)
9                                               Jordan A. Hess (admitted *pro hac vice*)
                                                PLEVIN & TURNER LLP
10                                              1701 Pennsylvania Avenue, N.W., Suite 200
                                                Washington, D.C.  20004
11                                              Telephone:    (202) 5809-6640
                                                Email:        mturner@plevinturner.com,
12                                              jhess@plevinturner.com

13
                                                Alexander Potente (State Bar No. 208240)
14                                              Jason J. Chorley (State Bar No. 263225)
                                                CLYDE & CO US LLP
15                                              150 California Street, 15th Floor
                                                San Francisco, California  94111
16                                              Telephone:    (415) 365-9800
                                                Email:        alex.potente@clydeco.us,
17                                              jason.chorley@clydeco.us

18                                              *Attorneys for Century Indemnity Company (as successor to*
                                                *CCI Insurance Company, as successor to Insurance Company*
19                                              *of North America), Pacific Indemnity Company, and*
                                                *Westchester Fire Insurance Company (as successor in interest*
20                                              *to Industrial Underwriters Insurance Company for policies*
                                                *JU835-8355 and JU895-0964)*
21

22                                              Catalina J. Sugayan
                                                Michael Norton
23                                              Yongli Yang
                                                CLYDE & CO US LLP
24                                              30 S. Wacker Drive, Suite 2600
                                                Chicago, Illinois  60606
25                                              Telephone:    (312) 635-7000
                                                Email:        Catalina.Sugayan@clydeco.us,
26                                              Michael.Norton@clydeco.us,
                                                Yongli.Yang@clydeco.us
27
                                                Russell W. Roten
28                                              Jeff D. Kahane

- 13 -

Nathan Reinhardt
Timothy Evanston
SKARZYNSKI MARICK & BLACK LLP
633 West Fifth Street, 26th Floor
Los Angeles, California  90071
Telephone:    (213) 721-0650
Email:        jkahane@skarzynski.com,
rroten@skarzynski.com,
nreinhardt@skarzynski.com,
tevanston@skarzynski.com

*Attorneys for Certain Underwriters at Lloyd's London and Certain London Market Companies*[36]

Mark D. Plevin  (State Bar No. 146278)
PLEVIN & TURNER LLP
580 California Street, Suite 1200
San Francisco, California  94104
Telephone:    (202) 580-6640
Email:        mplevin@plevinturner.com

Miranda H. Turner (admitted *pro hac vice*)
Jordan A. Hess (admitted *pro hac vice*)
PLEVIN & TURNER LLP
1701 Pennsylvania Avenue, N.W., Suite 200
Washington, D.C.  20004
Telephone:    (202) 5809-6640
Email:        mturner@plevinturner.com,
jhess@plevinturner.com

*Attorneys for Continental Casualty Company*

Joshua Haevernick (State Bar No. 308380)
DENTONS US LLP
1999 Harrison Street, Suite 1300
Oakland, California  94612
Telephone:    (415) 882-5000
Email:        joshua.haevernick@dentons.com

Patrick C. Maxcy (admitted *pro hac vice*)
DENTONS US LLP
233 South Wacker Drive, Suite 5900
Chicago, Illinois 60606
Telephone:    (312) 876-8000
Email:        patrick.maxcy@dentons.com

Andrew D. Telles Wyatt (State Bar No. 316740)

---

[36]    London Market Insurers are Certain Underwriters at Lloyd's, London; Catalina Worthing Insurance Ltd f/k/a HFPI (as Part VII transferee of Excess Insurance Co. Ltd.); the Ocean Marine Insurance Company Limited (as Part VII transferee of the World Auxiliary Insurance Corporation Limited); River Thames Insurance Company Limited; Dominion Insurance Company Limited; Companhia de Seguros Fidelidade-Mundial f/k/a Fidelidade Insurance Company of Lisbon; and R&Q Gamma Company Limited (as Part VII transferee of Anglo French Ltd.).

DENTONS US LLP
4675 MacArthur Court, Suite 1250
Newport Beach, California  92660
Telephone:      (949) 732-3700
Email:          andrew.wyatt@dentons.com

*Attorneys for St. Paul Fire and Marine Insurance Company and Travelers Casualty and Surety Company*

INSURERS' MOTION FOR STAY PENDING APPEAL

1

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

2

**This Motion is properly filed in this Court at this time**

3    Bankruptcy Rule 8007(a)(1)(A) states that, "Ordinarily, a party must move first in

4  the bankruptcy court for the following relief:  (A) a stay of the bankruptcy court's judgment,

5  order, or decree pending appeal. . . ."

6    Bankruptcy Rule 8007(b)(1) provides, however, that a "motion for the relief

7  specified in (a)(1) . . . may be filed in the court where the appeal is pending."  "The motion must:

8  (A) show that moving first in the bankruptcy court would be impracticable; or (B) if a motion has

9  already been made in the bankruptcy court, state whether the court has ruled on it, and if so, state

10  any reasons given for the ruling."[37]

11    Here, the Insurers' above motion shows that they previously moved for a stay

12  pending appeal in the bankruptcy court and that court denied the relief sought.  Accordingly, the

13  requirements of Rule 8007(b)(2) are satisfied, and this motion is properly before this Court.

14

**Legal standard**

15    "Parties seeking a stay pending appeal must make a showing under four factors:

16  '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the

17  merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of

18  the stay will substantially injure the other parties interested in the proceeding; and (4) where the

19  public interest lies.'"[38]  "The four factors may be weighed in a sliding scale, 'where a stronger

20  showing of one element may offset a weaker showing of another.'"[39]

21

**Argument**

22    The Insurers submit that the foregoing requirements for issuance of a stay pending

23  appeal are met under the circumstances of this case.

24

---

25  [37]    Bankruptcy Rule 8007(b)(2).

26  [38]    *Schoenmann v. Schoenmann (In re Schoenmann)*, 2025 WL 438716, *2 (Bankr. N.D. Cal. Feb. 7, 2025),
quoting *Nken v. Holder*, 556 U.S. 418, 433-34 (2009).  *See also In re Akhlaghpour*, 2018 WL 3357367, *2
27  (Bankr. C.D. Cal. July 9, 2018) (same, also citing *Nken*).

28  [39]    *In re Akhlaghpour*, 2018 WL 3357367 at *2, quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d
1127, 1131 (9th Cir. 2011).

1  **I.    An emergency interim stay is appropriate and necessary here to maintain the *status***
2  ***quo* while this Court determines the merits of the Insurers' motion for a stay**
   **pending appeal**

3          For its own benefit, and to protect Insurers' interests in pursuing their appeal

4  without being prejudiced, this Court should issue an emergency interim stay of those portions of

5  the Orders that authorize claimants to serve Debtor with written demand letters, while it

6  considers the merits of the Insurers' appeals.  The Court has the power to do so under 11 U.S.C.

7  § 105, which allows the Court to "issue any order, process, or judgment that is necessary or

8  appropriate to carry out the provisions of" the Bankruptcy Code and to manage its own docket.

9          As shown below, because the Insurers are likely to succeed on their appeal with

10  respect to the issuance of demand letters and no party will be harmed by the stay being sought,

11  this Court should act to maintain the *status quo* while it considers the Insurers' motion for a stay

12  pending appeal.  The Court presumably will not delay issuing its ruling on the stay motion, so any

13  delay caused by an interim stay will be limited.

14  **II.    The Insurers are likely to succeed on appeal**

15          "While it is not necessary for [movant] to show that it is more likely than not that it

16  will win on the merits, 'at a minimum' . . . the petitioner must show that there is a 'substantial case

17  for relief on the merits'"[40] or "serious questions going to the merits."[41]

18          Here, the Insurers submit that they have a strong likelihood of success on appeal

19  and, at a minimum, a substantial case for relief on, or serious questions going to, the merits.

20  Particularly with respect to the issuance of demand letters, the evidence proffered by Debtor to

21  support its claim that "cause" existed to lift the stay was inadmissible, thin at best (if not

22  completely non-existent), and conclusory.  Debtor offered the declaration of Fr. Summerhays,

23  which merely addressed, in summary fashion, whether the Five Cases should be allowed "to go

24  forward" on the terms set forth in the Stipulation.[42]  He said that, "in my opinion," granting

25

26  [40]   *In re Blixseth*, 509 B.R. 701, 706 (Bankr. D. Mont. 2014), quoting *Lair v. Bullock*, 697 F.3d 1200,
    1204 (9th Cir. 2012).

27  [41]   *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1190 (9th Cir. 2024).

28  [42]   Dkt. No. 1288, ¶ 5.

1   Debtor's motion would "dramatically alleviate[ ] the burden of litigation," allow Debtor and

2   others "to focus their attention on the mediation," and is "in the best interests of the Debtor's

3   estate" because "it resolves the Injunction Motion with little to no additional expense to the

4   estate."[43]  These are legal conclusions, not facts, and therefore inadmissible.[44]

5              In particular, Fr. Summerhays does not state a single fact, and does not explain

6   what "burden of litigation" Debtor faced given that it is protected by the automatic stay, or why

7   Debtor was not previously able to "focus [its] attention on the mediation."  Indeed, the burden of

8   litigation the Summerhays declaration appears to refer to is not litigation against Debtor, but

9   rather litigation against Debtor's affiliates, who are not debtors.  Ostensibly to "alleviate" this

10  burden on other entities, Debtor invited an entirely new burden onto itself in the form of five

11  cases that were previously stayed.  Until it agreed to allow these cases to go forward, Debtor faced

12  no articulated litigation burden that was interfering with its ability to participate in mediation.[45]

13             And Fr. Summerhays said absolutely nothing at all about why it was beneficial to

14  Debtor, its bankruptcy estate, or creditors to permit all 500+ claimants to issue demand letters to

15  Debtor along with a request that Debtor transmit the letters to the Insurers.  Without any such

16  evidence, nothing at all supports the bankruptcy court's determination in the Orders that Debtor

17  proved "cause" to lift the automatic stay.

18             Apart from the complete lack of any evidence supporting the bankruptcy court's

19  rulings allowing claimants to issue demand letters to Debtor, application of the "*Curtis* factors"

20  shows that there is no "cause" to lift the automatic stay to permit demand issuance of demand

21

22

---

23  [43]   Dkt. No. 1288, ¶ 5.

24  [44]   The Insurers objected to admission of Fr. Summerhays' declaration into evidence because it states
    legal conclusions and offers improper lay opinions.  *See* Dkt. No. 1302 at 4 n.6.  *See also* N.D. Cal.

25  Local Bankruptcy Rule 9013-1(d)(2) ("declarations shall contain only facts . . . and shall avoid
    conclusions and argument").  Neither the Text Order nor the Order expressly addressed Insurers'

26  evidentiary objections.  In its order denying Insurers' motion for a stay pending appeal, the
    bankruptcy court did not rule that the Summerhays declaration was admissible, only that the court

27  "did not" "allow[ ] conclusory statements to lead to factual conclusions."  Dkt. No. 1392 at 5.

28  [45]   Indeed, Debtors represented to the bankruptcy court that they are in fact very focused on the
    mediation, which it said was "progressing as expected."  Dkt. No. 1318, ¶ 5.  *See also id.*, ¶¶ 4, 12.

1    letters.[46]

2          Courts in the Ninth Circuit analyzing stay-relief motions apply a twelve-factor test

3    known as the *Curtis* factors.[47]   Not all twelve factors are relevant in every case, nor must a court

4    give each factor equal weight.   The initial burden to establish "a prima facie case" of "cause" rests

5    with the movant, which must "substantiate its case with an evidentiary showing of a factual and

6    legal right to the relief it seeks."[48]   Debtor's single sentence of argument fails to make out even a

7    prima facie case, much less a winning one.   Indeed, there are no factors that weigh in favor of

8    allowing any claimant who wishes to issue a demand to do so, and the Orders identify none.   The

9    Insurers therefore have a high likelihood of success on this issue.

10          Some background may be helpful.   Under California law, a plaintiff may make a

11   reasonable demand within policy limits to a defendant and its insurer.   The demand must specify

12   the amount of the demand within policy limits and the consideration the plaintiff will provide in

13   exchange for the insurer's agreement to pay the demanded amount, such as the terms of a

14   proposed release or the terms of a proposed dismissal.[49]   The purpose of such demands is to

15   promote settlement.   As such, the demand must be presented in such a way that it will form an

16   enforceable contract if accepted by the insurer, and an insurer may reject a demand that does not

17   ───────────────────────

18   [46]   As a threshold matter, and contrary to the passing suggestion in the Text Order, service of the
     contemplated demand letters would, in fact, violate the automatic stay.  *See, e.g., In re Enron Corp.*, 300

19   B.R. 201, 212-13 (Bankr. S.D.N.Y. 2003) (sending demand letters violates the automatic stay); *In re
     MPM Silicones, LLC*, 2014 WL 4436335, *19 (Bankr. S.D.N.Y. 2014) (sending rescission notices in

20   order to recover a larger claim against the debtor is barred by the automatic stay) (citing cases); *In re
     400 Walnut Assocs. LP,* 454 B.R. 601 (Bankr. E.D. Pa. 2011) (post-petition letter sent to debtor's

21   subtenants demanding that rents be paid to it violated automatic stay).  Indeed, demands are, by
     definition, demands for payment and, as the Stipulation makes clear, these demands would be

22   accompanied by a coercive request that "the insurers pay those demands," with potentially severe
     consequences if they do not.  Thus, the demands constitute a clear effort to obtain property of the

23   estate, *i.e.*, insurance proceeds.  *See In re Parker*, 2019 WL 386842, *7 (Bankr. N.D. Cal. Jan. 29, 2019)
     (coercive post-petition demands to pay pre-petition debts violate the automatic stay), *aff'd in part,*

24   *vacated in part, and remanded, In re Parker*, 644 B.R. 805, 830-32 (N.D. Cal. 2021).

25   [47]   *See, e.g.*, Dkt. No. 1138 at 3-9 (bankruptcy court in this case analyzing the *Curtis* factors in
     evaluating the Committee's April, 2025 lift-stay motion), citing *In re Curtis*, 40 B.R. 795 (Bankr. D.

26   Utah 1984).

27   [48]   *In re Irish Bank Resol. Corp. Ltd.*, 2019 WL 4740249, at *6-7 (D. Del. Sept. 27, 2019).

28   [49]   *See, e.g.*, *Planet Bingo LLC v. Burlington Ins. Co.*, 62 Cal. App.5th 44, 54 (2021) ("In the paradigm case
     of an insurer's failure to settle, the third-party claimant makes a reasonable settlement offer within the
     policy limit"); Cal. Civil Code § 998.

provide a complete release of all of its insureds.[50]  Demands must be reasonable in the context of a case, including such considerations as what information is available to the parties to evaluate.[51] California Civil Code § 998 sets a time limit for acceptance of a demand or it is deemed withdrawn.  If an insurer fails to accept a reasonable, within-policy-limits demand, the insurer may later be held liable to pay the full amount of a covered judgment against the insured, even if the judgment amount exceeds policy limits.[52]  Whether a demand was "reasonable" when made is determined in hindsight, following entry of judgment in favor of the plaintiff.  Such offers therefore impose tremendous risks on insurers, particularly if they are issued in the early stages of a lawsuit, before an insurer has had an opportunity to discover the facts relating to the plaintiff's claim.

With this background, the limited utility of demand letters in the context of this bankruptcy case should be evident.  The Insurers cannot settle individual cases during the pendency of the bankruptcy without violating the automatic stay and undermining the very purpose of the bankruptcy case, which is to provide for equitable allocation of limited resources. The Insurers also lack critical information to determine whether settlement demands are reasonable, and no ability to obtain such information before having to respond to the demands. No discovery has gone forward in the vast majority of the underlying abuse suits and the information provided in the bankruptcy is often devoid of details, with no ability to vet the substance of the allegations or the veracity of the claimants.  Proofs of claim are often signed not by claimants (on personal knowledge and under penalty of perjury) but, instead, by their lawyers. Yet the Insurers cannot ignore demands that are issued to their policyholder, because failure to respond to these demands (which are essentially per se unreasonable because the insurers lack the

---

[50]    *Strauss v. Farmers Ins. Exch.*, 26 Cal. App.4th 1017, 1021 (1994).

[51]    *Guerrero v. Rodan Termite Control, Inc.*, 163 Cal. App.4th 1435, 1440 (2008) ("the pretrial offer of settlement required under section 998 must be realistically reasonable under the circumstances of the particular case"); *Hartline v. Kaiser Found. Hosps.*, 132 Cal. App.4th 458, 471 (2005) ("Whether a section 998 offer is reasonable must be determined by looking at circumstances when the offer was made"). *See also Elrod v. Oregon Cummins Diesel, Inc.*, 195 Cal. App.3d 692, 699 (1987) (the reasonableness of an offer is "premised upon information that was known or reasonably should have been known").

[52]    *Camelot by the Bay Condo. Owners' Assn. v. Scottsdale Ins. Co.*, 27 Cal. App. 4th 33, 46 (1994).

1    information they need to assess them) will inevitably bring claims of bad faith claims handling. So

2    the Insurers will be forced to respond to literally hundreds of letters that ultimately serve no

3    purpose.

4        Application of the *Curtis* factors demonstrates why the bankruptcy court erred in

5    lifting the stay to permit claimants to issue such letters. The key *Curtis* factors relate to the

6    proffered benefits of permitting the demands to issue (minimal), likely interference with the

7    bankruptcy case (substantial), and possible prejudice to other interests (substantial, including to

8    the estate). Factor 1, whether stay relief will result in a partial or complete resolution of issues,

9    weighs heavily against stay relief. As stated above, the Insurers cannot accept individual

10   settlement demands without themselves violating the automatic stay (which bars payment of

11   policy proceeds) and injecting discrimination into the bankruptcy case (since some claimants

12   would be paid while others would not).[53] Debtor offered no evidence to support the bankruptcy

13   court's ruling that individual demands will somehow promote global resolution. Also, there is no

14   reason why such demands, if otherwise appropriate, cannot be made within the mediation.

15   Allowing demands to be sent outside of mediation will not promote the mediation process.

16       Factor 2 requires an analysis of whether the proposed relief would interfere with

17   the bankruptcy case. Here, interference would be significant. More than 500 demands may be

18   sent. Each must be reviewed, evaluated, and potentially responded to by Debtor and the insurers

19   that are defending the claims. Further, as Debtor has described, in 2020, "the Coordination Trial

20   Judge imposed a general stay of discovery and only permitted standardized initial disclosures

21   specifically approved by the Court, such as completion of 'fact sheets' and basic document

22   exchanges. . . . [F]ull discovery or trial setting has not occurred in any lawsuit involving the

23

---

24   [53]   *See, e.g.*, 11 U.S.C. § 1123(a)(4); *In re Diocese of Camden*, July 8, 2025 Hrg. Tr. at 16:13-17:1 (finding §

25   1123(a)(4) requires equality of treatment during all phases of a bankruptcy case), located at Exh. A to
     Dkt. No. 2215 in *In re The Roman Catholic Bishop of Oakland*, Case No. 23-40523 (Bankr N.D. Cal. July

26   9, 2025); *see also id.*, Exhs. C and D (referring to similar rulings in the *Archdiocese of New Orleans* and
     *Archbishop of Agana* bankruptcy cases).

27   The Text Order observed that no claimants whose cases would remain stayed objected to the
     proposed relief, but there is no evidence that any of them (as opposed to their counsel) had notice of

28   the proposed relief.

Debtor as a defendant."[54]   However, in order for the Insurers to evaluate their insureds' potential exposure, including whether any demand amount is reasonable, the Insurers need information of the type that discovery typically provides.  Proceeding to discovery now would require additional lift-stay relief and substantially interfere with the bankruptcy case by distracting the Debtor and the Insurers.

Factor 4 considers whether a specialized tribunal with expertise exists to adjudicate a claim if stay relief is granted.  This factor, too, counsels against stay relief because there is seemingly no applicable tribunal at all, where the demand letters are proposed to be issued despite the fact that the vast majority of lawsuits remain stayed, with no discovery having taken place.

Factor 7, prejudice to other creditors or interested parties, also weighs against stay relief.  As set forth in Debtor's first day declaration, its stated purpose in proceeding in bankruptcy was "to design and implement a fair and equitable plan under which all claimants and plaintiffs can recover."[55]  Debtor was concerned with the proverbial "race to the courthouse" and the prospect that some survivors could recover less, or be left out, "because she or he was not prepared to bring her or his claims when a majority of other claimants and plaintiffs were.  The [Archdiocese] believes that neither the timing of a claimant or plaintiff's readiness to seek redress nor the financial status of the [Archdiocese] at any given point should determine the appropriate outcome for all stakeholders (including the survivors, other creditors of the [Archdiocese], and the faithful) in this Bankruptcy Case."[56]  Allowing hundreds of individual demands places undue pressure on individual claimants' timing and readiness in much the same way Debtor sought to avoid.

Factor 10 relates to whether the interests of judicial economy and economical resolution of disputes are furthered.  Proceeding now to the type of discovery necessary for the

---

[54]   *Memorandum of Points and Authorities in Support of Motion for Order Extending Stay to All State Court Cases in Which Debtor and/or Non-Debtor Affiliates Are Named as Defendants Under Bankruptcy Code Sections 105(a) and 362*, Dkt. No. 8-1 at 8, *The Roman Catholic Archbishop of San Francisco v. John DF Roe SF (In re The Roman Catholic Archbishop of San Francisco)*, Adv. No. 25-03019 (Bankr. N.D. Cal. May 29, 2025).

[55]   *Declaration of Joseph J. Passarello*, Dkt. No. 14 at ¶ 9.

[56]   *Id.*

1    Insurers to engage in fair evaluation of the claims, in order to provide substantive responses to

2    the demand letters, would undermine, if not eviscerate, the effort to achieve a more efficient (and

3    equitable) outcome than the tort system.  Mediation is the only forum capable of achieving such a

4    result.  Allowing the bankruptcy case to devolve into piecemeal demands will undermine the

5    prospects of global resolution.

6    Finally, Factor 12, the balance of hurt, also cautions against the relief sought.  As

7    the court in *Diocese of San Diego* aptly observed, "[w]ith stipulated mediation, in theory all parties

8    are and should be mediating in good faith. . . .  The parties are ostensibly engaged in good faith

9    mediation, with the ultimate goal of a global settlement to materially facilitate a Chapter 11 plan.

10   If the parties reach resolution, no court will need to adjudicate the claims at issue."[57]  The *San

11   Diego* court's point is only more applicable to the flood of pointless demand letters that will be

12   foisted on the insurers with no realistic prospect of adjudication at all.

13   Last, the bankruptcy court erred by not holding the scheduled hearing on Debtor's

14   motion.  The bankruptcy court should have held a hearing so that Insurers could have cross-

15   examined Debtor's declarant, Fr. Summerhays.  Because the Insurers were not given any chance

16   to cross-examine Fr. Summerhays, it was error for the bankruptcy court to consider his

17   declaration—and without the Summerhays declaration, the Orders are likely to be reversed

18   because their finding of "cause" is completely without evidentiary support.  In addition, the

19   Insurers were given no opportunity to respond to the combined 20 pages of reply briefing

20   submitted by Debtor and the Committee, which they could have done if the bankruptcy court had

21   allowed the scheduled hearing to go forward.  The bankruptcy court faults the Insurers for not

22   requesting permission to file a sur-reply, but the court gave no warning that it was canceling the

23   scheduled hearing on Debtor's motion.  Finally, the court had no basis to state that any argument

24   the Insurers would have offered at a hearing would be "extraneous."[58]

25   In sum, the fact that the Orders were issued without any proper evidentiary basis

26

27   [57]   Order on Motion for Stay Relief, Dkt. No. 851 at 5, *In re The Roman Catholic Bishop of San Diego*, Case No. 24-02202 (S.D. Cal. Aug. 14, 2025).

28   [58]   Dkt. No. 1392 at 5.

- 23 -

INSURERS' MOTION FOR STAY PENDING APPEAL

1  makes it "more likely than not" that the Insurers "will win on the merits" or,  "'at a minimum' . . .

2  show that there is a 'substantial case for relief on the merits.'"[59]

3  **III.    The Insurers will likely be irreparably injured absent a stay**

4          The Insurers will likely be irreparably harmed absent a stay, because they could

5  receive more than 500 demand letters designed to impose burden, cost, and risk on the Insurers.

6          The Committee is candid in acknowledging that the purpose of the proposed

7  demand letters is not to advance resolution, but instead to manufacture a risk "that do[es] not

8  presently exist,"[60] specifically, to expose the Insurers to what the Committee would contend is

9  tens of millions of dollars of extracontractual liability—that is, liability beyond policy limits—

10  should the Insurers not accept whatever outlandish demands are set forth in the letters that will

11  be sent.  While such demands may be an ordinary part of tort litigation outside of bankruptcy, it is

12  unfair, prejudicial, and inappropriate to permit issuance of such letters where, because of the

13  insured's bankruptcy, the Insurers have no ability to obtain the information they need to respond

14  to the letters.  This is the core harm the Orders impose on the Insurers.

15          The only way the Insurers can meaningfully to respond to the letters is to seek to

16  lift the automatic stay to open discovery in every single case for which a letter is sent—thereby

17  completely undercutting the purported justification for Debtor's stipulation with the Committee

18  (which was to limit the number of cases proceeding in the tort system to just the Five Cases).

19  The bankruptcy court suggests that the Insurers "could seek" to lift the stay in all of the cases in

20  which claimants serve demand letters,[61] but it is a virtual certainty that Debtor would oppose such

21  a motion due to the burdens it would impose on the estate to allow such cases to proceed through

22  discovery.[62]

23

24  [59]   *In re Blixseth*, 509 B.R. at 706, quoting *Lair v. Bullock*, 697 F.3d at 1204.

25  [60]   Dkt. No. 1311 at 8.

26  [61]   Dkt. No. 1392 at 6.

27  [62]   Debtor may respond to this argument by noting that it has provided some information to Insurers
    in the bankruptcy case and the mediation.  But the Insurers would also need discovery from the
    claimants, including depositions, which would require lifting the stay generally in each underlying case

28                                                                                                                  (continued…)

INSURERS' MOTION FOR STAY PENDING APPEAL

1    The upshot of all this is that the automatic stay is improperly being deployed here

2    as both a sword and a shield—the stay is being lifted to allow issuance of demand letters, but is

3    being kept in place to bar the Insurers from obtaining, through discovery, the very information

4    they need to respond to the demands.  And the harm from this tactic will fall entirely on the

5    Insurers, since there is no consequence for claimants who serve unreasonable, unsupported

6    demands.

7    The bankruptcy court's Orders appear to not fully apprehend the massive harm the

8    Insurers will suffer from allowing issuance of more than 500 demand letters to Insurers while the

9    cases brought by the claimants issuing the demands remain subject to the automatic stay.  The

10   harm is not in merely receiving the demands, as the bankruptcy court seems to think.[63]  Rather,

11   the harm arises from the need to respond to the demands, in the absence of necessary

12   information, coupled with the risk that a refusal to accept the demand could lead, in a future

13   proceeding bolstered by hindsight, to massive extracontractual liability being imposed on the

14   Insurers.

15   The Text Order dismissively concludes that the Insurers "cannot be surprised or

16   harmed" by the demand letters, but that is far from the reality.  Debtor's bankruptcy case has

17   created an artificial circumstance whereby hundreds of claims are aggregated and paused, with no

18   discovery proceeding and the Insurers unable to obtain information beyond the limited amount

19   that the claimants voluntarily provide.[64]  Allowing more than 500 claimants suddenly and at once

20   to issue demand letters stands in contrast to the normal progression of cases in the tort system,

21   where some cases proceed at a time through discovery pursuant to negotiated or court-approved

22   scheduling orders, and demand letters are issued once sufficient discovery has taken place to allow

23   defendants and their insurers to value a particular case and trial is approaching.  Authorizing

24   _____

25   in which the claimant has served a demand letter.  For the reasons expressed by Debtor in its motion,
     its reply in support of the motion, and its opposition to the Insurers' bankruptcy court stay motion,

26   Debtor will want to avoid opening up any of the cases for discovery, let alone hundreds of them.

     [63]    *See* Dkt. No. 1392 at 6 ("The Insurers will also not suffer harm by receiving settlement demands").

27

     [64]    The Bar Date Order entered by the bankruptcy court established a regime under which abuse

28   claimants had the option, but were not required, to provide detailed information about their claims.
     *See, e.g.*, Dkt. No. 337 at 21-27 of 39.

issuance of hundreds of demand letters at the same time creates a compressed and burdensome timetable that is substantially different from how insurers would normally receive such demand letters, which here will undoubtedly present both "surprise" and harm.  And Debtors' claim that relief from stay is needed so that the claimants can determine the value of their own claims makes absolutely no sense, since their demands necessarily will be based on information they already have about their own claims (but which Insurers do not have).[65]

The bankruptcy court also did not address the administrative burdens and costs the issuance of hundreds of demand letters will impose on the Insurers.  The Orders permit more than 500 settlement demands to be issued immediately, to which the Insurers will have to respond within whatever time frames the claimants unilaterally set, with potentially draconian consequences as described above and in the Insurers' objection to the Debtor's motion.[66]  Having to respond to so many letters at the same time will obviously distract the Insurers from participating in the mediation, which not only harms the Insurers but also Debtor and the claimants.

In sum, lifting the stay to allow claimants to manufacture millions of dollars of new extracontractual liability in hundreds of cases, while the Insurers are barred (due to the automatic stay) from obtaining the information needed to respond to the letters, will irreparably harm the Insurers.

## IV.    Issuance of a stay pending appeal will not injure any other parties interested in the proceeding

Issuance of a stay pending appeal with respect to the proposed demand letters will not harm any of the other parties to this bankruptcy case.  A stay will merely reinstate the *status quo ante*, which consists of an ongoing mediation that Debtor recently described as making progress towards a global, consensual resolution and efficient and equitable compensation for

---

[65]    Dkt. No. 1311 at 5:22-26.  Debtor's argument is also inconsistent with its recent bankruptcy court status conference statement, in which it asserted that "[s]ettlement data points and paths for these cases are readily known and achievable here."  *Debtor's Status Conference Statement for September 4, 2025 Status Conference*, Dkt. No. 1318, ¶ 6.

[66]    *See* Dkt. No. 1302 at 11-14.

claimants. The automatic stay is one of the most important provisions in the Bankruptcy Code. It is not only a key debtor protection, it also protects creditors from a race to the courthouse.[67] There can be no injury resulting from keeping the automatic stay in place, for a limited time, while the question of whether it was improperly lifted is determined on appeal.

The bankruptcy court's finding that issuance of a stay would harm Debtor, the Committee, and all claimants is not based on any evidence. The court asserts that "the status quo is simply no longer tenable" because of a "standstill in mediation,"[68] but the court was not provided with any evidence either that the mediation was in a "standstill" or that allowing issuance of more than 500 demand letters might be an effective way of breaking any standstill. Contradicting the "standstill" narrative, Debtor had recently told the bankruptcy court that the mediation was "progressing as expected."[69]

Other courts have noted that issuance of demand letters will, in fact, "detract[ ]" from the mediation process. In *Diocese of Syracuse*, the bankruptcy court rejected a request by individual claimants for relief from the automatic stay in order to serve demand letters. The *Syracuse* court ruled that the relief sought "would not result in partial or complete resolution of the claims" and would significantly and negatively impact the bankruptcy case:

> There's also a huge connection with the bankruptcy case and interference with it. It detracts from the mediation process that's undergoing. It detracts from the reorganization process. . . . And the discovery and the process involved in those demands would be expensive, would have to result in delay, and could impede the negotiations and the good faith that has gone on with the mediation process.[70]

A plan in the *Syracuse* case was confirmed in August, 2025 on a fully consensual basis among the debtor, the Committee, and the debtor's insurers—with the bankruptcy court

---

[67]   *City of Chicago, Illinois v. Fulton*, 592 U.S. 154, 157 (2021) (the automatic stay "benefits creditors **as a group**" by preventing individual creditors from pursuing their own interests to the detriment of the others") (emphasis added).

[68]   Dkt. No. 1392 at 6-7.

[69]   Dkt. No. 1318, ¶ 5.  *See also id.*, ¶¶ 4, 12.

[70]   Transcript of Sept. 28, 2023 Hearing at 51:17-24, *In re The Roman Catholic Diocese of Syracuse*, Case No. 20-30663-WAK (N.D.N.Y. Sept. 28, 2023), attached as Exhibit C.

INSURERS' MOTION FOR STAY PENDING APPEAL

1   having never authorized service of outside-of-mediation demand letters.[71]

2          Of note, the *Syracuse* court was considering a request that only ten or 11 claimants

3   be permitted to serve demands, not hundreds.  Here, interference with the bankruptcy case, the

4   deleterious effect on mediation, and the attendant cost and delay would increase exponentially for

5   the reasons discussed below, given the much larger number of demand letters for which relief is

6   being sought.

7          And issuing a stay pending appeal will protect all the claimants whose cases were

8   not chosen as one of the Five Cases from the discriminatory treatment they will suffer if the

9   plaintiffs in the Five Cases are able to obtain judgments and recover from Insurers while all the

10  other claimants' claims remain stayed.[72]  Issuance of a stay will certainly not harm those 500+

11  claimants,.

12  **V.    Issuance of a stay pending appeal will not harm the general public**

13         This factor does not seem directly appropriate here.  But to the extent the general

14  public (including parishioners of the Archdiocese and claimants in this case whose cases remain

15  stayed) have an interest in seeing an earlier consensual resolution of this bankruptcy case through

16  mediation, anything that threatens to impair or delay the mediation process is a negative because it

17  will delay progress toward a confirmed plan.[73]  Here, as the *Syracuse* court noted, issuance of

18  demand letters will impede the mediation effort, not promote it.  That case fully resolved on a

19

20  ────────────────

21  [71]   *See* Dkt. No. 3073, *In re The Roman Catholic Diocese of Syracuse, New York*, Case No. 20-30663-5-wak (Bankr. N.D.N.Y. Sept. 26, 2025) (order confirming Debtor's plan); Dkt. Nos. 3086-3094, *In re The Roman Catholic Diocese of Syracuse, New York*, Case No. 20-30663-5-wak (Bankr. N.D.N.Y. Oct. 16, 2025) (orders approving insurance settlements).  Likewise, the *Diocese of Rochester* bankruptcy court last month issued an order confirming a completely consensual plan without ever having permitted demand letters to issue.  *See Decision and Order Confirming Eighth Amended Joint Chapter 11 Plan of Reorganization for the Diocese of Rochester*, Dkt. No. 3379, *In re Diocese of Rochester*, Case No. 19-20905 (Bankr. W.D.N.Y. Sept. 5, 2025).

25  [72]   *See* footnote 53 above.

26  [73]   Debtor has repeatedly noted that diocesan bankruptcy cases are resolved through mediations.  *See, e.g.*, *Debtor's Status Conference Statement for September 4, 2025 Status Conference*, Dkt. No. 1318, ¶ 3 (in "all" of the diocesan bankruptcy cases that have resulted in confirmed plans, "the terms of a consensual reorganization plan were reached following a mediation process in which the debtor, non-debtor entities, insurers and the creditors' committee representing the interests of survivors of sexual abuse participated").

1  consensual basis without the stay being lifted to allow any demand letters to issue.

2  **Conclusion**

3  For the reasons stated above, the Court should issue an ***emergency***, interim stay

4  while it considers the merits of the Insurers' motion for a stay pending appeal.  Doing so is

5  necessary to maintain the status quo and protect both the Insurers' appeal rights and the defense

6  of the Five Cases.

7  The Court should then grant the Insurers' motion for a stay pending appeal.  The

8  Insurers are likely to succeed on appeal, they will be irreparably harmed if a stay is not entered,

9  and no other party will be harmed if a stay is issued, nor will the general public suffer any harm.

10  DATED:  October 22, 2025                    Respectfully submitted,

11

12  By:    /s/ Mark D. Plevin
Mark D. Plevin  (State Bar No. 146278)
PLEVIN & TURNER LLP

13  580 California Street, Suite 1200
San Francisco, California  94104

14  Telephone:    (202) 580-6640
Email:        mplevin@plevinturner.com

15

16  Miranda H. Turner (admitted *pro hac vice*)
Jordan A. Hess (admitted *pro hac vice*)

17  PLEVIN & TURNER LLP
1701 Pennsylvania Avenue, N.W., Suite 200

18  Washington, D.C.  20004
Telephone:    (202) 5809-6640
Email:        mturner@plevinturner.com,

19  jhess@plevinturner.com

20  Alexander Potente (State Bar No. 208240)
Jason J. Chorley (State Bar No. 263225)

21  CLYDE & CO US LLP
150 California Street, 15th Floor

22  San Francisco, California  94111
Telephone:    (415) 365-9800

23  Email:        alex.potente@clydeco.us,
jason.chorley@clydeco.us

24

25  *Attorneys for Century Indemnity Company (as successor to*
*CCI Insurance Company, as successor to Insurance Company*

26  *of North America), Pacific Indemnity Company, and*
*Westchester Fire Insurance Company (as successor in interest*

27  *to Industrial Underwriters Insurance Company for policies*
*JU835-8355 and JU895-0964)*

28

- 29 -

Catalina J. Sugayan
Michael Norton
Yongli Yang
CLYDE & CO US LLP
30 S. Wacker Drive, Suite 2600
Chicago, Illinois  60606
Telephone:     (312) 635-7000
Email:          Catalina.Sugayan@clydeco.us, Michael
Norton@clydeco.us, Yongli.Yang@clydeco.us

Russell W. Roten
Jeff D. Kahane
Nathan Reinhardt
Timothy Evanston
SKARZYNSKI MARICK & BLACK LLP
633 West Fifth Street, 26th Floor
Los Angeles, California  90071
Telephone:     (213) 721-0650
Email:          jkahane@skarzynski.com,
rroten@skarzynski.com,
nreinhardt@skarzynski.com,
tevanston@skarzynski.com

*Attorneys for Certain Underwriters at Lloyd's London and
Certain London Market Companies*[74]

Mark D. Plevin  (State Bar No. 146278)
PLEVIN & TURNER LLP
580 California Street, Suite 1200
San Francisco, California  94104
Telephone:     (202) 580-6640
Email:          mplevin@plevinturner.com

Miranda H. Turner (admitted *pro hac vice*)
Jordan A. Hess (admitted *pro hac vice*)
PLEVIN & TURNER LLP
1701 Pennsylvania Avenue, N.W., Suite 200
Washington, D.C.  20004
Telephone:     (202) 5809-6640
Email:          mturner@plevinturner.com,
jhess@plevinturner.com

*Attorneys for Continental Casualty Company*

Joshua Haevernick (State Bar No. 308380)
DENTONS US LLP
1999 Harrison Street, Suite 1300

---

[74]    London Market Insurers are Certain Underwriters at Lloyd's, London; Catalina Worthing Insurance Ltd f/k/a HFPI (as Part VII transferee of Excess Insurance Co. Ltd.); the Ocean Marine Insurance Company Limited (as Part VII transferee of the World Auxiliary Insurance Corporation Limited); River Thames Insurance Company Limited; Dominion Insurance Company Limited; Companhia de Seguros Fidelidade-Mundial f/k/a Fidelidade Insurance Company of Lisbon; and R&Q Gamma Company Limited (as Part VII transferee of Anglo French Ltd.).

INSURERS' MOTION FOR STAY PENDING APPEAL

1    Oakland, California  94612
     Telephone:    (415) 882-5000
2    Email:        joshua.haevernick@dentons.com

3    Patrick C. Maxcy (admitted *pro hac vice*)
     DENTONS US LLP
4    233 South Wacker Drive, Suite 5900
     Chicago, Illinois 60606
5    Telephone:    (312) 876-8000
     Email:        patrick.maxcy@dentons.com

6
     Andrew D. Telles Wyatt (State Bar No. 316740)
7    DENTONS US LLP
     4675 MacArthur Court, Suite 1250
8    Newport Beach, California  92660
     Telephone:    (949) 732-3700
9    Email:        andrew.wyatt@dentons.com

10   *Attorneys for St. Paul Fire and Marine Insurance*
     *Company and Travelers Casualty and Surety*
11   *Company*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28