Paul J. Pascuzzi, State Bar No. 148810
Jason E. Rios, State Bar No. 190086
Thomas R. Phinney, State Bar No. 159435
Mikayla E. Kutsuris, State Bar No. 339777
FELDERSTEIN FITZGERALD
   WILLOUGHBY PASCUZZI & RIOS LLP
500 Capitol Mall, Suite 2250
Sacramento, CA  95814
Telephone:    (916) 329-7400
Facsimile:    (916) 329-7435
Email:        ppascuzzi@ffwplaw.com
             jrios@ffwplaw.com
             tphinney@ffwplaw.com
             mkutsuris@ffwplaw.com

Barron Weinstein, State Bar No. 67972
BLANK ROME
2029 Century Park East, 6th Fl,
Los Angeles, CA 90067
Telephone:    (424)-239-3696
Facsimile:    (424)-239-3434
Email:        Barron.Weinstein@blankrome.com

Attorneys for The Roman Catholic Archbishop of
San Francisco

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTURY INDEMNITY COMPANY,<br><br>           Appellant,<br><br>    v.<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, *et al*,<br><br>           Appellees. | Case No. 25-cv-08563-WHO<br><br>**OPPOSITION TO INSURERS' MOTION FOR (i) STAY PENDING APPEAL AND (ii) *EMERGENCY* INTERIM STAY TO ALLOW THE COURT TO CONSIDER THE MOTION FOR A STAY PENDING APPEAL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Re:  Dkt. No. 3<br><br>Date:       October 31, 2025<br>Time:       1:30 p.m.<br>Location:   Zoom videoconference<br>Judge:     William H. Orrick |

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ........................................................................................... 1

II.   BACKGROUND ............................................................................................................. 4

III.  STANDARD GOVERNING THE INSURERS' MOTION ................................................... 7

IV.   THE INSURERS HAVE NOT DEMONSTRATED ENTITLEMENT TO A STAY
      PENDING APPEAL ....................................................................................................... 8

   A.    The Insurers Have Not Demonstrated a Likelihood of Irreparable Harm ...................... 8

   B.    A Stay Would Inflict Serious Harm on the Debtor and Other Interested Parties ........... 10

   C.    The Public Interest Supports Denial of a Stay ............................................................ 11

   D.    The Insurers' Appeal Is Unlikely to Succeed on the Merits ......................................... 11

V.    CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*(In re Fjeldsted)*, 293 B.R. 12, 24–25 (9th Cir. BAP 2003) ................................................ 14

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ........................... 8

*Bakersfield City School Dist. v. Boyer*, 610 F.2d 621, 626 (9th Cir. 1979) ........................ 9

*Benedor Corp v. Conejo Enters., Inc. (In re Conejo Enters., Inc.)*, 96 F.3d 346, 351-52 (9th Cir. 1996). ......................................................................................................................... 14

*In re A & C Props.*, 784 F.2d 1377, 1380 (9th Cir. 1986) .................................................. 11

*In re Altman*, 2018 Bankr. LEXIS 1947 (9th Cir. BAP 2018) ............................................ 13

*In re Blixseth*, 509 B.R. 701, 705-06 (Bankr. D. Mont. 2014) ............................................. 7

*In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984) ............................................... 13

*In re Gotcha Int'l L.P.*, 311 B.R. 250, 255 (9th Cir. B.A.P. 2004) ................................... 10

*In re Irwin*, 338 B.R. 839, 843 (Bankr. E.D. Cal. 2006) ...................................................... 7

*In re Kronemyer*, 405 B.R. 915, 919 (9th Cir. BAP 2009) ................................................. 11

*In re MGS Mktg.*, 111 B.R. 264, 266-67 (9th Cir. BAP 1990) ........................................... 11

*In re PG&E Corp.*, 2019 Bankr. LEXIS 2593 (Bankr. N.D. Cal. 2019) ............................ 14

*In re Stella*, 2006 Bankr. LEXIS 1980, 2006 WL 2433443, at *4 (Bankr. D. Idaho June 28, 2006) ................................................................................................................................... 14

*In re Tactical Ordinance & Equip. Corp.*, 2005 Bankr. LEXIS 3038, 2005 WL 4705285, at *3 (Bankr. D. Idaho Mar. 17, 2005) ................................................................................... 14

*In re Veal*, 449 B.R. 542, 2011(9th Cir. BAP June 10, 2011) ........................................... 11

*Lair v. Bullock*, 697 F.3d 1200, 1203 (9th Cir. 2012) ......................................................... 7

*Nken v. Holder*, 556 U.S. 418, 433 (2009) ........................................................................... 7

*Renegotiation Bd. v. Bannercraft Clothing Co., Inc.*, 415 U.S. 1, 24 (1974) ...................... 9

*Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) ......................................... 8

*Winter*, 555 U.S. 7, 22 (2008) ............................................................................................... 8

**Statutes**

11 U.S.C. § 362(a) ................................................................................................................... 2

**Rules**

Fed. R. Bankr. P. 9019 ............................................................................................................ 4

Fed. Rule of Bankr. Proc. 9019 ............................................................................................. 12

Appellee, the Roman Catholic Archbishop of San Francisco (the "<u>Debtor</u>" or "<u>RCASF</u>"), hereby files this opposition to the *Insurers' Motion for (i) Stay Pending Appeal and (ii) Emergency Interim Stay to Allow the Court to Consider the Motion for a Stay Pending Appeal; Memorandum of Points and Authorities in Support* [Dkt. No. 3] (the "<u>Stay Motion</u>").[1]

## I.    PRELIMINARY STATEMENT

The new Stay Motion filed in this Court is the second request by the moving insurers (the "<u>Insurers</u>") for a stay of the Stipulated Order (defined below) entered by the Bankruptcy Court in RCASF's pending Chapter 11 bankruptcy case.  The Stipulated Order approved a stipulation and compromise entered into by the Debtor, the Unsecured Creditors' Committee, and certain sexual abuse claimants.  The Debtor was faced with the prospect of all of the pending cases against non-debtor affiliates of the Debtor proceeding to trial, which would have resulted in approximately 40 cases released for trial.  The Debtor filed an adversary proceeding (a lawsuit under the umbrella of the main bankruptcy case), and moved for an injunction to extend the automatic stay to cover the non-debtor affiliates to avoid the crushing economic burden and risks of 40 cases proceeding to trial and impairing the Debtor's insurance.  The outcome of that dispute was uncertain and, in fact, the Bankruptcy Court had already released two cases over the Debtor's objections.  In order to resolve the dispute and the pending litigation, the Debtor and Committee reached a compromise whereby only 5 cases were released and the remaining approximately 35 cases were stayed.  In addition, the claimants were permitted to send settlement demands to the debtor and the insurers without violating the stay.  The Bankruptcy Court issued an order approving the compromise and the insurers filed three appeals.  The Bankruptcy Court denied the insurers request for a stay of the Bankruptcy Court's order pending the appeals and the Insurers in this case have now filed a second motion seeking a stay

---

[1]    The Debtor notes that the Stay Motion was made by the insurers for the above-captioned appeal, as well as Certain Underwriters at Lloyd's, London and Certain London Market Companies ("<u>LMI</u>"), which filed a separate notice of appeal pending before this Court as Case No. Case 3:25-cv-08568-WHO.  The Insurers have not filed a Notice of Related Case or moved to consolidate their appeals, and LMI has not filed a motion seeking a stay in its appeal, so it is unclear how LMI can be a moving party on the Stay Motion.

pending appeal in this Court, but apparently now seeking only to stay the claimant's ability to send settlement demands to the Debtor and Insurers.

Like the first motion, which was denied by the Bankruptcy Court, this Stay Motion fails to establish the required elements of (1) a strong showing that the Insurers are likely to succeed on the merits; (2) that the Insurers will be irreparably injured absent a stay; (3) that issuance of the stay will substantially injure the other parties interested in the bankruptcy proceeding; and (4) that the public interest lies in granting a stay.

Recognizing the failings in the first stay motion, this second Stay Motion focuses on one component of the Bankruptcy Court's order granting relief from the automatic stay provided by 11 U.S.C. § 362(a), namely lifting the stay to the extent necessary to allow claimants to issue demand letters to the Debtor and request that the Debtor tender of those letters to the Insurers. However, the Insurers have not submitted any evidence in support of their Stay Motion that they will suffer any actual harm, let alone irreparable harm, or that the Bankruptcy Court abused its discretion in granting the stipulated relief from the automatic stay.[2]  It is axiomatic that the automatic stay provided by 11 U.S.C. § 362(a) is provided to protect the Debtor, not its insurers.  The Insurers fail to show (i) how lifting a stay that is not provided by Congress to protect the Insurers in the first instance somehow irreparably harms the Insurers, (ii) how performing their contractual obligations to the Debtor with respect to claimant demand letters, as they would be required to do if no bankruptcy case were filed, irreparably harms the Insurers, or (iii) any actual inability to evaluate and respond to those letters after two years of proceedings and access to all claims submitted by the Claimants confidentially in the Debtor's bankruptcy case.  Moreover, the Insurers fail to overcome the reality that the Bankruptcy Court's Stipulated Order is in the best interests of the Debtor, its bankruptcy estate, and the many other constituents of this complex chapter 11 case.  Thus, the Insurers have no likelihood of showing that the Bankruptcy Court, via the Hon. Dennis Montali, abused his discretion in entering the order lifting the automatic stay for the limited purposes provided in the Stipulated Order, and the Insurers

---

[2]    As noted below, the Bankruptcy Court's Order granting relief from stay and approving the Stipulation as a compromise will be reviewed for abuse of discretion.

have failed to establish that the interests of the interested parties in the Debtor's Chapter 11 case or the public warrant reversal.

Judge Montali issued a detailed written order (the "Stay Denial Order" at ECF No. 1392)[3] denying the Insurer's first request for a stay of the Stipulated Order attached hereto as ***Exhibit A***. The Bankruptcy Court's Stay Denial Order explains why the Insurers fail to establish a strong showing that the Insurers are likely to succeed on the merits of their appeal. The Bankruptcy Court recognized that the Stipulated Order was a compromise to allow only five cases, as opposed to thirty-nine, to proceed to trial against the Debtor's and its affiliates' wishes. The Bankruptcy Court correctly found that the Stipulated Order was entered into on the basis that this compromise is less expensive than litigating and will lead to more fruitful mediation discussions. The Bankruptcy Court found that the possibility that it would deny Debtor's stay request and allow all thirty-nine cases to go to trial loomed large and would have resulted in much greater expense to the Insurers than what they complain of now. Stay Denial Order at pg. 5:3-13.

The Bankruptcy Court also properly rejected the Insurers' claim that they will be irreparably injured by receiving settlement demands. The Bankruptcy Court correctly noted that there is no requirement that the Insurers pay those demands sight unseen, and to the extent the stay may need to be modified to evaluate those demands, the Insurers could seek such relief. As recognized by the Debtor in its business judgment considerations for agreeing to the Stipulated Order, it is more likely in the absence of the compromise that stay relief would have been granted to all abuse claimants to make their demands on the Debtor for the purposes of the Debtor then sending them on to the Insurers. Stay Denial Order at pg. 6, lines 3-19.

The Bankruptcy Court also properly found that the issuance of the Insurers' requested stay pending appeal would substantially injure the other parties interested in the bankruptcy proceeding. The Debtor, the Creditors Committee and the Insurers have been in mediation for over a year and a half. The Bankruptcy Court recognized that releasing a small number of cases for trial and allowing

---

[3]     References to Docket Numbers "Dkt" are to this Court's docket on appeal, and references to Electronic Filing Numbers "ECF" are to the underlying Bankruptcy Court docket.

3

the demand letters could assist in the mediation.  The Bankruptcy Court rejected the Insurers' plea to maintain the status quo where they enjoy the benefits of the Debtor's automatic stay without the burdens the Debtor and survivors suffer by the passage of time and consumption of estate resources. Stay Denial Order at pg. 6, lines 20-28.

The Bankruptcy Court also recognized the principle of compromise and settlement is built into the fabric of bankruptcy in the form of Fed. R. Bankr. P. 9019 and chapter 11 plans of reorganization.  This unique aspect of bankruptcy and the public policy favoring settlements shows that the public interest lies in denying a stay.  The Bankruptcy Court noted its role in approving settlements in bankruptcy cases is to evaluate the issues pursuant to what are widely known as the *A & C Properties* factors as to whether the compromise falls within a range of reasonableness.  *Id.*

As the Bankruptcy Court concluded, in this bankruptcy case "the stakes for the Debtor, its many parishioners, and the survivor claimants are so high that this compromise in the form of the Stipulation is an excellent result and may represent a significant step toward a confirmable reorganization plan."  Stay Denial Order at pg. 7:24-28.  These same considerations weigh heavily against the Insurers' replicated request for this Court to stay the Stipulated Order pending appeal.

## II.    <u>BACKGROUND</u>

The Debtor has been in bankruptcy for over two years since its voluntary petition for relief was filed August 21, 2023.  From the outset of this chapter 11 case, the Debtor has worked diligently to seek a negotiated chapter 11 plan of reorganization as early as possible which will provide a process to fully, fairly and expeditiously resolve claims of abuse survivors and permit the RCASF to carry on its essential ministries and services so the RCASF can continue to meet the needs of the Non-Debtor Catholic Entities, parishioners, and others who rely on the RCASF's ministry, education, and charitable outreach.

Virtually all of the Chapter 11 diocesan or religious organization bankruptcy cases that have progressed through the plan confirmation process have resulted in confirmation of consensual reorganization plans (though in some cases, confirmation was obtained over the objections of certain non-settling insurers).  In all those cases, the terms of a consensual reorganization plan were reached following a mediation process in which the debtor, non-debtor entities, insurers and the creditors'

4

committee representing the interests of survivors of sexual abuse participated.  Similarly, in this bankruptcy case the Debtor and the Committee, and to some extent the Insurers, have been active mediation participants under the Mediation Order.

The Chapter 11 process has created a structure for the transparent provision of information to the Committee and Insurers (which is substantially accomplished), all constituents in the Bankruptcy Case are represented, and professional, experienced mediators have been, and continue to mediate the disputes among the Mediation Parties, ensuring a framework for the Mediation Parties to negotiate a global settlement.

On July 15, 2024, the Bankruptcy Court entered its Order Referring Case to Mediation and Appointing Mediator [ECF No. 747] appointing the Hon. Daniel J. Buckley (Ret.), Timothy V.P. Gallagher, and the Hon. Christopher S. Sontchi (Ret.) as mediators (collectively, the "Mediators"). The Debtor has been and continues to work towards the steps that have been successful in other Catholic Diocese cases for a productive mediation.  This includes exchanging information among the Debtor, Committee, all of the Debtor's insurers, and related parties; the Debtor and the Committee working together on the abuse claims noticing and filing procedures (approved by court order at ECF No. 337); determining the course to stay the litigation against co-defendants, additional insured parties, and potential contributors to a reorganization plan settlement which resulted in the Stipulated Order; selection and appointment of an unknown claims representative; selection of the Mediators; and mediation.  The results of the mediation typically form the basis for the chapter 11 plan of reorganization.

Notwithstanding the progress that has been made in this case, and the mediation, the plaintiffs in the pending Affiliate State Court Actions[4] sought to prosecute those actions against the Non-Debtor Affiliates.  There were approximately 537 state court actions pending against the Debtor when this case was filed, at least 39 of which include claims against the Non-Debtor Affiliates who are co-insureds under the Debtor's insurance policies.  The Debtor believes that continued litigation across

---

[4]     Capitalized terms not defined herein shall have the meaning as defined in the Stipulation referenced below and filed as part of Exhibit A to the Relief from Stay Motion (defined below).

these dozens of cases would impair its assets (the insurance policies) and its ability to achieve a timely and successful negotiated plan.  Therefore, as part of the Debtor's efforts to make progress in the mediation and this case, on April 28, 2025, the Debtor initiated Adversary Proceeding No. 25-03019 (the "Adversary Proceeding") by filing a complaint for declaratory and injunctive relief that seeks to prevent all of the Affiliate State Court Actions from proceeding for the duration of the Debtor's Bankruptcy Case.  [Adv. Pro. ECF No.  1].  On May 29, 2025, the Debtor filed the *Motion for Order Extending Stay to All State Court Cases in Which Debtor and/or Nondebtor Affiliate are Named as Defendants Under Bankruptcy Code Sections 105(a) and 362* along with supporting declarations and exhibits [Adv. Pro. ECF No. 8, 8-1, 8-2, 8-3, 9, 10, 12] (the "Injunction Motion"), seeking both a declaration that the automatic stay extends to all Affiliate State Court Actions and, in the alternative, an injunction to prevent all Affiliate State Court Actions from proceeding against the Non-Debtor Affiliates while mediation is pursued.

In order to resolve the Injunction Motion, the Debtor, Committee, and the Survivor Defendants (as defined in the Stipulation) entered into the Stipulation [Adv. Pro. ECF No. 21, ECF No. 1285-1] that was approved by the Bankruptcy Court's order that is now the subject of the Insurers' pending appeal (the "Stipulated Order," collectively the Docket Text Order issued on September 2, 2025 at 9:07 a.m. and written order ECF No. 1346).  Generally, the Stipulation provides that (i) except as to the five Released State Court Actions, all pending Affiliate State Court Actions shall be enjoined, (ii) the five Released State Court Actions may proceed to trial, (iii) the Survivors may make written settlement demands on the Debtor and any non-Debtor defendant(s) and request that the Debtor and any non-Debtor defendant(s) tender those demands on their respective insurers and request that the insurers pay those demands.

This Stipulation strikes a careful balance by allowing the five Released State Court Actions to proceed to trial, while otherwise preserving the status quo in the dozens of other pending Affiliate State Court Actions to allow the Debtor, the Non-Debtor Affiliates, the Committee, and the Insurers to focus their efforts and resources on the continuing mediation towards a plan of reorganization.

The movant Insurers ask this Court to simply put all of this on hold while they pursue an appeal of the Stipulated Order granting Debtor's *Motion to Approve Compromise and Stipulation*

6

1  *Modifying the Automatic Stay* (the "Compromise and Relief from Stay Motion," ECF 1285).  That

2  appeal will likely take months (perhaps years) to progress through this Court and the Ninth Circuit

3  Court of Appeals.  The impact of such a lengthy stay on the Debtor's ability to reach a compromise

4  through the mediation and a plan of reorganization would be significant.  Were the Stipulated Order

5  and the underlying compromise of the Stipulation stayed, the Debtor likely would continue to be

6  embroiled in the litigation of the Adversary Proceeding and the Injunction Motion thereby putting

7  the Debtor and the Debtor's efforts to keep the focus and resources of the Debtor and the Non-Debtor

8  Affiliates on the mediation at risk.  In the meantime, the Debtor is severely prejudiced by any delay

9  in resolving the bankruptcy case as its resources are consumed by continuing administration of the

10  bankruptcy case and litigation.[5]

11       The Insurers' Motion should therefore be denied.

12  **III.    STANDARD GOVERNING THE INSURERS' MOTION**

13       Generally, "[a] stay is not a matter of right …. It is instead an exercise of judicial discretion."

14  *Nken v. Holder*, 556 U.S. 418, 433 (2009) (internal quotation marks omitted).  That discretion is

15  guided by four factors, which mirror in large part the traditional standard that applies to a motion for

16  preliminary injunctive relief: "(1) whether the stay applicant has made a strong showing that he is

17  likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3)

18  whether issuance of the stay will substantially injure the other parties interested in the proceeding;

19  and (4) where the public interest lies." *Id.* at 426; *In re Blixseth*, 509 B.R. 701, 705-06 (Bankr. D.

20  Mont. 2014).  The Insurers bear the burden on each and every one of these factors.  *Lair v. Bullock*,

21  697 F.3d 1200, 1203 (9th Cir. 2012). "[F]ailure to satisfy one prong of the standard for granting a

22  stay pending appeal dooms the motion." *In re Irwin*, 338 B.R. 839, 843 (Bankr. E.D. Cal. 2006).

23       The stay Motion is not supported by any evidence and falls far short of establishing a

24  likelihood of irreparable injury.  In *Winter v. Natural Res. Def. Council, Inc.*, "the Supreme Court

25  definitively refuted [the Ninth Circuit's] 'possibility of irreparable injury' standard." *Stormans, Inc.*

26

27  ───────────────────────

[5]    The Debtor's September Monthly Operating Report shows total professional fees paid of over

28  $15 million.  See ECF No. 1409 at pg. 8 of 12.

7

1    *v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009); *see Winter*, 555 U.S. 7, 22 (2008) ("[T]he Ninth

2    Circuit's 'possibility' standard is too lenient.").  In *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d

3    1127 (9th Cir. 2011), the Ninth Circuit repeatedly explained that "[u]nder *Winter*, [movants] must

4    establish that irreparable harm is *likely*, not just possible," *id.* at 1131.  *See id.* at 1132; 1135.

5        In light of *Winter* and other Ninth Circuit authority post-*Winter*, the Insurers cannot skirt the

6    requirement that they show a likelihood of irreparable harm.  Their failure to do so is fatal to their

7    Motion regardless of the showing on the other factors.  And the stay Motion is also properly denied

8    because of the inadequacy of their showing on those factors as well.

9    **IV.     THE INSURERS HAVE NOT DEMONSTRATED ENTITLEMENT TO A STAY**

10   **PENDING APPEAL**

11       The Insurers devote most of their Motion to advancing the same legal arguments the

12   Bankruptcy Court has already carefully examined and rejected.  This Court need not rehash the merits

13   to resolve the Insurers' Motion because the Insurers have mustered next to nothing on the other three

14   relevant factors.  First, the Insurers have completely failed to show that it is likely that they will be

15   irreparably harmed absent a stay.  Second, against the Insurers' non-existent showing of harm, the

16   Debtor provided the Bankruptcy Court persuasive evidence in support of its underlying motion and

17   the Bankruptcy Court is well aware of the record of this case of the harm that the Debtor and the

18   various constituencies risk suffering as a result of a lengthy delay in implementing the Stipulation

19   and the Stipulated Order.  And third, the Insurers have done nothing to refute the obvious public

20   interest in the Debtor's emergence from bankruptcy.  Each of these failures is a sufficient basis upon

21   which to deny the Motion.  The failure on all three renders the Motion completely without merit.  If

22   the Court does feel the need to dive back into the Insurer's likelihood of success on the merits,

23   however, the Insurer's Motion plainly fails on that basis, too.

24       **A.     The Insurers Have Not Demonstrated a Likelihood of Irreparable Harm**

25       As explained above, the Insurers may not obtain a stay by showing something less than a

26   likelihood of irreparable harm.  *Winter* and a host of Ninth Circuit authority hold directly to the

27   contrary.  Thus, no stay can issue unless the Insurers show that irreparable harm is likely.  *Winter*,

28   555 U.S. at 22; *Stormans, Inc.*, 586 F.3d at 1127; *Alliance for the Wild Rockies*, 632 F.3d at 1131-32,

8

35; *Am. Trucking*, 559 F.3d at 1052. Yet to justify their purported need to stay the implementation of the Order, the Insurers submit no evidence that they will suffer some grave and irreparable harm. Indeed, the Insurers did not submit any evidence at all in support of their Motion. Instead, the Insurers perplexingly assert that lifting the automatic stay, which does not apply to protect the non-debtor Insurers, will somehow cause them harm.

Upon examination, the Insurers' asserted harm is illusory. First, the Insurers simply invoke the possibility that they may be compelled to perform their contractual duties to respond to claimant demand letters but fail to explain how their being called to perform their duties under their insurance policies constitutes irreparable harm. Second, while the Insurers assert that they will incur some costs and administrative time burdens of evaluating the potential demand letters, the Supreme Court has squarely held that "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *Renegotiation Bd. v. Bannercraft Clothing Co., Inc.*, 415 U.S. 1, 24 (1974). "[T]ime and expenses due to litigation are not enough." *Bakersfield City School Dist. v. Boyer*, 610 F.2d 621, 626 (9th Cir. 1979). Third, if the Insurers actually encounter some need for information that they do not have (unlikely given the substantial discovery over the past two years of the case), they can simply request that information or, to the extent necessary, seek relief from the automatic stay to obtain such information.

The Insurers attempt to manufacture an asserted harm by suggesting that they <u>may</u> not have information that they <u>may</u> want to evaluate the claimants' possible demands. The Insurers' Motion fails to include any evidence or identify any item of information that it needs to evaluate a claimant's demand. The Debtor's bankruptcy case has been pending for over two years with a substantial amount of information exchanged and provided to the insurers who have had confidential access to all claims asserted by the claimants in this chapter 11 bankruptcy case. After receiving thousands of pages of documents related to the claims asserted in this case, and the claims themselves, the mere possibility that the Insurers may want some piece of information that it does not currently have or might not be provided in the future does not establish a likelihood of irreparable harm.

Thus, the Insurers' showing is so half-hearted that one wonders whether the purpose of their Motion is not actually to obtain a stay, but rather simply to satisfy their "burden *to seek* a stay if post-

1  appeal transactions could render the appeal moot." *In re Gotcha Int'l L.P.*, 311 B.R. 250, 255 (9th

2  Cir. B.A.P. 2004) (emphasis added) (citing *In re Filtercorp, Inc.*, 163 F.3d 570, 576-577 (9th Cir.

3  1998)).  Whether the Insurers' perfunctory Motion sufficiently checks this box is a question for

4  another day and another court.  It was the Insurers' burden to show that they will likely suffer

5  irreparable harm if a stay is not granted, *Lair*, 697 F.3d at 1203, and they have not carried that burden.

6  Thus, under *Winter*, their Motion must be denied.

7       **B.**    **A Stay Would Inflict Serious Harm on the Debtor and Other Interested Parties**

8       The Motion must also be denied because "issuance of the stay will substantially injure the

9  other parties interested in the proceeding." *Nken*, 556 U.S. at 426.  The Insurers wrongly argue that

10  issuance of a stay pending appeal will not harm any of the other parties to this case as it will simply

11  preserve the *status quo ante*.  Insurers Mot. 26:21-27:1.  This argument blithely ignores that the *status*

12  *quo ante* is (i) the Debtor engaged in protracted litigation in the Adversary Proceeding, and (ii) the

13  plaintiffs in the Affiliate State Court Actions seeking to proceed with dozens of lawsuits against the

14  Non-Debtor Affiliates.  These actions are diverting time, energy, and resources from the mediation

15  and a global resolution in this case that will allow the Debtor to proceed to a confirmation of a Plan.

16       As explained in the Injunction Motion, and its supporting evidence, proceeding with the

17  dozens of lawsuits against the Non-Debtor Affiliates puts the entire bankruptcy case and the ultimate

18  recovery of the estate's creditors at risk of delay and impaired recovery.  Further litigation in the

19  Adversary Proceeding will result in significant administrative expenses that must be paid before

20  general unsecured creditors and further state court litigation against the Non-Debtor Affiliates would

21  adversely affect any contribution that they might otherwise provide to a plan.  The Debtor has already

22  spent two years diligently seeking a resolution in this case, and the Stipulation was entered as a

23  compromise to help advance the mediation process and maximize the amount of funds that can be

24  available to creditors in this case.  Thus, if a stay of the Bankruptcy Court's Stipulated Order pending

25  appeal were granted, the Debtor's mediation efforts, plan completion and hundreds of creditors would

26  suffer.

27  ///

28  ///

C.    **The Public Interest Supports Denial of a Stay**

For similar reasons, the public interest cuts decidedly against a stay.  The Insurers cannot overcome this fact.  The purpose of chapter 11 is to permit a debtor in financial distress to adjust its debts and emerge from bankruptcy.  The sooner the Debtor can negotiate a plan of reorganization and emerge from bankruptcy, the sooner the Debtor can provide compensation to the Survivors and the sooner the Debtor can return to focusing on meeting the needs of the parishioners, the Catholic community, and others who rely on the RCASF's ministry, education, and charitable outreach.

The Insurers seek to avoid this basic truth by wrongly asserting that the Stipulation and Stipulated Order threaten to impair or delay the mediation.  This argument simply misses the mark.  As explained above, the primary purpose and effect of the Stipulation is to move the mediation forward and help the Debtor get to a confirmed plan.  When the Insurers' weak claim of injury is stacked up against the near certain impairment that a lengthy stay pending appeal will cause the Debtor, the Survivors, and the public, this is not even a close case.

D.    **The Insurers' Appeal Is Unlikely to Succeed on the Merits**

Finally, the Insurers have little chance of succeeding on the merits.  Their arguments are no more compelling than when they failed to persuade the Bankruptcy Court in opposition to the Compromise and Relief from Stay Motion or in their first motion seeking a stay pending appeal [6]

First, the Insurers begin their argument on the merits with an assertion that the Stipulated Order is not supported by any admissible evidence by attempting to characterize the Fr. Summerhays Declaration [ECF No. 1288] as conclusory.  However, the Insurers inexplicably ignore the incorporation into the record in support of the Compromise and Relief From Stay Motion of all of the underlying pleadings, argument and evidence on the Injunction Motion (See Request for Judicial

---

[6]    The standard of review for the Bankruptcy Court's Order granting relief from stay is for abuse of discretion.  *In re Veal*, 449 B.R. 542, 2011(9th Cir. BAP June 10, 2011); *In re Kronemyer*, 405 B.R. 915, 919 (9th Cir. BAP 2009).  Similarly, the Bankruptcy Court's decision to approve a compromise is reviewed for abuse of discretion.  *In re A & C Props.*, 784 F.2d 1377, 1380 (9th Cir. 1986), *cert. denied*, 479 U.S. 854 (1986); *In re MGS Mktg.*, 111 B.R. 264, 266-67 (9th Cir. BAP 1990).  However, regardless of what standard of review is applied, the Insurers' challenges are unlikely to succeed under any standard of review.

Notice ECF No. 1287) and the Stipulation itself submitted as part of Exhibit A to the Compromise and Relief from Stay Motion [ECF No. 1285-1].[7]  The Injunction Motion and underlying pleadings, including substantial evidence of the insurance situation, and the ongoing costs to the Debtor's bankruptcy estate demonstrate to the Court that the compromise was fair and equitable, in the best interests of the estate, and reasonable under Fed. Rule of Bankr. Proc. 9019 and further demonstrate that cause existed to grant relief from the automatic stay to implement the Stipulation.  This evidence includes but is not limited to the pending litigation before the Bankruptcy Court in the Adversary Proceeding and the Monthly Operating Reports showing millions in professional fees already incurred.  *See* ECF No. 1409 at pg. 8 of 12.

As noted above, Stipulation strikes a careful balance among the interests of the Debtor's estate in preserving insurance and other resources in enjoining the dozens of Affiliate State Court Actions, on the one hand, and the interests of the Committee and the Survivors in allowing a small number (five) of Survivor Actions to proceed to trial.  The Stipulation protects the Debtor's estate from any enforcement remedies for any judgments that might be entered against the Debtor in those five actions by lifting the stay for the five Survivor actions to be litigated and tried to judgment, but not collectible against assets of the estate or the Non-Debtor Affiliate co-defendants.  As further noted above, this Stipulation puts to rest the Adversary Proceeding and the Injunction Motion, which have been heavily litigated and would otherwise detract from the resolution of this case through the mediation.  As the Bankruptcy Court found, the Insurers' lead argument of lack of evidence supporting the Stipulated Order does not hold water.

The Insurers further assert that the Stipulated Order should be overturned on appeal because it allowed the claimants to submit demand letters.  However, the Insurers conduct their analysis as if this were the only element of the Stipulation and the only effect of the Stipulated Order.  As noted above, the Stipulation attempted to balance multiple interests and the Bankruptcy Court's Order

---

[7]    The Insurers' objection to the admissibility of the Declaration of Fr. Summerhays in support of the Compromise and Relief from Stay Motion on the grounds that it contained "legal conclusions and offers improper lay opinions" were similarly weak.  As noted in the Stay Denial Order, the Bankruptcy Court and any court can tell the difference between facts and legal conclusions and consider lay opinion as appropriate.

approving the Stipulation did the same.  Thus, the Insurers' criticism of the Bankruptcy Court's findings as unsupported by evidence or that the relief from stay to allow demand letters is made in a vacuum that does not take into account the Court's approval of the Stipulation as a whole, in its discretion.

Moreover, these evidentiary complaints, and Insurers' assertion that the Bankruptcy Court did "not fully apprehend" the potential impact of the demand letters that would be allowed by the Stipulated Order on the Insurers (Insurers' Mot. 25:7-9), do not provide a basis for an appellate court to reverse the Stipulated Order as an abuse of discretion.  The Stipulated Order states the Bankruptcy Court's evaluation of the evidence and includes a finding that the Insurers cannot be surprised or harmed by the order or the limited relief from stay granted to the claimants.  And as further noted in its order denying the Insurers' first motion for a stay pending appeal, the Bankruptcy Court did take the potential impact of the Stipulated Order on the Insurers into consideration.  The Insurers provide no evidence in taking the presumptuous position that the Bankruptcy Court did not understand the Insurers' opposition to the Motion or that the Bankruptcy Court abused its discretion in weighing the balance of interests.  Even if an appellate court were to assume that the Insurers being asked to perform their contractual duties to perform under their insurance policies constitutes harm, there is no basis for that appellate court to find that the Bankruptcy Court abused its discretion in weighing the interests advanced by the Stipulation and the Stipulated Order as being more beneficial to the Debtor's estate and the parties in interest.

The Insurers seek to avoid these realities by wrongly asserting that the Bankruptcy Court failed to properly apply certain factors that can be used to consider a request for relief from the automatic stay as outlined by a bankruptcy court in *In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984).  However, *In re Curtis*, a decision from the Bankruptcy Court for the District of Utah, is not binding on the Bankruptcy Court presiding over the Debtor's case and, in any event, merely provides a non-exclusive list of factors that a bankruptcy court may chose to consider when exercising its discretion whether to lift the automatic stay for "cause."  Thus, the Bankruptcy Court was not required to consider the *Curtis* factors to determine whether "cause" to lift the automatic stay is proper.  *See In re Altman*, 2018 Bankr. LEXIS 1947 (stating, that "[a]lthough the above referenced

factors **may be considered by the bankruptcy court**, "cause" is a generic concept without a specific definition that it committed to the sound discretion of the bankruptcy court on a case-by-case basis") (**emphasis added**) (9th Cir. BAP 2018) (citing *Benedor Corp v. Conejo Enters., Inc. (In re Conejo Enters., Inc.)*, 96 F.3d 346, 351-52 (9th Cir. 1996); *see also In re PG&E Corp.*, 2019 Bankr. LEXIS 2593 (Bankr. N.D. Cal. 2019) (stating that, "cause exists to grant relief from stay, both including and **independent** of the *Curtis* factors") (**emphasis added**).  Accordingly, while courts within the Ninth Circuit often look to the *Curtis* factors for guidance, a weighing of the factors is not required. *See id*.  Therefore, the Insurers' argument fails because the bankruptcy court had no obligation to apply the *Curtis* factors in the first place.

And, even if this Court were to consider the *Curtis* factors, it could not find that the Bankruptcy Court abused its discretion in weighing these factors because the record demonstrates that the bankruptcy court properly evaluated the issues before it.  In its docket text order, the Court expressly noted that it considered the Compromise and Relief From Stay Motion (ECF No. 1285) and related pleadings which cited to the *Curtis* factors.  Moreover, the Insurers emphasize only those factors they perceive support their position while downplaying those that do not.  However, as the Ninth Circuit has recognized, factor-driven analyses in bankruptcy law is not a mere exercise in arithmetic.  See *In re Stella*, 2006 Bankr. LEXIS 1980, 2006 WL 2433443, at *4 (Bankr. D. Idaho June 28, 2006) (stating that, "[S]uch lists are capable of being misconstrued as inviting arithmetical reasoning but are merely a framework for analysis and not a scorecard.  In any given case, one factor may so outweigh the others as to be dispositive.") (quoting *Fjeldsted v. Lien (In re Fjeldsted)*, 293 B.R. 12, 24–25 (9th Cir. BAP 2003)); *see also In re Tactical Ordinance & Equip. Corp.*, 2005 Bankr. LEXIS 3038, 2005 WL 4705285, at *3 (Bankr. D. Idaho Mar. 17, 2005) (considering a stay-lift request to allow a state court jury trial and noting that "[c]ertain [of the *Curtis*] factors may tilt decidedly in favor of the motion, and others in the opposite direction.  Still others may add little to the balance.  At best, these factors provide analytic tools by which proof can be sifted and weighed, assisting the Court in appropriately exercising its discretion.").  In its docket text order, the Court recognized, among other things, that: (1) the motion "represents a needed, good faith settlement of a bona fide dispute"; (2) "[t]he demand letters*, if they even would be prohibited by the automatic stay,

14

1  which is far from clear, are to some extent pass-throughs from the debtor as a conduit to the

2  insurers, who cannot be surprised or harmed by them" and; (3) the objectors "have shown no

3  meaningful prejudice."  Based on these findings, the Court's reasoning more than demonstrates that

4  the balance of harm and the impact of the stay—the twelfth Curtis factor—favored lifting the stay, as

5  the Stipulation would result in more benefit than harm.

6       Finally, the Insurers object to the Court's management of its docket by complaining that the

7  Court decided the Motion without oral argument or a sur-reply brief from the Insurers in response to

8  the reply brief submitted by the Debtor and the Committee in response to the Insurers' opposition.

9  This argument also will fail on appeal.  There is no requirement that the Court hold oral argument or

10  provide a party opposing a motion with a second opportunity to object to the motion after the

11  movant's reply brief.  The Court has the discretion to manage its own docket, and no appellate court

12  is going to find an abuse of discretion in the Court's entry of its order after briefing by the Debtor,

13  the Committee, and the Insurers.

14  **V.    CONCLUSION**

15       For the foregoing reasons, this Court should deny the Insurers' Motion to stay the Stipulated

16  Order pending the Insurers' appeal.

17  Dated: October 27, 2025                    FELDERSTEIN FITZGERALD WILLOUGHBY
                                               PASCUZZI & RIOS LLP
18
                                    By:    */s/ Paul J. Pascuzzi*
19                                         Paul J. Pascuzzi
20                                         Jason E. Rios
                                           Thomas R. Phinney
21                                         Mikayla E. Kutsuris
                                           Attorneys for The Roman Catholic Archbishop of
22                                         San Francisco

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit A

Entered on Docket
October 9, 2025
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

**Signed and Filed: October 9, 2025**

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| In re | ) | Bankruptcy Case |
| | ) | No. 23-30564-DM |
| THE ROMAN CATHOLIC ARCHBISHOP | ) | |
| OF SAN FRANCISCO, | ) | Chapter 11 |
| | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |

**ORDER DENYING MOTION FOR STAY PENDING APPEAL**

**I.    Background**

Like nearly all Catholic diocesan cases that have been filed before and after this one, The Roman Catholic Archbishop of San Francisco ("Debtor") filed bankruptcy to manage the hundreds of lawsuits alleging child sexual abuse by clergy members.  Those lawsuits were commenced after state law extended the statute of limitations to pursue such claims.[1] Some of those cases were on the eve of trial when this bankruptcy was filed. (See, e.g., Declaration of Joseph J. Passarello in Support of

_____

[1] In California, the relevant law is AB 218.

-1-

Chapter 11 Petition and Debtor's Emergency Motions, Dkt. 14, paras. 8-11).

The Debtor acknowledged from the outset of this bankruptcy that active engagement with a creditors' committee comprised of abuse survivors would be necessary to forming a successful reorganization plan. (Id. at para. 11).  To this end, the court entered an Order Referring Case to Mediation and Appointing Mediator (Dkt. 747) and appointed three highly qualified mediators to assist in brokering a resolution.

For the two years this case has been pending, and the year this case has been in mediation, insurers who otherwise would have had to defend (and potentially provide payment to successful survivor claimants) hundreds of state court cases filed against the Debtor have benefited from the Debtor's automatic stay.  The court is aware that this automatic stay represents potentially large savings to those insurers.[2] Meanwhile, the Debtor has spent more than seven million dollars on legal fees through August 2025 (Dkt. 1356) with more fees accruing every day, with no end to mediation in sight and no money having reached the pockets of the more than 500 abuse survivors whose lawsuits precipitated this case.

There have been some signals to the court that mediation was not progressing towards a consensual resolution, in the form

---

[2] It is a broadly accepted concept that "money is worth more today than the same nominal amount in the future because that money could be put to use by its owner in the meantime." *United States SEC. v. Barry*, 146 F.4th 1242, 1263 (9th Cir. 2025) (citing Cong. Budget Off., How *CBO Uses Discount Rates to Estimate the Present Value of Future Costs or Savings* (2024)).

-2-

of Adversary Proceeding Nos. 25-3019 and 25-3021.[3]  The first of
those two proceedings is relevant here, in which the Debtor
sought to extend the automatic stay to non-Debtor affiliates
that were named as defendants or co-defendants in thirty-nine
pending state court cases filed by abuse survivor claimants.[4]

Rather than continue with the expense and risk of
litigation, the Debtor filed a Compromise and Stipulation
Modifying the Automatic Stay ("Stipulation") (Dkt. 1285).  This
Stipulation between the Debtor, the Official Committee of
Unsecured Creditors ("Committee"), and the Survivor Defendants
(as defined in the Stipulation) agreed to modify the automatic
stay and allow five pending state court actions filed by
survivors of clergy abuse against the Debtor and/or its
affiliates to proceed to finality, while leveling the playing
field for all survivor claimants by allowing any survivor
claimant to make a written settlement demand on the Debtor or
non-Debtor defendant, who would then tender those demands to
their respective insurers for review.  The court approved the
Stipulation over the objection of a group of insurers
("Insurers") (Docket Text Order entered September 2, 2025; Order

---

[3] A third adversary proceeding, A.P. No. 25-03070, was filed
while this matter was pending.  The new matter is filed by a
certain insurer against the Debtor raising coverage issues.
While different, it underscores the apparent never-ending
expensive litigation plaguing this and other religious abuse
cases.

[4] The latter Adversary Proceeding seeks a finding that the non-
Debtor affiliates that are party to the state court cases (among
other non-defendant affiliates) are a part of the Debtor and
thus the Debtor's bankruptcy estate.

-3-

Granting Debtor's Motion To Approve Compromise and Stipulation Modifying the Automatic Stay (Dkt. 1346)).

The Insurers appealed the approval and filed a Motion for Stay Pending Appeal ("Motion") (Dkt. 1342).  The court has considered the Motion, and the Oppositions which were timely filed by the Committee (Dkt. 1363) and Debtor (Dkt. 1368).  The court determines that no hearing on the matter is necessary and DENIES the Motion.

## II.  **Discussion**

A court may grant a stay pending appeal at its discretion upon the weighing of four, non-equal factors.  *Nken v. Holder*, 556 U.S. 418, 434 (2009).  Those factors are "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). Courts should weigh the first two factors more heavily than the latter two, and a showing of irreparable harm must be more than a mere possibility. *Id.*

The Insurers are not likely to succeed on the merits of the appeal.  The court has already considered the merits of their argument in the form of the Objection (Dkt. 1302) to the Stipulation, which the court overruled when it approved the Stipulation.  Additionally, while the September 2, 2025 Docket Text Order referred to the five cases that will proceed in state court pursuant to the Stipulation as "test cases," the parties

−4−

did not do so.  There was no burden for the Debtor or Committee
to show that these cases were representative of most other
lawsuits.  This was a compromise to allow only five cases, as
opposed to thirty-nine, proceed to trial against the Debtor's
and its affiliates' wishes.  The Stipulation was entered into on
the basis that this compromise is less expensive than litigating
the Adversary Proceeding to completion and will lead to more
fruitful mediation discussions, and the court agrees.  The
possibility that the court would deny Debtor's stay request and
allow all thirty-nine cases to go to trial loomed large and
would have resulted in much greater expense to the Insurers than
what they complain of now.  Argument that the court wrongly
accepted Fr. Summerhays' Declaration (Dkt. 1288) over
evidentiary objections is also unlikely to succeed at the
appellate level.  Despite protestations that the court allowed
conclusory statements to lead to factual conclusions, it did not
do so.  As the Debtor notes, "this court and any court can tell
the difference between facts and legal conclusions and consider
lay opinions as appropriate."  (Dkt. 1368 at fn. 4).  Likewise,
argument that the Insurers' rights were cut off by the court
taking the matter off calendar and issuing a ruling after all
papers had been filed is baseless.  The Insurers, as objecting
parties to a motion, were not entitled to file a reply, and any
oral argument at a hearing would have been extraneous.  An
objecting party does not get multiple procedural bites at the
apple, while a movant has an opportunity to respond to
objections.  The court also notes that the Insurers did not
request permission to file a sur-reply, which would have put the

-5-

court on notice that there may have been further, and hopefully relevant and new, arguments to be made by the Insurers.

Second, the Insurers will not be irreparably injured absent a stay. "Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *Renegotiation Bd. v. Bannercraft Clothing Co., Inc.*, 415 U.S. 1, 24 (1974). That the Insurers now, after two years of benefitting from the Debtor's automatic stay, may have to perform some of their contractual obligations regarding a smaller number of lawsuits than they would have otherwise had to if the Debtor lost its request for injunctive relief is not an injury. The Insurers will also not suffer harm by receiving settlement demands. There is no requirement that the Insurers pay those demands sight unseen, and to the extent the stay may need to be modified to evaluate those demands, the Insurers could seek such relief. It is more likely that stay relief would have been granted to all abuse claimants to make their demands on Debtor for the purposes of the Debtor then sending them on to the Insurers.

Third, other parties would indeed be injured by the granting of a stay pending appeal, including the Debtor, the Committee, and all survivor claimants (not just those whose cases may now proceed to trial). While the Insurers argue that a stay would merely result in a return to the status quo while their appeal worked its way through the appellate system, the status quo is simply no longer tenable. The court refuses to let this bankruptcy languish without a confirmable plan in sight for much longer, and a status quo that results in the same

-6-

standstill in mediation that seems apparent without this Stipulation, is a status quo that brings this case ever closer to dismissal, in which case the Insurers will face the many economic consequences in the form of litigation and settlement demands they currently seek to avoid.

Fourth, the public interest lies in favor of denial of a stay. "[P]ublic policy wisely encourages settlements," *McDermott, Inc. v. Amclyde*, 511 U.S. 202, 215 (1994), and the principle of compromise and settlement is built into the fabric of bankruptcy in the form of Fed. R. Bankr. P. 9019 and chapter 11 plans of reorganization, as almost all complex plans require rigorous negotiation to reach a confirmable consensual plan. After such compromise is reached, the "court's role in approving any settlement under Rule 9019 is limited. Rather than an exhaustive investigation or mini-trial on the merits, this court need only find that the settlement was negotiated in good faith and is reasonable, fair, and equitable." *In re Pacific Gas & Elec. Co.*, 304 B.R. 395, 417-18 (Bankr. N.D. Cal. 2004) (citing *Martin v. Kane (In re A & C Props.)*, 784, F.2d 1377, 1381 (9th Cir. 1986)). So long as the court evaluates the issues pursuant to what are widely known as the *A & C* factors, and the compromise falls within a range of reasonableness, it should be approved. *In re Pacific Gas & Elec. Co.*, 304 B.R. at 418 (internal citations removed). In this case, the stakes for the Debtor, its many parishioners, and the survivor claimants are so high that this compromise in the form of the Stipulation is an excellent result and may represent a significant step toward a confirmable reorganization plan.

-7-

### III. **Conclusion**

Accordingly, the Motion is DENIED.  The Insurers' alternative request for the imposition of the 14-day stay pursuant to Fed. R. Bankr. P. 4001(a)(4) is also DENIED.

**END OF ORDER**

-8-

COURT SERVICE LIST

ECF Recipients

-9-