James I. Stang (CA Bar No. 94435)
Brittany M. Michael (*Pro Hac Vice pending*)
Gail Greenwood (CA Bar No. 169939)
PACHULSKI STANG ZIEHL & JONES LLP
One Sansome Street, 34th Floor, Suite 3430
San Francisco, California 94104-4436
Telephone: 415-263-7000
Email:  jstang@pszjlaw.com
        bmichael@pszjlaw.com
        ggreenwood@pszjlaw.com

Timothy W. Burns (*Pro Hac Vice pending*)
Jesse J. Bair (*Pro Hac Vice pending*)
BURNS BAIR LLP
10 East Doty Street, Suite 600
Madison, Wisconsin 53703-3392
Telephone: 608-286-2808
Email: tburns@burnsbair.com
       jbair@burnsbair.com

Attorneys for the Official Committee of
Unsecured Creditors

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO,<br><br>Debtor.<br>_____<br><br>CENTURY INDEMNITY COMPANY, *et al.*,<br><br>Appellants.<br><br>vs.<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, *et al.*,<br><br>Appellees. | Case No. 25-cv-08563-WHO<br><br>**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OPPOSITION TO INSURERS' MOTION FOR STAY PENDING APPEAL AND EMERGENCY INTERIM STAY TO ALLOW THE COURT TO CONSIDER THE INSURERS' MOTION** |

**Table of Contents**

Page

I.  PROCEDURAL BACKGROUND ................................................................................... 1

II.  ARGUMENT ............................................................................................................ 5

    A.    The Insurers Have Not Demonstrated a Likelihood of Success on the Merits. ...................................................................................................... 5

    B.    The Insurers Will Not Be Irreparably Injured Absent a Stay of the Settlement Stipulation. .................................................................................... 8

    C.    A Stay Pending Appeal Will Substantially Injure the Survivor Claimants and Impede a Global Resolution. ................................................................ 9

    D.    The Public Interest Does Not Support Enjoining a Negotiated Settlement to Protect the Insurers From Responding to Demand Letters and Otherwise Satisfying Their Contractual Obligations. ................................................... 10

III.  CONCLUSION ......................................................................................................... 11

1

## **Table of Authorities**

2

**Page(s)**

3

**Cases**

4

*Barickman v. Mercury Cas. Co.,*
  2 Cal. App. 5th 508 (2016)..............................................................................9

5

*Diocese of Rochester v. AB100 Doe et al. (In re Diocese of Rochester),*
  2022 Bankr. LEXIS 1469, *20-21 (Bankr. W.D.N.Y. May 23, 2022) .................. 10, 11

6

*In re A&C Properties,*
  784 F. 2d at 1381.......................................................................... 6, 7, 11

7

*In re Akhlaghpour,*
  2018 Bankr. LEXIS 2059, *4-5 (Bankr. C.D. Cal. July 9, 2018) ........................... 5, 8

8

*In re Blixseth,*
  509 B.R. at 705 ............................................................................ 5, 8

9

*Nken v. Holder,*
  556 U.S. at 434...........................................................................5, 8, 9

10

*Roman Catholic Diocese of Rockville Centre v. Ark320 Doe et al. (In re Roman Catholic Diocese of Rockville Ctr.),*
  651 B.R. 622 (Bankr. S.D.N.Y. 2023) ......................................................... 10

11

12

13

**Rules and Local Rules**

14

Fed. R. Bankr. P.  1001 ............................................................................ 11

15

Fed. R. Bankr. P. 9019 ............................................................................. 6

16

Local Bankr. Rule 1001-2 ........................................................................... 7

Local Civil Rule 7-6................................................................................ 7

17

18

19

20

21

22

23

24

25

26

27

28

ii

The Official Committee of Unsecured Creditors (the "Committee") of the Roman Catholic Archbishop of San Francisco (the "Debtor"), representing the interests of over 540 survivors of child sexual abuse with filed claims ("Survivors"), opposes the *Insurers' Motion for Stay Pending Appeal* [Docket No. 3] (the "Stay Motion"). The Debtor and the Committee seek to move forward with an agreement intended to expedite a resolution of the bankruptcy case by allowing relief from stay for five state court cases and permission for survivors to send individual settlement demands to the debtor in exchange for a consensual stay of forty-six state court cases. "With no end to mediation in sight and no money having reached the pockets of the more than 500 abuse survivors,"[1] hastening resolution is essential. The Committee's constituency is aging. Many of those Survivors have waited decades for compensation for the harm they suffered in childhood. The Insurers benefit each day that the status quo is maintained because they are not faced with contractual defense and indemnity obligations.

The Stay Motion should be denied because (1) the Insurers have not demonstrated a likelihood of success on the merits, (2) the Debtor's insurers (the "Insurers") will not be irreparably harmed by receiving settlement demands on claims they have been allegedly mediating for over a year, (3) issuance of a stay would cause unnecessary further delay to sexual abuse survivors who seek resolution of their claims, and (4) the public interest favors a compromise of litigation, particularly where in this case, the parties anticipate that the compromise will advance ongoing mediation efforts.  The first two factors "are the most critical" and the Insurers' inability to satisfy their burden of proof as to success on the merits and irreparable harm are sufficient for the Court to deny a stay pending appeal.[2]

## I.  PROCEDURAL BACKGROUND

For almost three years before the bankruptcy, 537 survivors pursued state court lawsuits on account of "sexual abuse by clergy or others associated with the Debtor."[3] Those cases were

---

[1] Dkt. No. 1363, p. 4. Unless otherwise stated, all citations to "Dkt.No." are to the bankruptcy court's docket in the underlaying bankruptcy case, No. 23-30564 (Bankr. N.D. Cal.).

[2] *Samson v. W. Capital  Partners, LLC (In re Blixseth),* 509 B.R. 701, 705-06 (Bankr. D. Mont. 2014) (citing *Nken v. Holder,* 556 U.S. 418, 433 (2009); denying stay pending appeal).

[3] Dkt. No. 14, ¶ 53.

1

1  administered as a judicially coordinated proceeding with other cases against the Catholic church

2  around the Bay Area (the "<u>JCCP</u>").[4] On August 21, 2023, the Debtor filed for bankruptcy (the

3  "<u>Petition Date</u>").

4          The Debtor and the Committee have agreed on very little in the bankruptcy case. In

5  February 2025, the Committee filed a motion seeking relief from the automatic stay to move

6  forward two state court cases that were on the eve of trial on the Petition Date.[5] The Debtor

7  vehemently objected.[6] Judge Montali nonetheless granted the motion, noting that the cases

8  moving forward "will permit if not encourage the parties and the mediators to have a meaningful

9  impact on the case. Both the [Committee]'s citations to other bankruptcies that have progressed

10 after relief from stay has been lifted (and others that have languished where no stay relief was

11 granted) and the court's own experience lead the court to this decision."[7]

12         On April 25, 2025, the Debtor commenced an adversary proceeding against certain state

13 court plaintiffs seeking an "extension" of the automatic stay to state court actions against non-

14 debtor affiliates and a preliminary injunction to prevent such cases from moving forward in the

15 JCCP.[8]  The Debtor stipulated to the Committee's intervention pursuant to Bankruptcy Code

16 section 1109(b), which was granted.  The Insurers did not seek intervention.

17         On May 29, 2025, the Debtor filed a motion and supporting declarations seeking to enjoin

18 specified state court actions pursuant to Bankruptcy Code section 105(a) and 362(a) ("<u>Injunction

19 Motion</u>").[9] The Committee opposed the Injunction Motion, on the grounds that the automatic

20 stay does not apply to litigation against non-debtor affiliates and the Debtor had not established

21 the requisite elements for an injunction.[10] The Debtor and Committee agreed to continue the

22 hearing pending settlement negotiations.

23 _____

24 [4] Dkt. No. 1015, p. 5.

   [5] *Id.*

25 [6] Dkt. No. 1083.

26 [7] Dkt. No. 1138, p. 8-9.

27 [8] *See* Adv. No. 25-03019, Adv. Dkt. No. 1.

   [9] Adv. Dkt. No. 8.

28 [10] Adv. Dkt. Nos. 13-15.

On August 7, 2025, the Debtor filed a *Stipulation by and Among The Roman Catholic Bishop of San Francisco, The Official Committee of Unsecured Creditors, and the Survivor Defendants*[11] (the "<u>Settlement Stipulation</u>") announcing a proposed settlement of the Injunction Motion, which included five state court actions that would proceed to trial, with all remaining state court actions against at least one non-debtor affiliate and the Debtor to be stayed.  In addition, the Settlement Stipulation permits all sexual abuse survivors to make written settlement demands on the Debtor and non-debtor affiliate defendants and allows the Debtor to tender those demands to its applicable insurers.  The Debtor concurrently filed a motion and supporting documents for approval of the Settlement Stipulation (the "<u>Stipulation Motion</u>"),[12] all of which were served on the Insurers.

On August 21 2025, the Insurers objected to the Settlement Motion.[13] The Debtor and Committee each filed reply briefs supporting approval of the Settlement Motion as reasonable and in the best interests of the estate.[14]

On September 2, 2025, the Court granted the Settlement Motion, issuing a docket text order ("<u>Docket Order</u>") as follows:

> The motion is well-taken, easily satisfies the *A & C* test by considering and weighing the factors, as the court does independently here, and represents a needed, good faith settlement of a bona-fide dispute. The objectors, assuming they even have standing, have shown no meaningful prejudice….The demand letters, if they even would be prohibited by the automatic stay, which is far from clear, are to some extent pass-throughs from the debtor as a conduit to the insurers, who cannot be surprised or harmed by them.

Pursuant to the Docket Order, the Debtor served and uploaded an order granting approval of the Settlement Motion, which was entered at Docket Number 1346.  On September 16, the Insurers filed notices of appeal and moved the Bankruptcy Court for a stay of the Docket Order pending this appeal. On October 9, 2025, Judge Montali denied the stay motion. He specifically

---

[11] Adv. Dkt.No. 21.

[12] Dkt. Nos. 1285-88, 1305.

[13] Dkt. Nos. 1302, 1303.

[14] Dkt. Nos. 1311-12, 1315.

found the following:

- "The Insurers are not likely to succeed on the merits of the appeal…. The Stipulation was entered into on the basis that this compromise is less expensive than litigating the Adversary Proceeding to completion and will lead to more fruitful mediation discussions, and the court agrees."[15]

- "Second, the Insurers will not be irreparably injured absent a stay…. That the Insurers now, after two years of benefiting from the Debtor's automatic stay, may have to perform some of their contractual obligations regarding a smaller number of lawsuits than they would have otherwise had to if the Debtor lost its request for injunction relief is not an injury. The Insurers will also not suffer harm by receiving settlement demands. There is no requirement that the Insurers pay those demands sight unseen, and to the extent the stay may need to be modified to evaluate those demands, the Insurers could seek such relief."[16]

- "Third, other parties would indeed be injured by the granting of a stay pending appeal…. While the Insurers argue that a stay would merely result in a return to the status quo while their appeal worked its way through the appellate system, the status quo is simply no longer tenable. The court refuses to let this bankruptcy languish without a confirmable plan in sight for much longer, and a status quo that results in the same standstill in mediation that seems apparent without this Stipulation, is a status quo that bring this case ever closer to dismissal, in which case the Insurers will face the many economic consequences in the form of litigation and settlement demands they currently seek to avoid."[17]

- "Fourth, the public interest lies in favor of denial of a stay…. In this case, the stakes for the Debtor, its many parishioners, and the survivor claimants are so high that this compromise in the form of the Stipulation is an excellent result and may represent a significant step toward a confirmable reorganization plan."[18]

By the Stay Motion, the Insurers once again seek a stay of the Docket Order approving the Settlement Motion pending its appeal. The Committee has agreed that no demand letters will be issued until this Court rules on the Insurers' Stay Motion.

---

[15] Dkt. No. 1392, p. 5.

[16] *Id.*, p. 6.

[17] *Id.*, p. 6–7.

[18] *Id.*, p. 7.

4

## II.  ARGUMENT

A stay pending appeal is within the sound discretion of the Court, guided by consideration of four factors: (1) whether the stay applicant has made a strong showing of likely success on the merits, (2) whether the applicant will be irreparably injured absent a stay, (3) whether issuance of the stay will substantially injure the other interested parties, and (4) whether the public interest lies in favor of or against the stay.  *Nken v. Holder,* 556 U.S. 418, 434 (2009).  The first two factors are the most critical.  *In re Blixseth,* 509 B.R. 701, 705 (Bankr. D. Mont. 2014).  Although a stay is discretionary, cases make clear that it is employed sparingly and is not a matter of right.  *Id.* at 433-34 (stay is not a matter of right, even if irreparable injury may result; applicant bears the burden of justifying an exercise of discretion); *see also In re Akhlaghpour,* No. 2:18-bk-11855-ER, 2018 Bankr. LEXIS 2059, *4-5 (Bankr. C.D. Cal. July 9, 2018) (stay pending appeal is "reserved for the exceptional situation").

There are no exceptional circumstances, much less case law that presents comparable facts to support a stay protecting the debtor's insurers pending an appeal of an approved settlement.  Moreover, the Insurers are unable to satisfy their burden under the *Nken* factors because, among other things*,* the Settlement Stipulation will not cause any immediate or irreparable injury because the Insurers' contractual obligations to the Debtor have not changed under the Settlement Stipulation.

### A.    The Insurers Have Not Demonstrated a Likelihood of Success on the Merits.

The Insurers are not likely to succeed on the merits of their appeal or that there is a substantial case for relief on the merits.  Success on the merits "is not satisfied by a mere showing that the likelihood is 'better than negligible' or that there is a 'mere possibility of relief.'"[19]

The Insurers primarily argue that the Debtor failed to demonstrate "cause" to lift the automatic stay.[20]  The Insurers ignore that the Settlement Stipulation was approved under Rule

---

[19] *In re Blixseth,* 509 B.R. at 705.

[20] Stay Motion at 18–24.

9019 and standards of reasonableness and fairness established under *In re A&C Properties*.[21]

Accordingly, the Debtor was not required to show cause to lift the automatic stay.  In fact, the Debtor bore the difficult burden of proof on its Injunction Motion to show why dozens of cases against non-debtor affiliates should be stayed.  Pursuant to the Settlement Stipulation, the parties agreed that five state court cases involving the Debtor will proceed along with the Survivors' ability to send demand letters, while *forty-six* state court cases are stayed.  The Bankruptcy Court held: "The motion is well-taken, easily satisfies the *A&C* test by considering and weighing the factors, as the court does independently here, and **represents a needed, good faith settlement of a bona fide dispute**." (Emphasis added).  The Insurers have not demonstrated that the settlement fails the test of being fair and equitable or is anything other than a good faith compromise of a bona fide dispute.

The Insurers instead seek to undermine the Bankruptcy Court's conclusion by arguing that the ruling impermissibly relies on what the Insurers contend is inadmissible testimony by Summerhays.[22]  The Ninth Circuit, however, expressly allows a court, when considering a compromise of disputed claims, to "give weight to the opinions of the trustee, the parties, and their attorneys." *In re A&C Properties,* 784 F. 2d at 1384 (citing *In re Blair,* 538 F. 2d 849, 851 (9th Cir. 1976)).  The court may also exclude relevant evidence that creates undue delay or needless presentation of evidence.[23]  Summerhays' opinion that the compromise alleviates the burden of litigation on the Debtor and that the compromise is in the best interests of the estate and creditors by resolving the Injunction Motion without additional expense was admissible and supported by both common sense and hundreds of pages of briefing before the Court.  The Court was well within its discretion to overrule the Insurers' objection.

---

[21] Under *Martin v. Kane (In re A&C Properties), 784 F. 2d 1377, 1381 (9th Cir. 1986)*, the court must consider the following factors to determine the fairness, reasonableness and adequacy of a proposed settlement: (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

[22] Stay Motion at 18 n. 44.

[23] *Id.*

1          Similarly, nothing in the federal or local rules precluded the Court from ruling on the

2   papers in lieu of holding a scheduled hearing.[24] The Insurers did not request an evidentiary

3   hearing and therefore were not entitled to cross-examine unnamed witnesses, including Fr.

4   Summerhays, absent court authority and notice for the witness to appear.[25]

5          Other attacks by the Insurers are equally without merit and do not establish a likelihood

6   of success on appeal.  Under *A&C Properties,* 784 F.2d at 1381, the Court must consider and

7   defer to the paramount interest of creditors and their reasonable views.  Here, the creditor

8   constituency uniformly supports the Settlement Stipulation, which was approved by the

9   Committee and counsel for each survivor whose case is subject to the stipulation, including the

10  five litigating cases and the forty-six stayed cases.

11         The Insurers fail to address any of the relevant factors that support approval of the

12  Settlement Stipulation under *A&C Properties* – most notably, the probability of success of the

13  Injunction Motion (implicating coverage of claims against non-debtor affiliates) or the

14  paramount interest of creditors.  Like the objecting creditors in *A&C Properties,* the Insurers "fail

15  to articulate a coherent explanation of the threat posed to [their] claim by the compromise."[26] The

16  Insurers' nebulous criticisms of the demand letters do not support a wholesale rejection of the

17  compromise nor do they demonstrate a likelihood of success on appeal.

18         In fact, the Stay Motion highlights why the demands and other relief in the Settlement

19  Stipulation are in the paramount interest of creditors. The bankruptcy is over two years old and

20  the Insurers are on the one hand urging that "[m]ediation is the only forum capable of achieving"

21  resolution while simultaneously providing a list of reasons why they cannot respond to settlement

22  offers. The goal of the mediation is to reach a settlement and if the Insurers cannot possibly

23  respond to individual settlement demands, how do they intend to reach an aggregated settlement?

24         The Insurers further attack the strategic value of the demand letters, but they have filed

25

26  _____
    [24] *See* Stay Motion at 5.

27  [25] *See* Local Bankruptcy Rule 1001-2, incorporating Local Civil Rule 7-6 ("No oral testimony will be
    received in connection with any motion unless otherwise ordered by the assigned judge.").

28  [26] 784 F. 2d at 1384 (approval of settlement affirmed over creditors' objections).

1   more pleadings since the "pointless demand letters" were suggested than the previous two years

2   in the bankruptcy combined. Finally, the Insurers do not cite to any legal authority to support

3   their contention that they cannot settle individual cases during the pendency of the bankruptcy

4   without violating the automatic stay, nor do they cite to any legal authority that supports their

5   position that they would be unable to raises concerns regarding an alleged lack of access to

6   discovery in response to the demand letters. In sum, the Stay Motion should be denied because

7   the Insurers fail to satisfy the first *Nken* factor by demonstrating a likely success on the merits.

8
      **B.      The Insurers Will Not Be Irreparably Injured Absent a Stay of the Settlement**
9              **Stipulation.**

10          The Insurers face a high burden of demonstrating irreparable injury absent a stay pending

11  their appeal.  Possible irreparable injury is not enough.  *Nken v. Holder,* 556 U.S. at 435; *see also*

12  *In re Blixseth,* 509 B.R. at 506 (applicant must show probability of irreparable injury); *In re*

13  *Aklaghpour,* 2018 Bankr. LEXIS 2059 at \*7 (bedrock requirement that stay must be denied absent

14  satisfaction of irreparable harm threshold).

15          The Debtor filed this bankruptcy in August 2023 based on approximately 537 pending

16  lawsuits, some of which were filed as early as January 1, 2020,[27] so it should not be too much to

17  ask that the Insurers be familiar with the lawsuits and their procedural posture.  The Insurers'

18  arguments underscore the need for their greater involvement and response to claims pending

19  against the Debtor.  Demand letters tendered to the Insurers will force that engagement but will *not*

20  cause irreparable injury to the Insurers, who have a contractual obligation to respond to claims

21  against their insured.  As the Bankruptcy Court stated in the Docket Order, "The demand letters, if

22  they even would be prohibited by the automatic stay, which is far from clear, are to some extent

23  pass-throughs from the debtor as a conduit to the insurers, **who cannot be surprised or harmed**

24  **by them**." (Emphasis added).  The Insurers' complaints about being faced with hundreds of

25  demands on a compressed and burdensome timetable ring hollow considering that the Insurers'

26  defense and settlement obligations are unchanged by the Settlement Stipulation.  Moreover, in

27

28  ───────────────
    [27] Dkt. No. 14, ¶53.

                                                    8

state court, the Insurers have no say over who, when, or in what order individual claimants send demand letters. Demand letters simply require that the Insurers reasonably respond, nothing more and nothing less. *See, e.g., Barickman v. Mercury Cas. Co.,* 2 Cal. App. 5th 508, 520 (2016) ("when a claim is based on the insurer's bad faith, the ultimate test is whether the insurer's conduct was unreasonable under all of the circumstances;" citations omitted). The issuance of demand letters will not – of themselves – expose the Insurers to across-the-board bad faith liability, as the Insurers suggest. Rather, the Insurers' conduct will be assessed based on the Insurers' responses to individual demands. If the Insurers require additional information regarding a specific claim, the issue should be addressed on the facts as needed. The Court should not accept speculation regarding widespread harm for which there are no facts or evidence to support a broad stay pending appeal.

The Insurers ultimately do not provide any concrete examples of irreparable harm except being forced to evaluate claims they should have evaluated three to five years ago and otherwise being forced to perform the responsibilities for which the Debtor paid them premiums to perform. The Stay Motion should be denied because the Settlement Stipulation does not alter the Insurers' obligations under their policies or state law and the Insurers are not thereby injured, much less irreparably injured, absent a stay pending appeal.

### C.    A Stay Pending Appeal Will Substantially Injure the Survivor Claimants and Impede a Global Resolution.

The Stay Motion should be denied on the first two critical factors alone. In addition, the Insurers cannot prevail on the remaining *Nken* factors, including the third because the issuance of a stay pending appeal will substantially injure the survivors who have already suffered extensive delay in pursuing their claims.

The Insurers' argument that a stay of litigation benefits creditors as a whole by preventing individual creditors from engaging in a race to the courthouse borders on the outrageous. The Insurers do not speak for the survivors. No survivor objected to approval of the Settlement Stipulation. The Committee and its constituency support the Settlement Stipulation as a consensual resolution of the Injunction Motion that will advance ongoing mediation efforts.

Contrary to the Insurers' contention, the status quo harms survivors when there is no reorganization in sight. *See Roman Catholic Diocese of Rockville Centre v. Ark320 Doe et al. (In re Roman Catholic Diocese of Rockville Ctr.),* 651 B.R. 622, 666 (Bankr. S.D.N.Y. 2023) ("For every day the injunction lasts, [abuse survivors] are not only prevented from pursuing recovery on their claims, but their ability to prove their underlying case is weakened."); *Diocese of Rochester v. AB100 Doe et al. (In re Diocese of Rochester),* No. 19-20905, 2022 Bankr. LEXIS 1469, *20-21 (Bankr. W.D.N.Y. May 23, 2022) (same). The Court should summarily reject the Insurers' contention that a stay will protect, not harm, the survivors.

The Insurers rely heavily on the *Syracuse* case, yet that case took an additional **two** years after the Survivors were denied the ability to send demand letters.[28] The Committee does not view that as a success to be replicated. There is no record of how many survivors did not make it to the end of the *Syracuse* case, but elsewhere in New York nearly 10% of the survivors who filed claims did not live to see the conclusion of a four-year bankruptcy case.[29] If the Insurers are unable to respond to settlement demands two years into the case, maintaining the status quo is unlikely to move the case forward. As Judge Montali observed, "the status quo is simply no longer tenable."

A stay pending appeal will further delay the claims of survivors for the sole benefit of the Insurers. The third factor supports denial of the Stay Motion.

> **D.    The Public Interest Does Not Support Enjoining a Negotiated Settlement to Protect the Insurers From Responding to Demand Letters and Otherwise Satisfying Their Contractual Obligations.**

The public interest does not support a stay pending appeal for at least two reasons. First, the public interest in resolving child sexual abuse liability prompted legislative changes to the statute of limitations. The survivors' claims – and resolution of those claims – are of central importance in this bankruptcy. In the *Diocese of Rochester,* the bankruptcy court held that the public interest strongly favored denial of the debtor's request for an injunction of the survivors' litigation against

---

[28] CITE

[29] *Letter to the Honorable Martin Glenn*, Case No. 20-12345, Dkt. No. 3630, p. 2.

non-debtor affiliates, expressing concern that the bankruptcy had been pending for over two and a half years without a consensual resolution.  Rejecting the just-give-it-time approach, the court observed: "[W]hat good are future charitable works if the people (children at the time) who suffered horrific acts of sexual abuse in the past (allegedly at the hands of clergy) are silenced? After all, it appears that silence played a leading role in perpetuating a climate where the abuse of children was possible."[30] The Settlement Stipulation, including the provision for demand letters by claimants to be tendered to the Insurers, is clearly a matter of public interest.

Second, the public interest favors a compromise of litigation.[31] The Committee and the Debtor reached a fair and equitable settlement of the Debtor's Injunction Motion in order to resolve disputes in litigation and advance the mediation process. Pursuant to Bankruptcy Rule 1001(a), the rules governing procedure must be construed "to secure the just, speedy, and inexpensive determination of every case and proceeding."  This bankruptcy has been pending for a little over two years and the Committee and Debtor have reached a settlement that five cases and individual demands should move forward while mediation continues.  A stay pending appeal to enjoin a negotiated settlement for the purpose of protecting the Insurers does not serve the public interest in accountability, much less the public interest in fostering settlements and a just and speedy resolution of the survivors' claims.

### III.  CONCLUSION

For all of the forgoing reasons, the Insurers have not demonstrated good cause for a stay pending appeal.  The Court should deny the Stay Motion and confirm that the Settlement Stipulation is effective pending the Insurers' appeal.

---

[30] *In re Diocese of Rochester,* 2022 Bankr. LEXIS 1469 at *22.

[31] *In re A&C Properties,* 784 F. 2d at 1381.

11

1    Dated:  September 30, 2025       PACHULSKI STANG ZIEHL & JONES LLP

2

3                           By   */s/ Gail S. Greenwood*

4                                 James I. Stang
                                Gail S. Greenwood

5                                 Brittany M. Michael

6                                 Counsel for the Official Committee of Unsecured
                                Creditors

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28