Russell W. Roten (SBN 170571)
Jeff D. Kahane (SBN 223329)
Timothy W. Evanston (SBN 319342)
Isabelle Cho (SBN 360275)
**Skarzynski Marick & Black LLP**
333 South Grand Street, Suite 3550
Los Angeles, CA 90071
Telephone: (213) 721-0650
Email:  rroten@skarzysnki.com
            jkahane@skarzynski.com
            tevanston@skarzynski.com
            icho@skarzynski.com

*Counsel for Certain Underwriters at Lloyd's,
London and Certain London Market Insurance
Companies*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| Century Indemnity Company, *et al.*,<br><br>Appellants,<br><br>v.<br><br>The Roman Catholic Archbishop of San Francisco, *et al.*,<br><br>Appellees. | Case No. 25-cv-08563-WHO<br><br>Hon. William H. Orrick<br><br>**CERTAIN UNDERWRITERS AT LLOYD'S, LONDON AND CERTAIN LONDON MARKET INSURANCE COMPANIES' OPENING BRIEF** |

## <u>CORPORATE DISCLOSURE CERTIFICATION</u>

Without waiving any rights, pursuant to Federal Rule of Civil Procedure 7.1, Federal Rule of Bankruptcy Procedure 8012, and Civil L.R. 3-15, Appellants Certain Underwriters at Lloyd's, London and Certain London Market Insurance Companies (collectively "LMI")[1] furnish the following:

- **Certain Underwriters at Lloyd's, London** have no parent company. No publicly held company owns 10% or more of their stock.

- **Catalina Worthing Insurance Limited (formerly known as Hartford Financial Products International Limited)** (as transferee of the whole of the insurance business of Excess Insurance Company Limited, [Hart Fire Insurance Company (London Branch)], is a private limited company incorporated in England and Wales with registered number 5965916 and having its registered office at 1 Alie Street, London E1 8DE, authorized by the Prudential Regulation Authority and regulated by the Prudential Regulation Authority and the Financial Conduct Authority (FRN 468832). Catalina Worthing Insurance Limited's parent company is Catalina Holdings (Bermuda) Ltd. Catalina Holdings (Bermuda) Ltd. is owned by funds managed by affiliates of Apollo Global Management, Inc.

- **Ocean Marine Insurance Company Limited (as Part VII transferee of The World Auxiliary Insurance Corporation Limited)** Ocean Marine Insurance Company Limited's parent company is Aviva Insurance Limited. No publicly held company owns 10% or more of its stock.

- **River Thames Insurance Company Limited** is a wholly owned subsidiary of Cavello Bay Reinsurance Limited, all of whose stock is ultimately owned by Elk Topco, LLC. No publicly held company owns 10% or more of its stock.

- **Dominion Insurance Company Ltd** is 100% owned by Premia Holdings Ltd and a subsidiary of Arch Capital Group (a publicly traded company) owns more than 10% of Premia Holdings Ltd.

- **Companhia de Seguros Fidelidade-Mundial SA (f/k/a as Fidelidade Insurance Company of Lisbon)** Companhia de Seguros Fidelidade-Mundial SA has no parent company. No publicly held company owns 10% or more of its stock.

- **R&Q Gamma Company Limited (as Part VII transferee of Anglo French Ltd.)** R&Q Gamma Company's parent

---

[1] The London Market Insurance Companies are Excess Insurance Company, Ltd., Terra Nova Insurance Company, Ltd., Sphere Drake Insurance Company, Ltd., and Yasuda Fire & Marine Insurance Company, Ltd.

OPENING BRIEF

company is Randall & Quilter II Holdings Ltd.  No publicly held company owns 10% or more of its stock.

The foregoing statements are made without prejudice to any and all rights and defenses that can be asserted by LMI.  Pursuant to Civil L.R. 3-15, the undersigned certifies that as of this date, there is no conflict or interest (other than the named parties) to report.

Dated: December 2, 2025

By:  */s/ Russell W. Roten*
Russell W. Roten
Jeff D. Kahane
Timothy W. Evanston
Isabelle Cho
Skarzynski Marick & Black LLP
333 South Grand Street, Suite 3550
Los Angeles, CA 90071
Telephone: (213) 721-0650
Email:       rroten@skarzynski.com
                 jkahane@skarzynski.com
                 tevanston@skarzynski.com
                 icho@skarzynski.com
-and-

Catalina J. Sugayan (*pro hac vice* forthcoming)
Yongli Yang (*pro hac vice* forthcoming)
Clyde & Co US LLP
30 S. Wacker Drive, Suite 2600
Chicago, IL 60606
Telephone: (312) 635-7000
Email:    Catalina.Sugayan@clydeco.us
                 Yongli.Yang@clydeco.us

*Counsel for Certain Underwriters at Lloyd's, London and Certain London Market Insurance Companies*

ii

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ................................................................................1

II. JURISDICTIONAL STATEMENT.........................................................................3

III. JOINDER.................................................................................................................4

IV. ISSUES PRESENTED ............................................................................................4

V. STANDARD OF REVIEW......................................................................................5

VI. STATEMENT OF THE CASE ...............................................................................6

    A. The Policies .................................................................................................6

VII. SUMMARY OF ARGUMENT...............................................................................6

VIII. ARGUMENT...........................................................................................................8

    A. The Bankruptcy Court Erred in Entering the Order Because the Order Impermissibly Alters the Policies ................................................................8

        1. The Order Improperly Alters the Policies Because the Liens May Limit Rights Under the Policies ..........................................8

        2. The Order Improperly Alters the Policies Because it Divests LMI of the Right to Defend Against a Coverage Action ...........9

        3. The Bankruptcy Court Erred in Approving the Stipulation Because Liens Cannot "Attach" to Insurance Policies.............10

        4. The Bankruptcy Court Erred in Entering the Order Because Judgment Liens Cannot Be Enforced Against Insurance Policies .................................................................................11

    B. The Bankruptcy Court Erred Because it Lacked Constitutional and Statutory Authority to Alter the Policies ...........................................12

        1. The Bankruptcy Court Does Not Have Constitutional Authority to Alter the Policies ...............................................12

        2. The Bankruptcy Court Cannot Act Beyond the Express Authority Set Forth in the Bankruptcy Code ...........................13

        3. Caselaw Recognizes that Bankruptcy Courts Must Operate within the Confines of the Bankruptcy Code, which Does Not Authorize the Bankruptcy Court to Alter the Policies.............16

    C. The Bankruptcy Court Did Not Have Jurisdiction to Enter the Order.............................................................................................17

    D. The Bankruptcy Court Erred in Finding Cause to Approve the Stipulation .................................................................................18

     1.  The Bankruptcy Court Failed to Apply the *Curtis* Factors ......18

     2.  The Bankruptcy Court Could Not Properly Find Cause Because It Did Not Consider the Released Cases On An Individual Basis .......................................................................20

IX. CONCLUSION ............................................................................21

# TABLE OF AUTHORITIES

**Cases**

*AdTrader, Inc. v. Google LLC*,
2018 WL 3428525 (N.D. Cal. 2018)...................................................................... 17

*Am. Airlines, Inc. v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.)*,
152 B.R. 420 (Bankr. D. Del. 1993) ........................................................................ 5

*Benedor Corp. v. Conejo Enters., Inc. (In re Conejo Enters., Inc.)*,
96 F.3d 346 (9th Cir. 1996)...................................................................................... 5

*Benz v. Dtric Insurance Company (In re Benz)*,
368 B.R. 861 (B.A.P. 9th Cir. 2007)...................................................................... 17

*Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.)*,
77 F.3d 278 (9th Cir. 1996)..................................................................................... 12

*Carroll v. Tri-Growth Centre City (In re Carroll)*,
903 F.2d 1266 (9th Cir. 1990)................................................................................. 17

*Certain Underwriters at Lloyd's, Syndicates v. GACN, Inc. (In re GACN, Inc.)*,
555 B.R. 684 (B.A.P. 9th Cir. 2016)....................................................................... 18

*Czyzewski, v. Jevic Holding Corp.*,
580 U.S. 451 (2017) ......................................................................................... 13, 14

*Doyka v. Superior Court*,
233 Cal.App.3d 1134 (1991)................................................................................... 10

*Fjelstad v. American Honda Motor Co.*,
762 F.2d 1334 (9th Cir.1985)................................................................................... 6

*FourWs, LLC v. Miller*,
653 F.Supp.3d 762 (E.D. Cal. 2023)........................................................................ 5

*Gray v. Horne*,
48 Cal.App.2d 372 (1941)....................................................................................... 10

*Groshong v. Sapp (In re Mila, Inc.)*,
423 B.R. 537 (B.A.P. 9th Cir. 2010)......................................................................... 5

*Harper v. Wasau Ins. Co.*,
56 Cal. App. 4th 1079 (Cal. Ct. App. 1997) ........................................................... 10

*Harrington v. Purdue Pharma L. P.*,
603 U.S. 204 (2024) ......................................................................................... 14, 15

*HSBC Bank USA v. Branch (In re Bank of New England Corp.)*,
364 F.3d 355 (1st Cir. 2004) ................................................................................... 16

*In re Abrantes Const. Corp.*,
132 B.R. 234 (N.D.N.Y. 1991) ............................................................................... 20

*In re Baleine, LP*,
  2015 WL 5979948 (C.D. Cal. Oct. 13, 2015) ........................................................ 20

*In re Bolin Oil, Co.*
  51 B.R. 936 (Bankr. N.D. Ohio 1985) .................................................................. 17

*In re Cap. W. Invs.*,
  186 B.R. 497, 500 (N.D. Cal. 1995) ..................................................................... 17

*In re Crippin*,
  877 F.2d 594 (7th Cir. 1989) ................................................................................ 17

*In re Curtis*,
  40 B.R. 795 (Bankr. D. Utah 1984) .................................................... 4, 18, 19, 20

*In re Diocese of Buffalo, N.Y.*,
  665 B.R. 198 (Bankr. W.D.N.Y. 2024) ................................................................. 20

*In re EES Lambert Assoc.*,
  62 B.R. 328 (N.D. Ill. 1986) ................................................................................. 17

*In re JAB Energy Solutions II, LLC*,
  655 B.R. 76 (Bankr. D. Del. 2023) ....................................................................... 12

*In re Karelin*,
  109 B.R. 943 (B.A.P. 9th Cir. 1990) ...................................................................... 6

*In re Kronemyer*,
  405 B.R. 915 (B.A.P. 9th Cir. 2009) ................................................... 5, 18, 19, 20

*In re Mazzeo*,
  167 F.3d 139 (2d Cir. 1999) ................................................................................. 20

*In re MF Global Holdings, Ltd.*,
  469 B.R. 177 (Bankr. S.D.N.Y. 2012) .................................................................. 17

*In re PG&E Corp.*,
  2019 WL 3889247 (Bankr. N.D. Cal. Aug. 16, 2019) .......................................... 20

*In re Pizante*,
  186 B.R. 484 (B.A.P. 9th Cir. 1995) ...................................................................... 6

*In re Purdue Pharma L.P.*,
  633 B.R. 53 (Bankr. S.D.N.Y. 2021) .................................................................... 14

*In re Purdue Pharma L.P.*,
  635 B.R. 26 (S.D.N.Y. 2021) ............................................................................... 14

*In re Purdue Pharma L.P.*,
  69 F.4th 45 (2d Cir. 2023) ................................................................................... 14

*In re Redpath Comput. Servs., Inc.*,
  181 B.R. 975 (Bankr. D. Ariz. 1995) ................................................................... 17

*In re Roger*,
539 B.R. 837 (C.D. Cal. 2015) ................................................................. 18, 19, 20

*Kemp Bros. Construction, Inc. v. Titan Electric Corp.*,
146 Cal.App.4th 1474 (2007) .......................................................................... 10, 11

*Law v. Siegel*,
571 U.S. 415 (2014) ......................................................................................... 13

*MacDonald v. MacDonald (In re MacDonald)*,
755 F.2d 715 (9th Cir. 1985) .............................................................................. 5

*Minn. Pollution Control Agency v. Gouveia (In re Globe Bldg. Materials, Inc.)*,
345 B.R. 619 (Bankr. N.D. Ind. 2006) ......................................................... 12, 13

*Nat'l Env't Waste Corp. v. City of Riverside (In re National Env't Waste Corp.)*,
129 F.3d 1052 (9th Cir. 1997) .............................................................................. 3

*Oregon v. Braker (In re Braker)*,
125 B.R. 798 (B.A.P. 9th Cir. 1991) ..................................................................... 8

*Scott v. AIG Prop. Casualty Co.*,
2017 WL 1380607 (S.D.N.YU. April 17, 2017) .................................................. 18

*State of Idaho v. Arnold (In re Arnold)*,
806 F.2d 937 (9th Cir. 1986) .............................................................................. 5

*Stern v. Marshall*,
564 U.S. 462 (2011) ................................................................................. 12, 17, 18

*Sunset Coast Holdings, LLC v. Hughes Inv. P'ship LLC (In re Tower Park Props., LLC)*,
2021 WL 1199442 (C.D. Cal. Mar. 29, 2021) ..................................................... 17

*Troisio v. Erickson (In re IMMC Corp.)*,
2018 WL 259941 (Bankr. D. Del. Jan. 2, 2018) ................................................. 13

*Truck Ins. Exch. v. Kaiser Gypsum Co., Inc.*,
602 U.S. 268 (2024) .................................................................................... 15, 16

*United States v. Hinkson*,
585 F.3d 1247 (9th Cir. 2009) .............................................................................. 5

*VFS Financing, Inc. v. CHF Express, LLC*,
620 F.Supp.2d 1092 (C.D. Cal. 2009) ................................................................. 11

*White Motor Corp. v. Nashville White Trucks, Inc. (In re Nashville White Trucks, Inc.)*,
5 B.R. 112 (Bankr.M.D.Tenn.1980) ..................................................................... 17

**Statutes**

11 U.S.C. § 105(a) ................................................................................................ 16

11 U.S.C. § 1109(b) ......................................................................................... 17, 18

11 U.S.C. § 1123(b)(6) ................................................................................................ 16

11 U.S.C. § 362 ........................................................................................................... 18

11 U.S.C. § 365 ........................................................................................................... 18

11 U.S.C. § 365(a)(1) .................................................................................................. 18

11 U.S.C. § 365(b)(1) .................................................................................................. 18

11 U.S.C. § 510(c) ...................................................................................................... 22

11 U.S.C. § 522 ........................................................................................................... 15

11 U.S.C. § 522(f) ....................................................................................................... 22

28 U.S.C. § 157(a) ........................................................................................................ 3

28 U.S.C. § 157(b)(1) .................................................................................................. 20

28 U.S.C. § 157(b)(2) .................................................................................................. 20

28 U.S.C. § 158(a)(1) .................................................................................................... 4

Cal Code Civ. P. 680.010 ............................................................................................ 12

Cal. Code Civ. P. § 483.010 ........................................................................................ 12

Cal. Code Civ. P. § 483.010(a) .................................................................................... 12

Cal. Code Civ. P. § 697.060 ........................................................................................ 12

Cal. Code Civ. P. § 697.510(m) ................................................................................... 12

Cal. Code Civ. P. § 697.530 ........................................................................................ 12

Cal. Com. Code § 9102 ................................................................................................ 12

Cal. Ins. Code § 11580 ................................................................................................ 10

Fed. R. Bankr. P. 9019 ................................................................................................. 18

## I.    **PRELIMINARY STATEMENT**

Bankruptcy courts have limited authority.  The Bankruptcy Code defines the bankruptcy court's authority—bankruptcy courts may not stray beyond the authority granted by the Bankruptcy Code's provisions.  This limitation is highlighted by the United States Supreme Court's ("Supreme Court") landmark opinions, discussed below, correcting bankruptcy courts' attempts to exceed their authority.  In all those cases, the bankruptcy courts made rulings for which they lacked authority or ruled contrary to applicable law, and such rulings were reversed by the Supreme Court.  This is another such case.

This appeal stems from a dispute between the Roman Catholic Archbishop of San Francisco ("Debtor") and the Official Committee of Unsecured Creditors ("Committee") (Debtor and Committee together, "Appellees") over the extent of the automatic stay in bankruptcy.  The Debtor contended the automatic stay barred certain pre-bankruptcy lawsuits from proceeding against nondebtor defendants, which were associated in some way with the Debtor.  The Committee disagreed and argued that the lawsuits should proceed in state court.  While disputes over the scope of the automatic stay are common, the Appellees' attempted resolution is unprecedented.

To resolve their dispute, the Debtor and the Committee entered into a "Stipulation By and Among the Roman Catholic Archbishop of San Francisco, the Official Committee of Unsecured Creditors, and The Survivor Defendants" ("Stipulation").  The Stipulation authorized the Debtor and the Committee to cherry-pick up to five cases to be released from the automatic stay ("Released Cases").  Critically, although the plaintiffs in these Released Cases ("Plaintiffs") may proceed to judgment, any judgment may only be enforced against insurance policies, or proceeds of insurance policies.  Judgments may not be enforced against any of the Debtor's non-insurance assets.  The Stipulation also permitted the Plaintiffs to send settlement demand letters.  The Debtor filed a motion to approve the Stipulation

("Motion") and the Bankruptcy Court entered an order granting the Motion ("Order") with no hearing.

The Bankruptcy Court erred by entering the Order and granting the Motion, because it acted without legal authority and in contravention of applicable law. The Order improperly creates new judgment enforcement remedies that are nonexistent and contrary to California law. Moreover, the Order improperly alters the insurance policies subscribed by LMI ("Policies," as defined below) in two fundamental respects.

First, the Order improperly permits a judgment against the Debtor to attach automatically to the Policies, without any determination of whether LMI are legally obligated under the terms and conditions of the Policies to cover the judgment. Such permission would eviscerate LMI's rights under the Policies by allowing the attachment of a judgment in respect of claims that are not covered by the Policies. Second, liens against insurance policies are not permitted under California law or otherwise, nor are they permitted under the Policies. Allowing a lien to attach to the Policies would have completely unforeseen consequences – none of which were discussed in the Order or in the papers leading to the entry of the Order. Permitting such liens would re-write the Policies.

The Bankruptcy Code defines the Bankruptcy Court's powers. The Bankruptcy Court cannot act unless the Bankruptcy Code expressly authorizes such act. There is no provision of the Bankruptcy Code that authorizes a bankruptcy court to alter insurance policies. Furthermore, applicable case law holds that bankruptcy courts do not have such authority. Hence, the Bankruptcy Court did not have the authority to enter the Order.

Instead, the Order should have provided that any verdict could not be enforced against any party, and should not have permitted the Plaintiffs and the Debtor to send demand letters in contravention of the LMI policies.

2

Title 28 of the United States Code defines the Bankruptcy Court's jurisdiction. It does not permit Bankruptcy Courts to issue final orders determining matters only "related-to" a bankruptcy case. By including the provisions providing for the imposition of liens and the sending of demands, the Bankruptcy Court also lacked jurisdiction to enter the Order. The Order involves enforcement of judgments against insurance policies and alters the policies—these are "non-core" matters. Because a non-core matter was involved, the Bankruptcy Court should have only issued proposed findings of fact and conclusions of law.

Finally, the Bankruptcy Court's findings are deficient in multiple respects. The Bankruptcy Court made no findings that "cause" exists to lift or modify the automatic stay, in contravention of applicable law. The Bankruptcy Court also failed to analyze whether cause existed to lift the automatic stay, including by neglecting to evaluate the existence of "cause" on a case-by-case basis.

For these reasons, the Court should reverse the Order.

## II.    JURISDICTIONAL STATEMENT

The United States District Court for the Northern District of California ("Court") has exclusive and original jurisdiction over the Debtor's bankruptcy case ("Bankruptcy Case").[2] Under 28 U.S.C. § 157(a) and under General Order No. 24, the Court referred the Bankruptcy Case to the Bankruptcy Court. "Orders granting or denying relief from the automatic stay are deemed to be final orders."[3] On August 7, 2025, the Debtor filed the Motion to Approve Compromise and Stipulation Modifying the Automatic Stay ("Motion"). On September 2, 2025, the Bankruptcy Court issued a Docket Text Order granting the Motion. On September 17, 2025, the Bankruptcy Court entered its Order Granting Debtor's Motion to Approve Compromise and Stipulation Modifying the Automatic Stay (together with Docket Text Order,

---

[2] The term "Bankruptcy Case" means the case entitled *The Roman Catholic Archbishop of San Francisco*, Case No. 3:23-bk-30564, pending in the Bankruptcy Court.

[3] *Nat'l Env't Waste Corp. v. City of Riverside* (*In re National Env't Waste Corp.*), 129 F.3d 1052, 1054 (9th Cir. 1997).

3

"Order"). LMI timely filed a notice of appeal on September 16, 2025. The Court has jurisdiction to hear appears from "final judgments, orders, and decrees" of the Bankruptcy Court.[4] Accordingly, the Court has jurisdiction to hear this appeal.

## III.    JOINDER

To avoid duplication as ordered by the Court, LMI join and incorporate all the arguments, facts, and statements set forth in the Opening Brief filed by Appellants Century Indemnity Company, Pacific Indemnity Company, and Westchester Fire Insurance Company ("Century Insurers") and Westport Insurance Corporation ("Westport") as if set forth herein.[5] LMI also join in the Appendices filed by the Century Insurers and Westport.

## IV.    ISSUES PRESENTED

LMI join and incorporate herein the Issues Presented as set forth in opening brief filed by the Century Insurers and Westport.   In addition, the following issues concern the question of whether the Bankruptcy Court erred in entering the Order, including, *inter alia*, by (i) altering the Policies of LMI; (ii) violating current judgment enforcement provisions under California law; (iii) improperly entering a final order without jurisdiction on non-core matters rather than submitting proposed findings of fact and conclusions of law to this Court; (iv) failing to apply the factors outlined in *In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984), adopted by the Bankruptcy Appellate Panel for the Ninth Circuit in *In re Kronemyer*, 405 B.R. 915, 921 (B.A.P.

---

[4] 28 U.S.C. § 158(a)(1).

[5] LMI do not join in the relief requested by Westport Insurance Corporation.

9th Cir. 2009); and (v) failing to evaluate whether cause exists for relief from stay on a case-by-case basis.

## V.   STANDARD OF REVIEW

Ordinarily, "[t]he decision to grant or deny relief from the automatic stay is committed to the sound discretion of the bankruptcy court," with such orders reviewed under the "abuse of discretion standard."[6]   To determine whether there is abuse of discretion, courts apply a two-part test.   First, the appellate court determines *de novo* whether the bankruptcy court identified the correct legal rule to apply to the relief requested, and actually applied such standard.[7] If it did, the appellate court next determines whether the bankruptcy court's application of the correct legal standard to the evidence presented was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record.[8] If any of these three apply, the appellate court may conclude that the bankruptcy court abused its discretion by making a clearly erroneous finding of fact.[9]

However, where an appeal does not involve factual disputes, a bankruptcy court's ruling on a pure legal question is reviewed *de novo*.[10]   Where "the only question raised on appeal is whether the undisputed facts establish cause sufficient to modify the automatic stay," the question is a "legal conclusion subject to plenary review."[11]   Whether the bankruptcy court applied the correct legal standard is a legal

---

[6] *Benedor Corp. v. Conejo Enters., Inc. (In re Conejo Enters., Inc.)*, 96 F.3d 346, 351 (9th Cir. 1996) citing *State of Idaho v. Arnold (In re Arnold)*, 806 F.2d 937, 938 (9th Cir. 1986) and *MacDonald v. MacDonald (In re MacDonald)*, 755 F.2d 715, 716 (9th Cir. 1985).

[7] *Groshong v. Sapp (In re Mila, Inc.)*, 423 B.R. 537, 542 (B.A.P. 9th Cir. 2010).

[8] *Id.*; citing *United States v. Hinkson*, 585 F.3d 1247, 1262 n.20 (9th Cir. 2009).

[9] *In re Mila*, 423 B.R. at 542.

[10] *FourWs, LLC v. Miller*, 653 F.Supp.3d 762, 764 (E.D. Cal. 2023) ("Because there are no factual disputes, the court reviews de novo the Bankruptcy Court's determination on this purely legal question—whether it could extend the automatic stay…").

[11] *Am. Airlines, Inc. v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.)*, 152 B.R. 420, 423 (Bankr. D. Del. 1993).

5

issue which is reviewed *de novo*.[12] Moreover, the selection of legal standards applied by the bankruptcy court are reviewed *de novo*.[13] Here, the issues on appeal are whether the Order altered the Policies and whether the Bankruptcy Court properly found there was cause to lift relief from stay based on the record. Because the issues set forth herein do not involve factual disputes, the abuse of discretion standard does not apply.

Accordingly, because the issues herein are purely legal, the *de novo* standard governs.

## VI. STATEMENT OF THE CASE

As stated above, LMI join and incorporate the facts and Statement of the Case set forth in the Opening Brief filed by Century Insurers and Westport.

### A. The Policies

LMI allegedly subscribed, severally and not jointly, First and Second Excess Umbrella Policies in favor of the Debtor for the periods effective from November 1, 1960, to October 25, 1966 (together, "Policies"). The Policies provide excess insurance. The underlying insurance, provided by Pacific Indemnity, has limits of $500,000 each person and $500,000 each occurrence. The First Excess Umbrella Policies provide limits of $1M excess of the $500,000 in underlying insurance. The Second Excess Umbrella Policies have limits of $1M excess of the $1M First Excess Umbrella layer and excess of the $500,000 in underlying insurance.

## VII. SUMMARY OF ARGUMENT

For the following reasons, the Order merits reversal.

First, the Bankruptcy Court improperly altered the Policies and created new judgment enforcement remedies that do not exist or are barred under California law.

---

[12] *In re Karelin*, 109 B.R. 943, 946 (B.A.P. 9th Cir. 1990); *In re Roth*, 595 B.R. 572, 576 (S.D. Cal. 2018).

[13] *In re Pizante*, 186 B.R. 484, 488 (B.A.P. 9th Cir. 1995); see *Fjelstad v. American Honda Motor Co.*, 762 F.2d 1334, 1337 (9th Cir.1985).

The Bankruptcy Court cannot expand the Debtor's rights beyond what existed before the Bankruptcy Case commenced.

Second, the Bankruptcy Court can only act when it is statutorily authorized to do so or has constitutional authority. Here, the Bankruptcy Court did not have constitutional authority to enter the Order. Moreover, the Bankruptcy Code does not authorize a bankruptcy court to alter the Policies. Applicable case law prohibits such actions by the Bankruptcy Court. Because the Order alters the Policies, the Bankruptcy Court acted beyond its statutory authority and entered the Order in error.

Third, the Bankruptcy Court lacked jurisdiction to enter the Order. Because the Order involves purported enforcement of liens against the Policies and proceeds of the Policies (and also alters the Policies), the Order involved non-core matters. The Bankruptcy Court does not have the jurisdiction to enter final orders on non-core proceedings, or the authority under the U.S. Constitution to issue final orders on matters of private right. The Bankruptcy Court may only enter proposed findings of fact and conclusions of law.

Fourth, the Bankruptcy Court failed to analyze whether "cause" exists to lift the automatic stay. The Bankruptcy Court did not discuss any factors as to why the automatic stay should be modified, nor did the Bankruptcy Court explain its reasoning. The Bankruptcy Court's failure to evaluate and analyze whether there was cause to lift or modify the automatic stay was improper.

Finally, the Bankruptcy Court was required to evaluate whether cause exists on an individual, case-by-case basis. The Debtor did not present any facts about the individual cases for the Bankruptcy Court to make this determination. Hence, the Bankruptcy Court could not make a finding that cause existed for each of the identified cases.

## VIII.  ARGUMENT

### A.    The Bankruptcy Court Erred in Entering the Order Because the Order Impermissibly Alters the Policies

The Bankruptcy Court entered the Order in error because it alters the Policies. The Stipulation provides, "Nothing in this Stipulation should be construed to prevent a lien *from attaching* to the Debtor's and/or any Non-Debtor Affiliate's insurance policies or the proceeds of such policies, or the assets of any defendant that is not the Debtor or a Non-Debtor Affiliate or the enforcement of such lien."[14]  The Bankruptcy Code "neither creates nor enhances the rights a debtor brings into the bankruptcy estate."[15] The Order alters the Policies in two ways.  First, the Order alters the Policies because the imposition of the liens may limit the rights of LMI under the Policies. Second, the Order alters the Policies because it divests LMI of the ability to defend against a coverage action. As such, the Bankruptcy Court should not have approved the Stipulation's improper language.

### 1.    The Order Improperly Alters the Policies Because the Liens May Limit Rights Under the Policies

The Order improperly alters the Policies because it allows liens to be obtained against the Policies, affecting the rights of LMI under the Policies.  The Stipulation improperly allows liens to "attach" against the Policies and proceeds of the Policies. It is unclear how liens can "attach" or be enforced against the Policies themselves. LMI are unaware of any caselaw or statute—whether federal or state—that permit a lien to be imposed against insurance policies.  Indeed, neither the Debtor nor the Committee cited any legal authority to support the inclusion of this language in the Stipulation.    Moreover, the Bankruptcy Court should not offer an implicit endorsement of an unexplained (and seemingly impossible) form of judgment enforcement that alters the Policies.

---

[14] Stipulation at ¶ 3(c) (emphasis added).

[15] *Oregon v. Braker (In re Braker)*, 125 B.R. 798 (B.A.P. 9th Cir. 1991).

There is no legal authority that allows a lien to be obtained against an insurance policy. Given the lack of legal authority, it is impossible to determine how a lien would affect the rights of LMI under the Policies with respect to handling claims. For instance, it is unclear if a lienholder would be able to dictate LMI's actions with regard to claims of other persons or claims against other assureds. A lienholder might seek to require LMI to obtain its consent to take certain actions under the Policies that ordinarily LMI ordinarily can act without consent. Imposing such restrictions and limitations on LMI's rights is impermissible. In short, the uncertainty stemming from how the lienholders will assert their purported liens against the Policies alters the Policies.

### 2.  The Order Improperly Alters the Policies Because it Divests LMI of the Right to Defend Against a Coverage Action

The Order improperly divests LMI of the right to defend against a coverage action. Under the Stipulation, Plaintiffs may immediately enforce their judgment against the Debtor's insurance policies and proceeds prior to obtaining any determination that LMI owe coverage for such judgment. "Nothing in this Stipulation should be construed to prevent a lien *from attaching* to the Debtor's and/or any Non-Debtor Affiliate's insurance policies or the proceeds of such policies, or the assets of any defendant that is not the Debtor or a Non-Debtor Affiliate or the enforcement of such lien."[16] The Bankruptcy Court's permission to impose such a pre-judgment lien is contrary to existing California law. "As a general rule, absent an assignment of rights or a final judgment, a third party claimant may not bring a direct action against an insurance company on the contract because the insurers' duties flow to the insured."[17] The Debtor has not assigned any such rights. The coverage action brought against an insured is "subject to its terms and limitations."[18]

---

[16] Stipulation at ¶ 3(c) (emphasis added).

[17] *Harper v. Wasau Ins. Co.*, 56 Cal. App. 4th 1079, 1086 (Cal. Ct. App. 1997).

[18] Cal. Ins. Code § 11580.

The Stipulation violates California Insurance Code Section 11580.  Even if a Plaintiff were to obtain a judgment against the Debtor, LMI would have no responsibility for that judgment, unless it is covered under the Policies and the Debtor has performed all the material obligations and conditions under the Policies.  Put simply, a Plaintiff's judgment against the Debtor does not mean that LMI are automatically liable.  For a Plaintiff to enforce a judgment against the proceeds of the Policies, the Plaintiff must first bring a coverage action against LMI to determine whether LMI has any obligation under the Policies and obtain a judgment against LMI.  By permitting a judgment to be instantly enforced against  the Policy proceeds, the Order improperly divests LMI of any defenses they may have under the Policies.

### 3.    The Bankruptcy Court Erred in Approving the Stipulation Because Liens Cannot "Attach" to Insurance Policies

Even if a lien could be enforced against an insurance policy, California law bars the judicial liens contemplated in the Stipulation from attaching to the insurance policies.  A lien, "in its broadest sense…is understood and used to denote a legal claim or charge on property, either real or personal, as security for the payment for some debt or obligation…"[19]  "Attachment is an ancillary or provisional remedy to aid in the collection of a *money demand* by seizure of property *in advance of trial and judgment*."[20]  In California, California Code of Civil Procedure ("CCP") §§ 481.010, *et seq*. governs "the procedures and grounds for obtaining orders permitting prejudgment writs of attachment."[21]  Because "California's attachment law is purely statutory, it must be strictly construed."[22]

---

[19] *Gray v. Horne*, 48 Cal.App.2d 372, 375 (1941).

[20] *Kemp Bros. Construction, Inc. v. Titan Electric Corp.*, 146 Cal.App.4th 1474, 1476 (2007) (internal citations omitted) (emphasis in original) citing *Doyka v. Superior Court*, 233 Cal.App.3d 1134, 1137 (1991).

[21] *VFS Financing, Inc. v. CHF Express, LLC*, 620 F.Supp.2d 1092, 1095 (C.D. Cal. 2009).

[22] *Kemp Bros*., 146 at 1476.

10

Under CCP § 483.010, "[e]xcept as otherwise provided by statute, an attachment may be issued only in an action on a claim or claims for money, each of which is ***based upon a contract***, express or implied, where the total amount of the claim or claims ***is a fixed or readily ascertainable amount*** not less than five hundred dollars ($500) exclusive of costs, interest, and attorney's fees."[23]  Here, no lien can *attach* against the insurance policies or proceeds.  The claims here are not based on a contract, nor are the total amount of the claims fixed or readily ascertainable.  In short, California law strictly defines attachment, and the Stipulation cannot rewrite these requirements.

### 4.    The Bankruptcy Court Erred in Entering the Order Because Judgment Liens Cannot Be Enforced Against Insurance Policies

California law does not authorize a party to enforce a judgment lien against insurance policies.  Judgment liens may be enforced against real property and personal property.[24]  California law expressly defines the personal property subject to judgment liens as (1) accounts receivable; (2) tangible chattel paper; (3) equipment; (4) farm products; (5) inventory; and (6) negotiable documents of title.[25]  The Policies do not fit any of the personal property categories under Cal. Code Civ. P. § 697.530.  Hence, because insurance policies are neither real nor personal property, the Plaintiffs cannot assert judgment liens against the Policies.

In sum, the Stipulation's language allowing a lien to attach to the Debtor's insurance policies is improper.  The Order cannot create new remedies and procedures that do not otherwise exist or are not permissible under California law.

---

[23] Cal. Code Civ. P. § 483.010(a).

[24] Cal. Code Civ. P. § 697.060.

[25] Cal. Code Civ. P. § 697.530.  "Tangible chattel paper" is defined in Cal. Com. Code § 9102. Under Cal. Code Civ. P. § 697.510(m), terms not defined commencing with Cal Code Civ. P. 680.010 "have the definitions set forth in the Commercial Code."

11

**B.      The Bankruptcy Court Erred Because it Lacked Constitutional and Statutory Authority to Alter the Policies**

**1.      The Bankruptcy Court Does Not Have Constitutional Authority to Alter the Policies**

The Bankruptcy Court does not have Constitutional authority to alter the Policies. "Bankruptcy courts are not created under the authority of Article III of the Constitution.  Instead, bankruptcy courts are created under Article I pursuant to Congress' substantive authority over bankruptcies."[26]  Further, "[u]nlike Article III courts, which derive their powers directly from the Constitution, Article I courts' powers are derived *wholly* from statute."[27]  Congress may constitutionally assign categories of cases involving "public rights" to legislative courts like bankruptcy courts.[28]  However, bankruptcy courts lack constitutional authority to adjudicate cases involving "private rights."  A lawsuit seeking contractual damages against an insurer is "a paradigmatic matter of a "private right."[29]

Here, the Order involves a contractual dispute over the Policies which is a matter of private rights.  Under the Order and Stipulation, the Plaintiffs are allowed to purportedly obtain a lien against the Policies without having to first obtain a judgment against LMI that their claims are covered under the Policies.  However, a judgment that the Debtor is liable is not the equivalent that the claims are covered under the Policies.  This dispute is a matter of private right.  As such, the Bankruptcy Court did not have constitutional authority to approve the Stipulation.

---

[26] *Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.)*, 77 F.3d 278, 283-84 (9th Cir. 1996).

[27] *In re Rainbow Magazine, Inc.*, 77 F.3d at 283-84 (emphasis added); see also *Minn. Pollution Control Agency v. Gouveia (In re Globe Bldg. Materials, Inc.)*, 345 B.R. 619, 638 (Bankr. N.D. Ind. 2006) ("As Article I courts rather than Article III courts, federal bankruptcy courts do not derive the underpinning of their existence and jurisdiction from the United States Constitution, but rather derive their powers solely from legislation of the United States Congress which defines the scope of their authority.")

[28] *Stern v. Marshall*, 564 U.S. 462, 485 (2011).

[29] *In re JAB Energy Solutions II, LLC*, 655 B.R. 76, 80 (Bankr. D. Del. 2023) (overruled in part on other grounds).

12

### 2.    The Bankruptcy Court Cannot Act Beyond the Express Authority Set Forth in the Bankruptcy Code

"Article I bankruptcy courts are creatures of statute, created by Congressional legislation", a bankruptcy court's "power is *limited*."[30]   Bankruptcy courts "must specifically follow Congressional enactments which state the scope of their powers."[31] The Supreme Court has ruled repeatedly that a bankruptcy court cannot exercise power in contravention of the Bankruptcy Code.

In *Law v. Siegel*, the Supreme Court ruled that the bankruptcy court lacked authority for its ruling.[32]   The bankruptcy court found that the debtor defrauded creditors, resulting in the chapter 7 trustee incurring significant attorneys' fees.[33]   To sanction the debtor, the bankruptcy court ruled that the debtor's homestead exemption could be "surcharged" (*i.e.* used to pay the chapter 7 trustee's attorneys' fees).[34]   The Supreme Court ruled that the bankruptcy court's "surcharge" was unauthorized because it exceeded Section 522 of the Bankruptcy Code.[35]

The Supreme Court similarly reversed a bankruptcy court exceeding its statutory authority in *Czyzewski v. Jevic Holding Corp*.[36]  In *Jevic*, the parties disputed whether the bankruptcy court's "structured dismissal" (a dismissal of a bankruptcy case with certain conditions) was proper.[37]   The Supreme Court ruled that the structured dismissal in *Jevic* was improper.[38]   The Bankruptcy Code provides that

---

[30] *Troisio v. Erickson (In re IMMC Corp.)*, 2018 WL 259941 at *5 (Bankr. D. Del. Jan. 2, 2018) (emphasis added).

[31] *In re Globe Bldg. Materials, Inc.*, 345 B.R. at 638.

[32] *Law v. Siegel*, 571 U.S. 415, 419 (2014).

[33] *Id.*

[34] *Id.* at 420.

[35] *Id.* at 422-23.

[36] *Czyzewski, v. Jevic Holding Corp.*, 580 U.S. 451 (2017).

[37] *Id.* at 457.

[38] *Id.* at 464 ("Can a bankruptcy court approve a structure dismissal that provides for distributions that do not follow ordinary priority rules without the affected creditors' consent?  Our simple answer to this complicated question is 'no.'").

13

creditors must be paid in a particular order under its priority scheme.[39]  Because the structured dismissal in *Jevic* violated such priority scheme and because Congress did not authorize an exception to the priority scheme, the bankruptcy court exceeded its power when it approved the structure dismissal.[40]

In *In re Purdue Pharma L.P.*, the Supreme Court reversed the bankruptcy court's ruling for exceeding its statutory authority.[41]  The bankruptcy court approved a plan of reorganization that contained a release and injunction in favor of one group of nondebtors (the Sackler family and Purdue shareholders) against another group of nondebtors (claimants allegedly injured by Purdue's opioid products) who did not consent to the release and injunction.[42]  Although the district court reversed the bankruptcy court,[43] the Second Circuit disagreed with this analysis and held that sections 105(a) and 1123(b)(6) jointly provide a statutory basis for approval of third-party nonconsensual releases.[44]  The Supreme Court overruled the Second Circuit, reasoning that section 1123(b)(6) is a catchall phrase but that its scope should be interpreted in light of its surrounding context.  Because sections 1123(b)(1)–(5) all concern the debtor's rights and responsibilities and only allow a bankruptcy court to "adjust claims without consent" when the claims involve the debtor, section 1123(b)(6) could not be "fairly read" to grant the bankruptcy court powers relating to nondebtors.[45]  Accordingly, the Supreme Court held: "Confining ourselves to the question presented, we hold only that the bankruptcy code does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a nondebtor without the consent of affected

---

[39] *Id*. at 457.

[40] *Id*. at 471.

[41] *Harrington v. Purdue Pharma L. P.*, 603 U.S. 204 (2024).

[42] *In re Purdue Pharma L.P.*, 633 B.R. 53, 96 (Bankr. S.D.N.Y. 2021).

[43] *In re Purdue Pharma L.P.*, 635 B.R. 26, 106 (S.D.N.Y. 2021).

[44] *In re Purdue Pharma L.P.*, 69 F.4th 45, 57 (2d Cir. 2023).

[45] *Purdue Pharma L. P.*, 603 U.S. at 205.

claimants"[46]  Hence, the bankruptcy court exceeded its authority when it improperly approved the nonconsensual third-party releases.

Finally, the Supreme Court ruled that the bankruptcy court's decision In *Truck Insurance Exchange v. Kaiser Gypsum Company, Inc.*, was in error because the bankruptcy court should have applied the Bankruptcy Code to determine whether Truck could object to the debtor's chapter 11 plan, rather than apply a judicially created doctrine.[47]  The bankruptcy court ruled that Truck Insurance Exchange ("Truck") could not object to plan confirmation because the plan did not affect Truck's rights and obligations under its policies.[48]  The Supreme Court rejected this reasoning, explaining that bankruptcy courts should only evaluate whether the objecting party is a "party in interest" under Section 1109(b).[49]  To determine whether a party has a right to be heard, Section 1109(b) asks whether the reorganization proceedings *might* directly affect a prospective party, not how a reorganization plan actually affects that party.[50]  Applying this standard, the Supreme Court held that Truck was a party in interest.[51]  The Supreme Court held the bankruptcy court should have considered "all the other ways in which bankruptcy proceedings and reorganization plans can alter and impose obligations on insurers."[52]  The Supreme Court therefore reversed, emphasizing that the bankruptcy court should have relied on Section 1109(b).

Here, the Bankruptcy Court exceeded its power because the Bankruptcy Code does not authorize it to alter the Policies.  Consistent with the foregoing Supreme

---

[46] *Id.* at 227.

[47] *Truck Ins. Exch. v. Kaiser Gypsum Co., Inc.*, 602 U.S. 268 (2024).

[48] *Id.*

[49] *Id.* at 269-70.

[50] *Id.* at 272.  Section 1109(b) provides that "A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter."

[51] *Id.* at 281.

[52] *Id.* at 283.

Court decisions, in this case the bankruptcy court also acted without statutory authority, in contravention of applicable law, and therefore must be reversed.

### 3. Caselaw Recognizes that Bankruptcy Courts Must Operate within the Confines of the Bankruptcy Code, which Does Not Authorize the Bankruptcy Court to Alter the Policies

"[B]ankruptcy courts should only modify the usual state-law rights and remedies if and to the extent that such modifications are specifically authorized or directed by the Bankruptcy Code."[53] In certain contexts, the Bankruptcy Code confers the bankruptcy court with statutory authority as to contracts. For instance, Section 365 of the Bankruptcy Code requires a bankruptcy court to approve a debtor's decision to assume or reject an executory contract.[54] Moreover, if a debtor defaults on an executory contract, the bankruptcy court may determine the amount the debtor must cure in order to assume the executory contract.[55]

To be clear, there is no Bankruptcy Code provision that allows the Bankruptcy Court to alter the Policies. Indeed, the request for stay relief here was made under Section 362 and Federal Rule of Bankruptcy Procedure ("Rule") 9019. There is no language in Section 362 or Rule 9019 that authorized the Bankruptcy Court to alter the Policies. Because neither the Bankruptcy Code nor Rules authorized the Bankruptcy Court to alter the Policies, the Bankruptcy Court improperly acted without statutory authority.

Relevant caselaw clarifies that the Bankruptcy Court is barred from altering the Policies. "[T]he Bankruptcy Code does not and should not grant a debtor 'greater rights and powers under the contract than he had outside of bankruptcy.'"[56] Moreover,

---

[53] *HSBC Bank USA v. Branch (In re Bank of New England Corp.)*, 364 F.3d 355, 363 (1st Cir. 2004).

[54] 11 U.S.C. § 365(a)(1).

[55] 11 U.S.C. § 365(b)(1).

[56] *Benz v. Dtric Insurance Company (In re Benz)*, 368 B.R. 861, 867 (B.A.P. 9th Cir. 2007) citing *White Motor Corp. v. Nashville White Trucks, Inc. (In re Nashville White Trucks, Inc.),* 5 B.R. 112, 117 (Bankr.M.D.Tenn.1980).

it is well-established that "however expansive the bankruptcy court's powers may be to protect the property interests of debtors-in-possession, it does not extend to enlarging the rights of a debtor under a contract or rewriting its terms."[57]  Further, "[t]he filing of a bankruptcy petition does not alter the scope or terms of a debtor's insurance policy…"[58]  In sum, because the Bankruptcy Court was not authorized under the Code (and was barred by case law) from altering the Policies, the Bankruptcy Court entered the Order in error.

### C.   The Bankruptcy Court Did Not Have Jurisdiction to Enter the Order

The Bankruptcy Court lacked jurisdiction to enter the Order approving the Stipulation.  A bankruptcy court "may hear and enter final judgments in 'all core proceedings arising under title 11, or arising in a case under title 11.'"[59]  However, a bankruptcy court may not enter a final order on non-core claims.  Instead, a bankruptcy court may only submit proposed findings of fact and conclusions of law on non-core claims to the district court."[60]  "[A] claim is non-core if it does not depend on bankruptcy laws for its existence and…could proceed in a court that lacks federal bankruptcy jurisdiction."[61]

[57] *In re Cap. W. Invs.*, 186 B.R. 497, 500 (N.D. Cal. 1995) citing *In re Bolin Oil, Co.* 51 B.R. 936, 938 (Bankr. N.D. Ohio 1985); *In re Benz*, 368 B.R. at 867 ("But the Bankruptcy Code does not and should not grant a debtor 'greater rights and powers under the contract than he had outside of bankruptcy'") citing *In re Nashville White Trucks, Inc.*, 5 B.R. at 117; *In re Redpath Comput. Servs., Inc.*, 181 B.R. 975, 979 (Bankr. D. Ariz. 1995) ("[T]he Bankruptcy Code neither enlarges the contract rights of a debtor, nor prevents the termination of a contract by its own terms) citing *Carroll v. Tri-Growth Centre City (In re Carroll)*, 903 F.2d 1266, 1271 (9th Cir. 1990); *In re EES Lambert Assoc.*, 62 B.R. 328, 336 (N.D. Ill. 1986); *Sunset Coast Holdings, LLC v. Hughes Inv. P'ship LLC (In re Tower Park Props., LLC)*, 2021 WL 1199442 at *7 (C.D. Cal. Mar. 29, 2021) ("Neither this Court nor the bankruptcy court can rewrite contracts to 'add a nonexistent contract term") citing *AdTrader, Inc. v. Google LLC*, 2018 WL 3428525 at *11 (N.D. Cal. 2018); *In re Crippin*, 877 F.2d 594, 598 (7th Cir. 1989) ("While bankruptcy courts have the power to allow debtors to *escape* burdensome contracts by rejecting them, bankruptcy courts do not have the power to rewrite contracts to allow debtors to continue to perform on more favorable terms.") (emphasis in original).

[58] *In re MF Global Holdings, Ltd.*, 469 B.R. 177, 194 (Bankr. S.D.N.Y. 2012).

[59] *Stern v. Marshall*, 564 U.S. at 474 citing 28 U.S.C. § 157(b)(1).

[60] *Stern*, 564 U.S. at 475 citing 28 U.S.C. § 157(b)(2).

[61] *Scott v. AIG Prop. Casualty Co.*, 2017 WL 1380607 at *3 (S.D.N.YU. April 17, 2017).

Here, the Order provides that judgments can only be enforced against the insurance policies. Because claims involving insurance policies exist under state law and are not based on bankruptcy law, the Order involves non-core issues. Moreover, a declaratory relief action against an insurer to determine rights and liabilities under a prepetition insurance contract is not a core proceeding.[62] As such, the Bankruptcy Court only had authority to enter proposed findings of fact and did not have jurisdiction to enter the Order[63] Accordingly, the Order should be reversed.

### D.    The Bankruptcy Court Erred in Finding Cause to Approve the Stipulation

#### 1.    The Bankruptcy Court Failed to Apply the *Curtis* Factors

In the Ninth Circuit, courts evaluate whether there is "cause" by applying the *Curtis* factors".[64]    The *Curtis* factors are "appropriate, nonexclusive, factors to consider in deciding whether to grant relief from the automatic stay to allow pending litigation to continue in another forum."[65] The *Curtis* factors are:

(1) whether the relief requested will result in a partial or complete resolution of the bankruptcy issues; (2) whether the outside litigation has any connection to or will interfere with the bankruptcy case;

(3) whether the litigation involves the debtor as a fiduciary;

(4) whether a specialized tribunal has been established with expertise to hear the particular cause of action;

---

[62] *Certain Underwriters at Lloyd's, Syndicates v. GACN, Inc. (In re GACN, Inc.)*, 555 B.R. 684, 698 (B.A.P. 9th Cir. 2016).

[63] While LMI make this legal argument regarding Bankruptcy Court jurisdiction, they reserve all rights to assert that the Bankruptcy Court should not address any coverage issues, including making findings of fact, since there is no insurance coverage case involving LMI before the Bankruptcy Court.

[64] *See In re Curtis*, 40 B.R. at 799-800; *In re Roger*, 539 B.R. 837, 845 (C.D. Cal. 2015) ("The Ninth Circuit [Bankruptcy Appellate Panel] has recognized that 'the *Curtis* factors are appropriate, nonexclusive, factors to consider in deciding whether to grant relief from the automatic stay to allow pending litigation to continue in another forum.") citing *In re Kronemyer*, 405 B.R. at 921.

[65] *In re Roger*, 539 B.R. at 845 citing *In re Kronemyer*, 405 B.R. at 921.

(5) whether the debtor's insurance carrier has assumed financial responsibility for defending the litigation;

(6) whether the litigation essentially involves third parties and the debtor functions only as a bailee or conduit for the property in question;

(7) whether the litigation would prejudice the interests of other creditors, the creditors' committee and other interested parties;

(8) whether the judgment claim arising from the litigation is subject to equitable subordination under section 510(c);

(9) whether the movant's success in the litigation would result in a judicial lien avoidable by the debtor under Section 522(f);

(10) whether the litigation has progressed to the point where the parties are prepared for trial;

(11) how lifting the stay might serve the interests of judicial economy and the expeditious and economical determination of litigation for the parties; and

(12) the impact of the stay on the parties and the "balance of hurt".[66]

Failure to properly consider and weigh relevant *Curtis* factors is grounds for reversal.[67]

The Bankruptcy Court completely failed to apply the *Curtis* factors when it approved the Stipulation. In its Docket Text Order, the Court made no findings whether "cause" existed to lift/modify the automatic stay under 11 U.S.C. § 362.

---

[66] *In re Roger*, 539 B.R. at 844-45.

[67] *Id.* at 846-53 (the district court finding that the bankruptcy court erred in not considering certain factors and improperly weighing or failing to weigh others); *In re Baleine, LP*, 2015 WL 5979948 *10 (C.D. Cal. Oct. 13, 2015) (reversing denial of stay relief in part because there is no evidence on which the bankruptcy court rationally could have based its conclusion that granting relief from stay would adversely impact the bankruptcy estate); *In re Abrantes Const. Corp.*, 132 B.R. 234, 238 (N.D.N.Y. 1991) (remanded to bankruptcy court because the record did not clearly show whether the court had conducted the *Curtis* factors analysis, preventing appellate review of whether the court properly exercised its discretion in granting stay relief); *In re Mazzeo*, 167 F.3d 139 (2d Cir. 1999) (remanded to bankruptcy court where the decision omitted any reference to *Sonnax* factors, which are identical to the *Curtis* factors, or similar analytical framework, and the limited factual findings made it impossible to determine whether the court properly applied the governing legal standards)

19

Instead, the Court only mentioned certain factors Courts may consider when evaluating whether a settlement is appropriate under Rule 9019. Except a passing reference to the "legal and factual bases" in the Motion, the Order does not have any findings on why there is cause to lift the automatic stay. By failing to make any clear findings on cause, and by failing to apply the *Curtis* factors, the Bankruptcy Court erred in approving the Stipulation.

### 2.    The Bankruptcy Court Could Not Properly Find Cause Because It Did Not Consider the Released Cases On An Individual Basis

Even assuming *arguendo* that the Bankruptcy Court's findings were sufficient, the Bankruptcy Court could not properly find cause. "What constitutes 'cause' for granting relief from the automatic stay is decided on a ***case-by-case basis***."[68] The Bankruptcy Court was required to evaluate the Released Cases *individually* to determine whether there is cause to lift the stay for *each* case.[69] Here, the Debtor identified five state court actions to be Released Cases.[70] However, the Debtor did not offer any facts or evidence demonstrating why cause exists for stay relief for each of these cases. The Debtor also did not engage in any analysis applying the *Curtis* factors to the cases individually. Similarly, the Debtor did not offer any facts or evidence about the underlying cases for which the demand letters will be sent. Because the Debtor did not offer any facts or evidence for the cases individually, the Bankruptcy Court could not make any findings that cause existed on a case-by-case basis for the Released Cases and cases underlying the settlement demand letters. Accordingly, by failing to review the Released Cases and underlying cases

---

[68] *In re Kronemyer*, 405 B.R. at 921 (emphasis added).

[69] *See, e.g.*, *In re Diocese of Buffalo, N.Y.*, 665 B.R. 198 (Bankr. W.D.N.Y. 2024) (bankruptcy court considered seventeen motions for relief from stay after considering each motion on its merits); *In re PG&E Corp.*, 2019 WL 3889247 (Bankr. N.D. Cal. Aug. 16, 2019) (evaluating stay relief for eight separate tort claimants' state court proceedings).

[70] Motion at 5, ¶ 15.

individually and apply the *Curtis* factors to each case separately, the Bankruptcy Court erred in entering the Order.

## IX.   CONCLUSION

For the foregoing reasons, LMI respectfully request that the Court reverse the Order.

Dated: December 2, 2025

Respectfully submitted,

By: */s/ Russell W. Roten*
Russell W. Roten
Jeff D. Kahane
Timothy W. Evanston
Isabelle Cho
Skarzynski Marick & Black LLP
333 South Grand Street, Suite 3550
Los Angeles, CA 90071
Telephone: (213) 721-0650
Email:    rroten@skarzynski.com
              jkahane@skarzynski.com
              tevanston@skarzynski.com
              icho@skarzynski.com
-and-

Catalina J. Sugayan (*pro hac vice* forthcoming)
Yongli Yang (*pro hac vice* forthcoming)
Clyde & Co US LLP
30 S. Wacker Drive, Suite 2600
Chicago, IL 60606
Telephone: (312) 635-7000
Email:   Catalina.Sugayan@clydeco.us
              Yongli.Yang@clydeco.us

*Counsel for Certain Underwriters at Lloyd's, London and Certain London Market Insurance Companies*

**CERTIFICATION PURSUANT TO FED. R. BANKR. P. 8015(h)**

The undersigned hereby certifies that this document, which was prepared using Courier New 12-point typeface, complies with the word limit of Fed. R. Bankr. P. 8015(a) because it contains less than 13,000 words and is size 14 font. (excluding those items exempted from the limit pursuant to Fed. R. Bankr. P. 8015(g)).  This certificate was prepared in reliance on the word-count function of the word-processing system (Microsoft Word) used to prepare the document.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 2, 2025.

/s/ *Timothy W. Evanston*

Timothy W. Evanston