1
PARKER, HUDSON, RAINER & DOBBS LLP
Harris B. Winsberg (admitted *pro hac vice*)
2
Matthew M. Weiss (admitted *pro hac vice*)
Matthew G. Roberts (admitted *pro hac vice*)
3
Brian C. Aton (SBN No. 339266)
303 Peachtree Street NE, Suite 3600
4
Atlanta, Georgia 30308
Telephone: (404) 523-5300
5
Facsimile: (404) 522-8409
Email: hwinsberg@phrd.com
6
        mweiss@phrd.com
        mroberts@phrd.com
7
        baton@phrd.com

8
Todd C. Jacobs (admitted *pro hac vice*)
John E. Bucheit (admitted *pro hac vice*)
9
Two N. Riverside Plaza, Suite 1850
Chicago, Illinois 60606
10
Telephone: (312) 477-3305
Email: tjacobs@phrd.com
11
        jbucheit@phrd.com

12
*Attorneys for Chicago Insurance Company, Fireman's Fund Insurance Company, Westport*
*Insurance Corporation f/k/a Employers Reinsurance Corporation, and Appalachian Insurance*
13
*Company*

14
(additional counsel listed on signature page)

15
# UNITED STATES DISTRICT COURT

16
# NORTHERN DISTRICT OF CALIFORNIA

17
# SAN FRANCISCO DIVISION

18

| | |
|---|---|
| 19 CENTURY INDEMNITY COMPANY, *et al.*, | Civil Case Nos. |
| 20          Appellants, | 3:25-cv-08563-WHO (lead case) |
| 21 v. | 3:25-cv-08566-WHO |
| 22 THE ROMAN CATHOLIC ARCHBISHOP OF SAN | 3:25-cv-08568-WHO |
| 23 FRANCISCO, *et al.*, | **CHICAGO INSURANCE** |
| 24          Appellees. | **COMPANY, FIREMAN'S FUND** |
| 25 | **INSURANCE COMPANY,** |
| 26 | **WESTPORT INSURANCE** |
| 27 | **CORPORATION, AND** |
| | **APPALACHIAN INSURANCE** |
| | **COMPANY'S OPENING BRIEF** |

28

Appellants' Opening Brief                    Lead Case No. 3:25-cv-08563-WHO

# CORPORATE DISCLOSURE STATEMENTS

Pursuant to Federal Rule of Bankruptcy Procedure 8012 and Federal Rule of Civil Procedure 7.1, appellants Chicago Insurance Company, Fireman's Fund Insurance Company (collectively, the "<u>Interstate Insurers</u>"), Westport Insurance Company f/k/a Employers Reinsurance Corporation ("<u>Westport</u>"), and Appalachian Insurance Company ("<u>Appalachian</u>") submit the following Disclosure Statements:

## 1. <u>Chicago Insurance Company</u>:

### Parent Corporations for Non-Governmental Corporate Parties

Chicago Insurance Company ("<u>CIC</u>"), an Illinois corporation, is a wholly owned subsidiary of Fireman's Fund Insurance Company, an Illinois corporation, which in turn is a wholly owned subsidiary of Allianz Global Risks US Insurance Company, an Illinois corporation ("<u>AGR US</u>").  Eighty percent (80%) of the voting common stock of AGR US is held by Allianz of America, Inc., which is a wholly owned subsidiary of Allianz Europe B.V., a wholly owned subsidiary of Allianz SE. Twenty percent (20%) of the voting common stock and one hundred percent (100%) of the non-voting preferred stock of AGR US is held by AGCS International Holding B.V., which is a wholly owned subsidiary of Allianz Global Corporate & Specialty SE, a wholly owned subsidiary of Allianz SE.

### Publicly Held Companies that Hold 10% or More of the Party's Stock

Allianz SE is a publicly held corporation, organized under the laws of the Federal Republic of Germany, which is publicly traded on the OTC market under symbol AZSEY.  Allianz SE indirectly holds 10% or more of the stock of Chicago Insurance Company.

## 2. <u>Fireman's Fund Insurance Company</u>:

### Parent Corporations for Non-Governmental Corporate Parties

Fireman's Fund Insurance Company ("<u>FFIC</u>" and collectively with CIC, the "<u>Interstate Insurers</u>"), an Illinois corporation, is a wholly owned subsidiary of AGR US, an Illinois corporation.  Eighty percent (80%) of the voting common stock of

AGR US is held by Allianz of America, Inc., which is a wholly owned subsidiary of Allianz Europe B.V., a wholly owned subsidiary of Allianz SE. Twenty percent (20%) of the voting common stock and one hundred percent (100%) of the non-voting preferred stock of AGR US is held by AGCS International Holding B.V., which is a wholly owned subsidiary of Allianz Global Corporate & Specialty SE, a wholly owned subsidiary of Allianz SE.

**Publicly Held Companies that Hold 10% or More of the Party's Stock**

Allianz SE is a publicly held corporation, organized under the laws of the Federal Republic of Germany, which is publicly traded on the OTC market under symbol AZSEY. Allianz SE indirectly holds 10% or more of the stock of Fireman's Fund Insurance Company.

**3.  <u>Westport Insurance Corporation</u>:**

**Parent Corporations for Non-Governmental Corporate Parties**

Westport Insurance Corporation ("<u>Westport</u>"), which is formerly known as Employers Reinsurance Corporation ("<u>ERC</u>"), is wholly owned by SR Corporate Solutions America Holding Corporation, which itself is wholly owned by Swiss Re Corporation Solutions Holding Company Ltd., which itself is wholly owned by Swiss Reinsurance Company Ltd., which itself is wholly owned by Swiss Re Ltd., a publicly traded company listed in accordance with the International Reporting Standard on the SIX Swiss Exchange.

**Publicly Held Companies that Hold 10% or More of the Party's Stock**

No publicly traded company owns 10% or more of Swiss Re Ltd.

**4.  <u>Appalachian Insurance Company</u>:**

**Parent Corporations for Non-Governmental Corporate Parties**

Appalachian Insurance Company ("<u>Appalachian</u>") is wholly owned by FMIC Holdings, Inc. ("<u>FMIC Holdings</u>"). FMIC Holdings is wholly owned by Factory Mutual n/k/a FM ("<u>FM</u>"). FM is a mutual company and is not a publicly held corporation.

**Publicly Held Companies that Hold 10% or More of the Party's Stock**

FM has no parent corporation and there is no publicly held corporation that owns 10% or more of the stock of FM.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................... 1

JURISDICTIONAL STATEMENT ......................................................... 4

ISSUES PRESENTED ............................................................................ 5

STANDARD OF REVIEW ..................................................................... 6

STATEMENT OF THE CASE ................................................................ 7

      1.    EVENTS LEADING TO PETITION ................................. 7

      2.    ADVERSARY PROCEEDING ......................................... 9

      3.    REQUEST FOR RELIEF IN THE MAIN CASE .......... 11

      4.    REQUEST FOR A STAY PENDING APPEAL
           IN BANKRUPTCY CASE ............................................ 15

      5.    THE APPEAL ................................................................ 15

SUMMARY OF ARGUMENT ............................................................. 16

ARGUMENT ........................................................................................ 17

    I. THE BANKRUPTCY COURT ERRED AS A MATTER
      OF LAW WHEN IT FAILED TO IDENTIFY THE
      EXISTENCE OF CAUSE FOR GRANTING STAY
      RELIEF UNDER 11 U.S.C. § 362(D)(1) ............................... 17

    II. THE BANKRUPTCY COURT ERRED BY
       APPROVING THE STIPULATION WITHOUT
       WEIGHING ITS IMPACT ON THE INSURERS .......................... 22

    III. THE COURT SHOULD VACATE AND REMAND
        THE ORDER TO THE BANKRUPTCY COURT
        WITH THE PROPOSED INSTRUCTIONS ................................. 26

CONCLUSION ..................................................................................... 26

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re A & C Properties*,
784 F.2d 1377 (9th Cir. 1986)................................................5, 6, 17, 22

*Anytime Fitness, L.L.C. v. Thornhill Bros. Fitness, L.L.C. (In re Thornhill Bros. Fitness, L.L.C.)*,
85 F.4th 321 (5th Cir. 2023) ..............................................................18

*In re Arter & Hadden, LLP*,
373 B.R. 31 (Bankr. N.D. Ohio 2007) ..............................................22

*Bateman v. U.S. Postal Service*,
231 F.3d 1220 (9th Cir. 2000)...........................................................21

*Benedor Corp. v. Conejo Enters., Inc. (In re Conejo Enters., Inc.)*,
96 F.3d 346 (9th Cir. 1996) .........................................................6, 18

*In re BSA*,
137 F.4th 126 (3rd Cir. 2025)..............................................................4

*Credit One Corp. v. Naoom (In re Naoom)*,
BAP No. SC-16-1066-JuFY, 2017 Bankr. LEXIS 298 (B.A.P. 9th Cir. Jan. 19, 2017) .......................................................................21

*In re Curtis*,
40 B.R. 795 (Bankr. D. Utah 1984)...........................................*passim*

*Delaney-Morin v. Day (In re Delaney-Morin)*,
304 B.R. 365 (B.A.P. 9th Cir. 2003) .................................................19

*Duckor Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.)*,
177 F.3d 774 (9th Cir. 1999) .............................................................23

*Gerber v. MTC Elec. Techs. Co.*,
329 F.3d 297 (2d Cir. 2003) ................................................................4

*Goodwin v. Mickey Thompson Entm't Grp., Inc. (In re Mickey Thompson Ent. Grp., Inc.)*,
292 B.R. 415 (B.A.P. 9th Cir. 2003)..................................................18

- -

*Green v. Brotman Med. Ctr., Inc. (In re Brotman Med. Ctr., Inc.)*,
    BAP No. CC-08-1056-DKMo, 2008 WL 8444794 (B.A.P. 9th Cir.
    July 25, 2008) ............................................................................................... 18

*Interstate Fire & Casualty Co. and National Surety Corp. v. The
    Roman Catholic Bishop of Sacramento*,
    No. 2:25-cv-02262-WBS, Dkt. 51 (E.D. Cal. Oct. 30, 2025) ................. 3, 24, 25

*Kronemyer v. Am. Contrs. Indem. Co. (In re Kronemyer)*,
    405 B.R. 915 (B.A.P. 9th Cir. 2009) ........................................................... 11, 18

*In re MatlinPatterson Global Opportunities Partners II L.P.*,
    644 B.R. 418 (Bankr. S.D.N.Y. 2022) .............................................................. 22

*In re Miami Metals I, Inc.*,
    603 B.R. 531 (Bankr. S.D.N.Y. 2019) ....................................................... 17, 22

*Ritzen Grp., Inc. v. Jackson Masonry, LLC*,
    589 U.S. 35 (2020) .............................................................................................. 5

*TrafficSchool.com, Inc. v. Edriver Inc.*,
    653 F.3d 820 (9th Cir. 2011) ............................................................................. 22

*In re Tucson Estates, Inc.*,
    912 F.2d 1162 (9th Cir. 1990) ........................................................................... 19

*U.S. v. Hinkson*,
    585 F.3d 1247 (9th Cir. 2009) ................................................................... *passim*

*Wallis v. Centennial Ins. Co., Inc.*,
    927 F.Supp.2d 909 (E.D. Cal. 2013) ................................................................. 20

**Statutes**

11 U.S.C. § 105(a) ...................................................................................... 7, 9, 11

11 U.S.C. § 362 ................................................................................................ *passim*

28 U.S.C. § 157(a) ................................................................................................. 4

28 U.S.C. § 158(a)(1) ............................................................................................ 5

28 U.S.C. § 1334(a) ............................................................................................... 4

28 U.S.C. § 2106 .................................................................................................... 4

**Other Authorities**

Fed. R. Bankr. P. 2002 ...................................................................................... 15

Fed. R. Bankr. P. 4001 ............................................................................... 11, 15

Fed. R. Bankr. P. 8002(a) ..................................................................................... 5

Fed. R. Bankr. P. 8018(a)(1) ............................................................................. 16

Fed. R. Bankr. P. 9006(a)(1) ............................................................................. 16

Fed.R. Bankr. P. 9019 ............................................................................. *passim*

# PRELIMINARY STATEMENT

This appeal is the result of the approval of a Stipulation (defined herein) that fundamentally alters the contractual relationship between the Debtor, certain of its non-debtor affiliates (the "Non-Debtor Affiliates") and Westport, Appalachian and the Interstate Insurers (collectively, the "Appellants" or "Certain Insurers").[1]  The Stipulation, a self-styled "compromise," serves two primary purposes.  It permits lawsuits asserted by five claimants (the "Released State Court Actions") to proceed to final judgment on their pending tort claims, while enjoining all other claimants from doing so; and limits to the Debtor's insurance policies, including those issued by the Appellants, *all* post-judgment financial liability of any kind arising out of the five released tort actions.  In brief: the Stipulation extends the benefit of the automatic stay to the Non-Debtor Affiliates, modifies the as-extended stay so that the Released State Court Actions may proceed, and insulates from any financial jeopardy all *non*-insurance assets of the Debtor and the Non-Debtor Affiliates.

This extraordinary relief should have been rejected for any number of reasons.  Not the least among them, the Debtor failed to support the request that it made with anything even remotely resembling the evidentiary showing required.  Indeed, the Debtor's only evidence in support of its requested relief was a single declaration that did not even address many of the provisions within the Stipulation and a request for judicial notice that, at most, established background facts (*e.g.*, the circumstances preceding the bankruptcy case) unrelated to the substance of the Debtor's motion to approve the Stipulation.

Yet the bankruptcy court ignored these (and all other) defects, approving the Stipulation without holding oral argument.  And it made a finding of fact that the Official Committee of Unsecured Creditors (the "Committee") did not "unilaterally select the test cases" without any evidentiary support.  Specifically, neither the

---

[1] The Certain Insurers did not join the request for a stay pending appeal in the bankruptcy court or in this Court.

Debtor's request for judicial notice nor the declaration of Patrick Summerhays provide any support for the bankruptcy court's finding that the Committee did not unilaterally select the cases or that the cases selected qualify as representative "test cases." In fact, the bankruptcy court appears to have partially recognized its error by later noting that the Debtor and Committee did not have to show that the Released State Court Actions "were representative of most other lawsuits." [A.844 (*Order Denying Motion for Stay Pending Appeal*), Bankr. Dkt. 1392[2] ("<u>Bankruptcy Court Stay Order</u>"))[3].]

Compounding its error, the bankruptcy court failed to analyze whether each of the Released State Court Actions were entitled to stay relief under the factors identified in *In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984) (the so-called "<u>*Curtis* factors</u>"). *Order Denying Motion to Stay* [Dkt. 34][4] ("<u>District Court Stay Order</u>") at 12 ("However, courts within the Ninth Circuit have utilized the *Curtis* factors in 'deciding whether to grant stay relief from [an] automatic stay to allow pending litigation to continue in another forum.' In fact, the bankruptcy court here *did* apply the *Curtis* factors in its previous orders." (internal quotations and citations omitted)). Nor did the bankruptcy court analyze whether (or how) the approval of the Stipulation would impact the insurers' interests. In the *Diocese of Sacramento* case, Judge Shubb, analyzing a stipulation nearly identical to the one in this case, held the following:

> The court finds that appellants are sufficiently aggrieved by the Bankruptcy Court's Order to establish appellate standing. The decision of the Bankruptcy Judge to approve the stipulation exposes appellants to increased liability by its very nature, because it creates a new set of

---

[2] Unless otherwise stated, "Bankr. Dkt. __" refers to the cited entry on the docket in the Bankruptcy Case (defined herein).

[3] Citations to "A.X" are to *Appellants Chicago Insurance Company, Fireman's Fund Insurance Company, Westport Insurance Corporation, and Appalachian Insurance Company's Opening Brief Exhibits* filed contemporaneously herewith.

[4] Unless otherwise stated, "Dkt. __" refers to the cited entry on this docket in this appeal.

Appellants' Opening Brief                                    Lead Case No. 3:25-cv-08563-WHO

risks -- and thereby pecuniary effects – stemming from impending litigation.  Moreover, the language of the Order is far from "insurance neutral"; it guarantees that should judgment liens result from Released State Court Actions, those liens can only be executed against appellants.  It is hard to imagine a more evident or direct diminution of property than a stipulation providing that one's assets are the sole recourse for judgment enforcement.

*Mem. And Order Re: Appellee's Motion to Dismiss Appeal*, Dkt. 51, at 5-6 (internal quotations and citations omitted) ("<u>Sacramento</u> District Court Order"),[5] *Interstate Fire & Casualty Co. and National Surety Corp. v. The Roman Catholic Bishop of Sacramento*, No. 2:25-cv-02262-WBS ("<u>Sacramento</u> Bankruptcy Appeal") (E.D. Cal. Oct. 30, 2025).

Here, the bankruptcy court failed to consider any of these prejudicial effects on the Certain Insurers when approving the Stipulation.

Any one of these omissions, standing alone, presents sufficient grounds to reverse; together, they compel that result.  Nevertheless, the Appellants respectfully request that the Court provide more limited relief – vacatur and remand with the following instructions (the "<u>Proposed Instructions</u>"): (1) lifting the automatic stay and the injunction as to the Appellants in their entirety with respect to the Released State Court Actions and sufficient to allow the Appellants to investigate and respond to any settlement demand received; (2) removing the findings that the Committee did not unilaterally select the Released State Court Actions and that those cases qualified as "test cases"; (3) providing that nothing in the Stipulation or Order (defined herein) impairs or affects any of the Appellants' rights under their policies or under applicable non-bankruptcy law, including, without limitation, in responding to any settlement demands and/or raising any defenses based on the Debtor's or Non-Debtor Affiliates' entry into the Stipulation and Order; and (4) reimposing the

---

[5] The *Sacramento* District Court Order is attached as Exhibit A to *Appellants Chicago Insurance Company, Fireman's Fund Insurance Company, Westport Insurance Corporation, and Appalachian Insurance Company's Request for Judicial Notice* ("<u>Appellants' Request for Judicial Notice</u>") filed contemporaneously herewith.

automatic stay and injunction as to a Released State Court Action immediately upon entry of judgment (if any) in such Released State Court Action, so that all assets of the Debtor and applicable Non-Debtor Affiliate(s) – including the Appellants' policies (and the proceeds thereof) – are protected from attachment of liens and/or collections, levy, or execution on, or any other enforcement of, judgment.[6] This resolution would blunt some of the more pernicious effects of the bankruptcy court's legal errors, while simultaneously saving all parties to the appeal the time and expense of the additional proceedings below that otherwise would be required following reversal.

For these reasons, and for those set forth in greater detail herein, the Appellants respectfully request entry of an order either (a) vacating the Order of the bankruptcy court and remanding with the Proposed Instructions or (b) in the alternative, reversing the Order of the bankruptcy court and remanding this case for further proceedings.

## JURISDICTIONAL STATEMENT

The bankruptcy court had jurisdiction to consider the *Debtor's Motion to Approve Compromise and Stipulation Modifying the Automatic Stay*, [A.1-43 (the "Motion", Bankr. Dkt. 1285)],[7] pursuant to 28 U.S.C. §§ 1334(a) and 157(a), and the United States District Court for the Northern District of California's order referring bankruptcy cases and proceedings to bankruptcy judges, N.D. Cal. General Order No. 24.

The bankruptcy court entered a Docket Text Order [A.428 (Dkt. Entry Dated 09/02/2025 (the "Docket Text Order"))] granting the Motion, followed by the *Order*

---

[6] The Court has the authority to "modify . . . any . . . order of a court lawfully brought before it for review . . . ." 28 U.S.C. § 2106. *See also Gerber v. MTC Elec. Techs. Co.*, 329 F.3d 297, 307 (2d Cir. 2003) (Sotomayor, J.) (modifying a bar order on appeal); *In re BSA*, 137 F.4th 126, 169 (3rd Cir. 2025).

[7] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

*Granting Debtor's Motion to Approve Compromise and Stipulation Modifying the Automatic Stay* [A.429-465 (the "Written Order", Bankr. Dkt. 1346)] two weeks later on September 17, 2025, which is a final order. *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. 35, 37-38 (2020) (holding that a bankruptcy court's unreserved grant or denial of relief from the automatic stay "yields a final, appealable order"). This Court has jurisdiction to hear appeals from final orders entered in bankruptcy cases. 28 U.S.C. § 158(a)(1).

The bankruptcy court entered the Docket Text Order on September 2, 2025. [A.429-465 (Written Order).] The Appellants timely filed their *Joint Notice of Appeal and Statement of Election* on September 16, 2025. [A.742-750 (Bankr. Dkt. 1343)]; *see* FED. R. BANKR. P. 8002(a). When the bankruptcy court entered the Written Order on September 17, 2025, the Appellants timely filed a subsequent *Joint Notice of Appeal and Statement of Election* on October 1, 2025. [A.795-839 (Bankr. Dkt. 1375).]

**ISSUES PRESENTED**

1.      Whether the bankruptcy court erred by granting the Motion and approving the accompanying *Stipulation by and among The Roman Catholic Archbishop of San Francisco, the Official Committee of Unsecured Creditors, and the Survivor Defendants* [A.15-31 (the "Stipulation", Bankr. Dkt. 1285-1)] without identifying or applying the "for cause" standard under 11 U.S.C. § 362(d)(1).

2.      Whether the bankruptcy court erred by granting the Motion and approving the Stipulation without providing any analysis for why the requirements of Federal Rule of Bankruptcy Procedure 9019 and controlling precedent related thereto, including *In re A & C Properties*, 784 F.2d 1377 (9th Cir. 1986), were satisfied.

3.      Whether the bankruptcy court erred in granting the Motion and approving the Stipulation without making sufficient findings of fact in support of

such relief.

4.     Whether the bankruptcy court erred in granting the Motion and approving the Stipulation without competent record evidence demonstrating the Debtor's entitlement to such relief.

5.     Whether the bankruptcy court erred in making the factual determination that the Committee "did not unilaterally select the test cases" to be released under the Stipulation without competent record evidence to support its factual finding.

6.     Whether the bankruptcy court erred in granting the Motion and approving the Stipulation without also lifting the automatic stay for Appellants, leaving unclear the extent to which the automatic stay may apply to certain actions Appellants may take under their contracts or applicable law.

7.     Whether the bankruptcy court erred in granting the Motion and approving the Stipulation without determining whether the Released State Court Actions are representative of the pool of abuse claims.

8.     Whether the bankruptcy court otherwise erred or abused its discretion in granting the Motion and approving the Stipulation.

## STANDARD OF REVIEW

Orders granting relief from the automatic stay and/or approving a settlement or compromise are reviewed under a bipartite standard.  *Benedor Corp. v. Conejo Enters., Inc. (In re Conejo Enters., Inc.)*, 96 F.3d 346, 351 (9th Cir. 1996) (reviewing decision on stay relief); *In re A&C Props.*, 784 F.2d at 1383 (reviewing compromise approval).  The first step requires a determination "de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested."  *U.S. v. Hinkson*, 585 F.3d 1247, 1261-62 (9th Cir. 2009).  If the bankruptcy court failed to do so, it "abused its discretion."  *Id.* at 1262.

Under the second step, a reviewing court must "determine whether the [bankruptcy] court's application of the correct legal standard was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the

facts in the record." *Id.* (internal quotations omitted). "If any of these three apply," then the bankruptcy court abused its discretion. *Id.*

**STATEMENT OF THE CASE**

The Debtor is a Roman Catholic Archdiocese comprised of San Francisco, San Mateo, and Marin counties in California. *Declaration of Joseph J. Passarello in Support of Chapter 11 Petition and Debtor's Emergency Motions* [A.480, ¶ 14 ("Passarello Declaration", Bankr. Dkt. 14).] Its primary function is to provide resources, support, and other services to the parishes, schools, missions, and other related entities (each, an "Affiliate") located within this geographical territory that carry out much of the Debtor's day-to-day ministry. [A.481, ¶ 15 (*Id.*).]

The following policies were allegedly issued by the Appellants or their predecessors to the Debtor: (1) CIC policy number 55 U 0037129; (2) FFIC policy number XLX1482701; (3) ERC policy number U10447; (4) Appalachian policy number 71968; (5) Appalachian policy number 72387; (6) Appalachian policy number 72540; and (7) Appalachian policy number 72547 (collectively, the "Appellants' Insurance Policies"). *See* [A.531-534 (*Schedules of Assets and Liabilities, Exhibit for Schedule AB, Part 11, Question 73, Interests in Insurance Policies or Annuities*, Bankr. Dkt. 372 ("Insurance Schedule"))]; *see also* [A.1013-1016 (Ex. A to the *Declaration of Barron L. Weinstein in Support of Motion for Order Extending Stay to All State Court Cases in Which Debtor and/or its Affiliates are Named as Defendants Under Bankruptcy Code Sections 105(a) and 362, The Roman Catholic Archbishop of San Francisco v. John DB Roe SR et al.*, United States Bankruptcy Court for the Northern District of California, Adv. Proc. No. 25-03019 ("Adversary Proceeding"), Dkt. 8-3 ("Weinstein Declaration")].

1.      **Events Leading to Petition**

In 2019, Governor Newsom signed AB 218. [A.493, ¶ 53 (Passarello Decl.); A.434, ¶ C (Stipulation, Bankr. Dkt. 1346).] Known as the California Child Victims Act, AB 218 revived for a set interval previously time-barred civil claims arising out

of childhood sexual abuse (each, an "<u>Abuse Claim</u>").  [A.493, ¶ 53 (Passarello Decl.).]  This statutory window opened on January 1, 2020, and closed December 31, 2022.  *Id.*

During that time, approximately 537 individuals filed prepetition Abuse Claims against the Debtor in state court.  *Id.*  The Abuse Claims were consolidated into a judicial council coordinated proceeding in Alameda County Superior Court, *In re Northern California Clergy Cases*, JCCP 5108 (the "<u>JCCP</u>").  [A.498-499, ¶¶ 2-9 (*Declaration of Paul E. Gaspari in Support of Chapter 11 Petition and Debtor's Emergency Motions*, Bankr. Dkt. 15 ("<u>Gaspari Declaration</u>")).]  Nevertheless, the sheer volume of Abuse Claims filed in state court put the Debtor "in immediate and dire financial distress and in need of a forum to resolve" the Abuse Claims.  [A.493-494, ¶ 56 (Passarello Decl.).]

That forum, according to the Debtor, was bankruptcy court.  [A.495, ¶ 61 (*Id.*); A.500-501, ¶ 17 (Gaspari Decl.).]  Emphasizing in particular that the Debtor "cannot allow any single plaintiff to recover a disproportionate share" of the Debtor's assets (including insurance) "simply because that plaintiff's case proceeds to trial first," the Debtor viewed bankruptcy as the best (and maybe only) mechanism available to achieve the Debtor's twin goals: "ensur[ing] that all claimants with similarly situated claims are essentially treated the same," while permitting the Debtor to "continue the work of the Church."  [A.494-495, ¶¶ 59-62 (Passarello Decl.).]

To that end, the Debtor on August 21, 2023, filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "<u>Bankruptcy Code</u>"[8]), commencing the bankruptcy case captioned *In re The Roman Catholic Archbishop of San Francisco*, United States Bankruptcy Court for the Northern District of California, Case No. 23-30564 ("<u>Bankruptcy Case</u>").  [A.466-475 (Chapter 11 Petition, Bankr. Dkt. 1).]  A committee made up of

---

[8] Unless otherwise stated, all section references refer to portions of the Bankruptcy Code.

individuals with Abuse Claims against the Debtor, the Official Committee of Unsecured Creditors, was appointed shortly thereafter. [A.502-503 (Bankr. Dkt. 58)]. In July 2024, the Debtor, the Non-Debtor Affiliates, the Committee, and the Debtor's insurers were referred to mediation. [A.664-672 (*Order Referring Case to Mediation and Appointing Mediator*, Bankr. Dkt. 747).]

### 2. Adversary Proceeding

On April 28, 2025, the Debtor initiated the Adversary Proceeding against approximately 39 plaintiffs who had filed Abuse Claims against the Debtor and at least one Non-Debtor Affiliate (hereafter, each such proceeding is a "State Court Action"). *See* [A.852-853, ¶ 4 (*Complaint Seeking Declaratory and Injunctive Relief under Bankruptcy Code Sections 105(a) and 362 that the Automatic Stay Extends to All State Court Cases in which Debtor is Named as a Defendant and as to all Cases in which a Non-Debtor Affiliate is Named as a Defendant*, Adv. Dkt. 1 (the "Complaint"))[9]; A.435, ¶ E (Stipulation).] According to the Debtor, it had recently learned that the State Court Action plaintiffs did not believe the automatic stay extended to the Non-Debtor Affiliates and thus intended to proceed with their Abuse Claims against those entities. [A.858, ¶ 27 (Complaint).] To prevent that outcome, the Debtor filed the Complaint, and approximately one month later filed a motion in the Adversary Proceeding seeking essentially identical relief. *See* [A.879-1022 (*Motion for Order Extending Stay to all State Court Cases in which Debtor and/or Non-Debtor Affiliates are Named as Defendants under Bankruptcy Code Sections 105(a) and 362*, Adv. Dkt. 8 (the "Injunction Motion").]

In each instance, the Debtor based a significant portion of its argument on the harm to estate assets posed by continued litigation—specifically, that litigation against the Non-Debtor Affiliates likely would deplete insurance (like the Appellants' policies) that the Debtor and its Non-Debtor Affiliates shared. [A.859-

---

[9] Unless otherwise stated, "Adv. Dkt. __" refers to the cited entry on the docket in the Adversary Proceeding.

862, ¶¶ 31-40 (Complaint); A.903, 908-911 (Injunction Mot.).] This focus on insurance notwithstanding, the Debtor did not name or otherwise include any insurer in the Adversary Proceeding and did not notify the Appellants (or, to the Appellants' knowledge, any other insurer) of the dispute.

The Injunction Motion drew a single objection—from the Committee [A.1023-1051 (Adv. Dkt. 13)], whose intervention into the Adversary Proceeding the Debtor had consented to on the same day the Injunction Motion was filed. [A.876-878 (Adv. Dkt. 7).] The hearing on the Injunction Motion was originally scheduled for June 24, 2025, but was repeatedly continued presumably pursuant to agreements between the Debtor and Committee. *See* [A. 1080-1082 (Docket Text Entries dated 06/24/2025, 07/15/2025, and 08/11/2025)].

On August 7, 2025, the Debtor submitted a partially executed stipulation related to the Injunction Motion. [A. 1052-1079 (Adv. Dkt. 21).] The Stipulation, entered between the Debtor, the Committee, and each of the defendants in the Adversary Proceeding "that ha[d] not previously agreed to stay their cases," (defined therein as the "<u>Survivor Defendants</u>") [A.434 (Stipulation)]—but without the Appellants' knowledge—would: (1) stay and enjoin prosecution of all State Court Actions, including those against the non-debtor Affiliates, [A.436, ¶ 2 (*Id.*)]; (2) simultaneously modify the stay and injunction such that the plaintiffs in the five Released State Court Actions could adjudicate through final judgment their claims against the Debtor and applicable Affiliates, [A.436, ¶ 3.a (*Id.*)]; (3) permit **all** Survivor Defendants (not just those prosecuting Released State Court Actions) to "make written settlement demands on the Debtor" and any Affiliate, and for the Debtor and/or Non-Debtor Affiliates to "tender those demands on their respective insurers" and request payment, [A.437, ¶ 4 (*Id.*)]; and (4) explicitly state that the automatic stay was not vacated or modified in any way beyond what the Stipulation specifically provided for, [A.437, ¶ 5 (*Id.*)]. *See also* [A.436, ¶ 3.b (*Id.*) (authorizing the Debtor to "pay reasonable defense fees and costs in the Released State Court

Actions that are not paid by an insurer").] The Stipulation further recited that entry of a judgment "against any defendant in" a Released State Court Action would not "create a lien against any ***non-insurance*** asset of the Debtor" or any Non-Debtor Affiliate, [A.436, ¶ 3.c (*Id.*)]—and that the Survivor Defendants could not "create or take any action to effectuate the creation or imposition of any lien against," or otherwise "collect, levy, execute, or . . . enforce any judgment" on, any "***non-insurance*** asset(s) of the Debtor" or any Non-Debtor Affiliate, [A.436, ¶ 3.c-d (*Id.*)]—but that "[n]othing in th[e] Stipulation should be construed to prevent a lien from attaching to" any "insurance policies or the proceeds of such policies." [A.436, ¶ 3.c (*Id.*).] The Debtor did not reconcile the tension between the ostensible reason for the Stipulation – allegedly avoiding the depletion of insurance coverage and avoiding a race to the courthouse by certain claimants – and the terms of the Stipulation allowing that very scenario to occur.

### 3. Request for Relief in the Main Case

On the same day the Stipulation was filed in the Adversary Proceeding, the Debtor sought stay relief in the main Bankruptcy Case. On August 7, 2025, the Debtor filed, in the main case, a motion for entry of an order approving the Stipulation pursuant to 11 U.S.C. §§ 105(a) and 362, and Rules 4001 and 9019 of the Federal Rules of Bankruptcy Procedure (each, a "Bankruptcy Rule"). [A.1-43 (Mot.)]; *see also* [A.9 (*id.*) (requesting waiver of the fourteen-day stay typically imposed on orders granting stay relief under Bankruptcy Rule 4001(a)(4)).]

In the Motion, the Debtor stated that the Stipulation would "resolve the Injunction Motion and other pending issues in the Debtor's [Chapter 11] Case." [A.4, ¶ 13 (*Id.*).] Yet, the Debtor in its Motion did not offer any analysis demonstrating "cause" for stay relief under Section 362(d)(1) as to the specific Released State Court Actions. *Cf. Kronemyer v. Am. Contrs. Indem. Co. (In re Kronemyer)*, 405 B.R. 915, 921 (B.A.P. 9th Cir. 2009) (cause for granting stay relief is decided on a case-by-case basis). Likewise absent from the Motion was any

contention that the Debtor exercised business judgment when agreeing to the Stipulation.

The Debtor instead simply claimed that approval of the Stipulation and resulting modification of the stay and injunction was "appropriate" because it would "reduce any future burdensome litigation over the Injunction Motion" and "assist in facilitating the mediation process." [A.8-9 (Mot.).] The *Declaration of Fr. Patrick Summerhays in Support of Debtor's Motion to Approve Compromise and Stipulation Modifying the Automatic Stay* [A.49-51 (the "Summerhays Declaration", Dkt. 1288)] filed in support of the Motion parrots the text of the Motion in that it likewise does not articulate any analysis demonstrating "cause" for stay relief or that the Stipulation is fair and equitable. *See id*. Indeed, the Debtor did not support any of these relevant factual assertions set forth in the Motion. A concurrently filed *Request for Judicial Notice* [A.44-48 ("RJN", Bankr. Dkt. 1287)] (at best) established background information. Thus, the Motion was unaccompanied by anything more than conclusory statements. *See id.*;[10] *but see, e.g.*, [A.51, ¶ 6 (Summerhays Decl.) (stating declarant's "opinion that the Stipulation is adequate, fair, and reasonable, and is in the best interests of the estate and creditors")]. Neither the Summerhays Declaration nor any of the documents in the RJN contained any assertion that the Committee *did not* unilaterally select the Released State Court Actions. Further, neither the Summerhays Declaration nor any of the documents in the RJN even attempt to explain why it was necessary to cordon off all *non-insurance* assets of the Debtor and the Non-Debtor Affiliates as part of the proposed settlement.

The Committee on August 15 filed a one-page joinder to the Motion, supporting the Motion as "a party to the Stipulation that is the subject of the Stay Motion." [A.52-57 (Bankr. Dkt. 1293).]

---

[10] The RJN lists 21 documents which consist of the following: four case initiation and/or administration documents (the petition, the notice of Committee's appointment, a final order on noticing procedures, and the Passarello Declaration); the Complaint and Injunction Motion; and papers supporting the Injunction Motion and the Committee's response. *See* [A.44-48.]

A multitude of insurers objected to the Motion. *See* [A.58-216 (*Insurers'*
*Objection to Debtor's Motion to Approve Compromise and Stipulation Modifying*
*the Automatic Stay*, Bankr. Dkt. 1302 (the "Objection")).]  The Interstate Insurers
and Appalachian joined.  [A.217-219 (Bankr. Dkt. 1303).]  Among other things, the
insurers argued that the Released State Court Actions are not properly selected
bellwether cases and are not close to trial ready, meaning that they will not inform
mediation or promote resolution, but will instead create unfair advantages for select
claimants while causing unnecessary costs and delays.  [A.68-72 (Objection).]
Additionally, the Objection highlighted that insurers bear all financial exposure
under the Stipulation, since assets of both the Debtor and the Non-Debtor Affiliates
are protected indefinitely.  [A.73-75 (*Id.*).]  Accordingly, the insurers argued, if the
automatic stay were lifted, the bankruptcy court should require a process to ensure
that the Released State Court Actions were representative of Abuse Claims, and so
long as the non-insurance assets of the Debtor and Non-Debtor Affiliates were
walled off, the bankruptcy court should grant corresponding relief to the insurers to
permit them to (at minimum) control the defense of the Release State Court Actions.
*See* [A.72-76 (*id.*).]  Finally, the insurers argued against the bankruptcy court lifting
the automatic stay to allow every Survivor to serve demand letters on the Debtor and
Non-Debtor Affiliates.  [A.76-82 (*Id.*).]

The Debtor and the Committee, on Thursday August 28, 2025, separately
responded to the Objection.  [A.220-391 (Bankr. Dkt. 1311-1312 (Debtor reply &
Declaration of Paul J. Pascuzzi in support)); A.392-427 (Bankr. Dkt. 1315
(Committee reply)).]  The Debtor and Committee both argued that the Released State
Court Actions were not unilaterally chosen, though neither party submitted any
evidence in support of their respective reply's assertions.  The Debtor framed the
Stipulation as an agreement only permitting five Released State Court Actions to
proceed to trial and argued (in its reply) that the Stipulation satisfies Ninth Circuit
precedent governing approval of compromises.  [A.228-231 (Bankr. Dkt. 1311).]

But the Debtor, again, failed to articulate any basis for the purportedly extraneous language involving insurance. *See generally* [A.220-232 (Bankr. Dkt. 1311).] The Committee argued that the Debtor was not "insulated from widespread abuse liability," but did not support this assertion with any analysis of the Stipulation and wholly ignored the protection to the Non-Debtor Affiliates. [A.395 (Bankr. Dkt. 1315).] The Committee further stated that parts of the Stipulation permitting demand letters were "consequential" because it "will put the Insurers at risk" of "consequences that do not presently exist." [A.396 (Bankr. Dkt. 1315).]

The bankruptcy court granted the Motion, without a hearing, the following Tuesday, September 2. *See* [A.428 (Docket Text Order)]. The Docket Text Order stated that the Motion "easily satisfies the A & C test [governing approval of compromises in bankruptcy] by considering and weighing the factors, as the court does independently here, and represents a needed, good faith settlement of a bona-fide dispute." *Id.* The Docket Text Order said nothing of "cause" for relief from the automatic stay under 11 U.S.C. § 362(d)(1). The bankruptcy court further stated that the Committee "did not unilaterally select the test cases," and stated that the insurers showed "no meaningful prejudice," before overruling all objections and granting a waiver of the 14-day stay of orders granting relief from the automatic stay. *Id.* The court then instructed the Debtor to "serve and upload an appropriate order GRANTING the motion for the reasons stated in it and in this docket text order." *Id.* Two weeks later, the Debtor filed a *Notice of Fully Executed Stipulation by and among The Roman Catholic Archbishop of San Francisco, the Official Committee of Unsecured Creditors, and the Survivor Defendants.* [A.676-709 (Bankr. Dkt. 1331).]

After two weeks passed with no written order, the Appellants timely noticed appeals of the Docket Text Order on September 16. *See* [A.710-728, 742-750, 751-765 (Bankr. Dkts. 1341, 1343, 1344).] The next day, the bankruptcy court entered the Written Order. [A.429-465 (Written Order).] The Written Order contained no

factual findings or legal conclusions. Instead, the court determined that "the legal and factual bases set forth in the Motion" established "just cause for the relief granted" "as set forth in the Motion and the Court's Docket Text Order." [A.430 (*Id.*).][11] The bankruptcy court then concluded that the "relief requested" was in the best interests of the Debtor, its estate, creditors, and all parties in interest. *Id.* The Written Order granted the Motion, approved the Stipulation "pursuant to Bankruptcy Rules 9019, 2002, and 4001," and modified the automatic stay of Section 362 "[s]ubject to the terms and conditions set forth in the Stipulation," while providing that the automatic stay remain "in full force and effect" "[e]xcept for the limited purpose … set forth in the Stipulation." *Id.*

### 4. Request for a Stay Pending Appeal in Bankruptcy Case

On September 16, at the same time certain other insurers (but not the Appellants) noticed their appeal of the Docket Text Order, they filed a contemporaneous *Insurers' Motion for Stay Pending Appeal*. [A.729-741 (the "Stay Motion", Bankr. Dkt. 1342].  In a docket text order entered by the bankruptcy court on September 17, the court directed the Debtor and the Committee to file an opposition no later than September 30. *See* [A. 1083 (Dkt. Entry Dated September 17, 2025).] Both the Committee and the Debtor filed oppositions to the Stay Motion. [A.766-784, 785-794 (Bankr. Dkt. 1363, 1368).]  The bankruptcy court denied the Stay Motion on October 9.  [A.840-848 (Bankruptcy Court Stay Order).]

### 5. The Appeal

The Written Order was entered on September 17, 2025, though the Appellants the day prior had noticed appeals of the Docket Text Order.  All of the appeals were assigned to this Court, and this Court consolidated the appeals pursuant to a stipulation of the parties.  [Dkt. 31.]

On October 22, the same insurers that had moved for a stay pending appeal in

---

[11] Because the Written Order incorporates the Docket Text Order, hereafter they will be referred to collectively as the "Order."

the bankruptcy court (not the Appellants) filed a motion for stay pending appeal before this Court. [Dkt. 3.] On October 27, the Debtor and Committee both opposed the motion. [Dkt. 11, 12.] The motion was denied by the Court on November 7. [Dkt. 34.]

The bankruptcy court transmitted the Appellants' record below on October 22. [*Chicago Insurance Co. et al. v. The Roman Catholic Archbishop of San Francisco et al.*, No. 3:25-cv-08566 ("Case No. 8566") Dkt. 8.] Pursuant to a Case Management Order entered by the Court on October 7 [Case No. 8566 Dkt. 2] and Federal Rules of Bankruptcy Procedure 8018(a)(1) and 9006(a)(1), the Appellants' principal brief was initially due on November 21.

On November 3, the parties entered a *Stipulation and [Proposed] Order Consolidating Appeals* [Dkt. 30], which was entered by the Court the following day. [Dkt. 31.] On November 19, the parties entered into a separate *Stipulation and [Proposed] Order Setting Uniform Briefing Schedule* (the "Stipulated Briefing Schedule". [Dkt. 43.] The Stipulated Briefing Schedule was entered by the Court on November 25. [Dkt. 50.] Under the Stipulated Briefing Schedule, the deadline for the Appellants and the other insurers to file their briefs is December 2.

## SUMMARY OF ARGUMENT

The bankruptcy court erred as a matter of law in connection with the entry of the Order in at least two respects.

***First***, the bankruptcy court failed to explain why "cause" existed for granting the Debtor's request for relief from the automatic stay under 11 U.S.C. § 362(d)(1), which needed to be assessed separately for each Released State Court Action, and failed to evaluate any of the *Curtis* factors used by courts in the Ninth Circuit. Instead, the bankruptcy court granted the Motion and approved the Stipulation without applying ***any*** law whatsoever to establish cause for stay relief. This was error. *Cf. Hinkson*, 585 F.3d at 1262. Additionally, the bankruptcy court inexplicably found that the Committee "did not unilaterally select the test cases," [A.

428 (Docket Text Order)], notwithstanding the fact that the only evidence in the record, the Summerhays Declaration, made no mention of the parties' roles in the selection of the Released State Court Actions.

*Second*, the bankruptcy court approved the Stipulation under Bankruptcy Rule 9019 without taking into consideration the impact of the Stipulation on the insurers, non-settling parties whose rights were implicated by the agreement. *Cf. A&C Properties*, 784 F.2d at 1382 (while not controlling, "creditors' objections to a compromise must be afforded due deference); *see also In re Miami Metals I, Inc.*, 603 B.R. 531, 535 (Bankr. S.D.N.Y. 2019) ("when the rights of non-settling parties are implicated by the terms of a settlement, the court cannot approve it without considering the interests of those non-settling parties" (internal quotations omitted)). The Stipulation infringes upon the rights of the Appellants and other insurers by (i) making the insurers' policies the sole asset from which plaintiffs in the Released State Court Actions can attempt to collect on any judgment; (ii) disincentivizing the Debtor and Non-Debtor Affiliates (who are not even in bankruptcy) from defending against claims by restricting plaintiffs who obtain a judgment in a Released State Court Action from placing a lien upon or attempting to collect from the Debtor's and Non-Debtor Affiliates' non-insurance assets; and (iii) allowing any Survivor to make a settlement demand on insurers without specifying that the insurers are not restricted by the automatic stay from investigating or responding to those demands.

Because of these errors, the Court should vacate and remand the Order to the bankruptcy court with the Proposed Instructions or, alternatively, reverse and remand the bankruptcy court's Order for further proceedings.

## ARGUMENT

### I. THE BANKRUPTCY COURT ERRED AS A MATTER OF LAW WHEN IT FAILED TO IDENTIFY THE EXISTENCE OF CAUSE FOR GRANTING STAY RELIEF UNDER 11 U.S.C. § 362(D)(1)

The bankruptcy court erred when it failed to consider the factors required for granting stay relief for cause pursuant to 11 U.S.C. § 362(d)(1).

The Debtor, through the Motion, sought two forms of relief: modification of the automatic stay for cause and approval of the Stipulation as a compromise. *See* [A.6, ¶ 18 (Mot.).] The Order granted both. *See* [A.430 (Written Order.)] However, when a movant seeks both stay modification under Section 362(d) and compromise approval under Bankruptcy Rule 9019, the bankruptcy court must independently analyze the requests under each applicable legal standard. *Anytime Fitness, L.L.C. v. Thornhill Bros. Fitness, L.L.C. (In re Thornhill Bros. Fitness, L.L.C.)*, 85 F.4th 321, 327-28 (5th Cir. 2023); *Goodwin v. Mickey Thompson Entm't Grp., Inc. (In re Mickey Thompson Ent. Grp., Inc.)*, 292 B.R. 415, 421 (B.A.P. 9th Cir. 2003).

The Order is error because the bankruptcy court wholly failed to "identify" (much less analyze) the "correct legal rules[s]," *Hinkson*, 585 F.3d at 1262, at least with respect to granting stay relief under 11 U.S.C. § 362(d)(1). That section in pertinent part permits a bankruptcy court to grant relief from the automatic stay ("such as by termination, annulling, modifying, or conditioning such stay") "for cause." 11 U.S.C. § 362(d)(1). "Cause," however, is not defined and must be assessed on a case-by-case basis as a result. *See In re Conejo Enters., Inc.*, 96 F.3d at 352. This typically involves an evaluation of the *Curtis* factors where the continuation of a pending lawsuit against the debtor is at issue.[12] *See e.g.*, *Truebro, Inc. Plumberex Specialty Prods., Inc. (In re Plumberex Specialty Prods., Inc.)*, 311 B.R. 551, 559 (Bankr. C.D. Cal. 2004). But ultimately, and irrespective of whether a bankruptcy court elects to employ the *Curtis* factors, it must **always** engage in a case-specific analysis – often described as "consider[ing] the totality of the circumstances," *Green v. Brotman Med. Ctr., Inc. (In re Brotman Med. Ctr., Inc.)*, BAP No. CC-08-1056-DKMo, 2008 WL 8444794, at *6 (B.A.P. 9th Cir. July 25, 2008)—when assessing "cause" for stay relief with respect to pending litigation. *See*

---

[12] The *Curtis* factors are twelve non-exclusive factors intended to weigh various concerns relevant to the automatic stay against the relative hardships implicated by a decision to maintain or lift the stay. *See Kronemyer*, 405 B.R. at 921.

*In re Tucson Estates, Inc.*, 912 F.2d 1162, 1169 (9th Cir. 1990) (bankruptcy court's lift stay decision supporting by "specific factual findings that provide a fully developed record"). Such an analysis therefore should have been applied to the request for stay relief in the Motion with respect to ***each*** of the Released State Court Actions (it was not).

The bankruptcy court failed to apply this standard. The omissions are readily apparent from even the briefest glances at the Order itself. It contains no examination of the *Curtis* factors and no reference to "cause" for stay relief. The Docket Text Order is similarly and utterly absent of any examination by the bankruptcy court of the *Curtis* factors or any reference by the bankruptcy court to "cause" for relief from the automatic stay.[13]

The movant, here the Debtor, bears the burden of establishing "cause" for stay relief. *See Plumberex Specialty Prods.*, 311 B.R. at 557. Consequently, even if the bankruptcy court had identified the *Curtis* factors, there is no evidence in the record upon which the bankruptcy court could have applied them. *Cf. id.* at 560 (denying stay relief for, among other reasons, lack of "competent evidence that [the debtor] filed its bankruptcy petition in bad faith"); *Delaney-Morin v. Day (In re Delaney-Morin)*, 304 B.R. 365, 371 (B.A.P. 9th Cir. 2003) (reversing stay relief when "there was no evidence" proving post-petition defaults).

The Summerhays Declaration, the only evidence introduced by the Debtor in support of the Motion, contains no discussion of "cause" for stay relief under Section 362(d)(1). The Summerhays Declaration stated that the "limited" stay modification contemplated by the Stipulation, "to allow the 5 Released State Court Actions to go

---

[13] The prefatory paragraph in the Written Order generically recites that the bankruptcy court "determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein" [A.430 (Written Order)], but this was and is insufficient under *Hinkson* for a number of reasons. For one, nothing in the Written Order refers to the actual "for cause" standard of Section 362(d)(1). *See id.* And the Docket Text Order is similarly silent as to any reference to Section 362(d)(1). *See* [A.428 (Docket Text Order)]. For another, the Debtor in the Motion did not engage in any recognized or legitimate "cause" analysis, *see generally* [A.6-9 (Motion)], meaning there was no reasoning for the bankruptcy court to adopt.

forward in exchange for a stay of litigation of the remaining Affiliate State Court Actions," would alleviate litigation burdens and allow the Debtor and Non-Debtor Affiliates to focus on mediation and a consensual resolution to the Bankruptcy Case. [A.50-51, ¶ 5 (Summerhays Declaration).] It further states that "[t]he Debtor believes" the Stipulation to be in its best interests, and the best interests of its creditors, "because it resolves the Injunction Motion with little to no additional expense to the estate." *Id.* Finally, the Summerhays Declaration opined that the Stipulation "is adequate, fair, and reasonable." *Id.* That is the entirety of the evidence submitted with the Motion. By contrast, the Summerhays Declaration offers no analysis of the *Curtis* factors or any facts relevant to balancing the equities. For example, there is no analysis of whether the Released State Court Actions are trial-ready, whether they are representative of the pool of claims asserted against the Debtor and the Non-Debtor Affiliates, or whether allowing the Released State Court Actions to proceed would actually lead to a global resolution in the Bankruptcy Case and, if so, how.

The Debtor cannot salvage the record by pointing to the RJN, which the bankruptcy court never granted. Even if the RJN had been granted, and even if the documents referenced therein could have been considered in full, which they cannot, *Wallis v. Centennial Ins. Co., Inc.*, 927 F.Supp.2d 909, 913-14 (E.D. Cal. 2013) (the "authenticity and existence of" a document "is judicially noticeable," but the "veracity and validity of its contents … are not" (internal quotations omitted)), the record still would have been wholly inadequate.

This Court has previously noted that "courts within the Ninth Circuit have utilized the *Curtis* factors in 'deciding whether to grant relief from [an] automatic stay to allow pending litigation to continue in another forum,'" District Court Stay Order at 12 (quoting *In re Kronemyer*, 405 B.R. at 921), and that even "the bankruptcy court . . . *did* apply the *Curtis* factors in its previous order[]," granting the Committee's prior motion for relief from the automatic stay to allow state court

cases to proceed. *Id.* (citing *In re Roman Catholic Archbishop of S.F.*, No. 23-30564-DM, 2025 WL 1087955 (Bankr. N.D. Cal. Apr. 10, 2025)). While the Court did not find this dispositive when ruling on the other insurers' motion for stay pending appeal, the fact remains that the bankruptcy court conducted no analysis of the *Curtis* factors whatsoever.

The bankruptcy court entered the Docket Text Order and the Written Order without any evidence in the record either supporting cause for stay relief under 11 U.S.C. § 362(d)(1) or any analysis of the *Curtis* factors and failed to identify or apply those legal standards itself. As such, the bankruptcy court granted the Motion and approved the Stipulation without "identif[ying] the correct legal rule[s]" that should have been applied, *Hinkson*, 585 F.3d at 1262, and without performing the relevant legal analysis. This was error and necessitates a reversal of the Order. *See Bateman v. U.S. Postal Service*, 231 F.3d 1220, 1224 (9th Cir. 2000) (reversing when the lower court "omit[ted] the correct legal standard altogether").

Relatedly, the bankruptcy court erred when it found that "The OCC [i.e., the Committee] did not unilaterally select the test cases." [A.428 (Docket Text Order).] Put simply, the record contains no evidence to justify this factual finding. Nothing in the declaration suggests that the Committee did not unilaterally select the Released State Court Actions, no hearing occurred,[14] and no party proffered additional evidence or testimony. And, as previously discussed, nothing in the RJN supports a finding of "cause" to grant stay relief for the Released State Court Actions, let alone establishes that the Committee did not unilaterally select the Released State Court Actions. Consequently, the bankruptcy court had no basis for its conclusion that the Committee "did not unilaterally select the test cases." *Id.* On appeal, a bankruptcy court's factual findings must be supported by "clear evidence in the record." *Credit One Corp. v. Naoom (In re Naoom)*, BAP No. SC-16-1066-JuFY, 2017 Bankr.

---

[14] The bankruptcy court's removal of the Motion from the hearing calendar also deprived any interested party of the opportunity to examine the Debtor's sole witness.

LEXIS 298, at *9 (B.A.P. 9th Cir. Jan. 19, 2017). Thus, the bankruptcy court's factual finding was "illogical", "implausible", and "without support in the record," *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 834 (9th Cir. 2011), and was clearly erroneous.

## II. THE BANKRUPTCY COURT ERRED BY APPROVING THE STIPULATION WITHOUT WEIGHING ITS IMPACT ON THE INSURERS

The bankruptcy court also erred by failing to consider how the Stipulation would impact the Appellants and other insurers. In the Motion, the Debtor asked the bankruptcy court to approve the Stipulation under Bankruptcy Rule 9019. The bankruptcy court must consider the interests of non-settling parties implicated by a proposed compromise. *A&C Props.*, 784 F.2d at 1382; *In re Miami Metals I, Inc.*, 603 B.R. at 535. Considering only fairness and equity "as between the debtor and settling claimant[s]," while ignoring the rights of third parties, "contravenes a basic notion of fairness." *In re Arter & Hadden, LLP*, 373 B.R. 31, 36 (Bankr. N.D. Ohio 2007) (internal quotations omitted). Accordingly, bankruptcy courts cannot approve compromises that disproportionately prejudice the rights of non-settling parties. *In re MatlinPatterson Global Opportunities Partners II L.P.*, 644 B.R. 418, 426 (Bankr. S.D.N.Y. 2022). The bankruptcy court did not undertake this analysis.

The Debtor offered no factual justification for the provisions within the Stipulation that are most prejudicial to the insurers: it categorically excludes *all* "non-insurance" assets of both the Debtor and its Non-Debtor Affiliates from any judgment, lien, or enforcement by any plaintiff, leaving only insurance assets available for recovery. [A.436, ¶ 3.c-d (Stipulation).] These exclusions are unlimited in duration (it can only terminate by motion made in the bankruptcy court), [A.437, ¶ 7 (*id.*)], and bear no apparent relationship to permitting state court litigation to proceed. Because the Stipulation goes far beyond what the declaration describes or justifies, the record contains no evidence supporting the exclusionary provisions, which target and significantly prejudice the Appellants' rights.

The prejudice to the Appellants is not speculative. To start, the Order walls off the Debtor's and Non-Debtor Affiliates' assets from Survivor recovery, leaving the Appellants' insurance policies as the Survivor's only recourse. In doing so, the Stipulation indisputably, "diminish[es] [the Appellants'] property, increases [their] burdens, [and] detrimentally affect[s] [their] rights." *Duckor Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.)*, 177 F.3d 774, 777 (9th Cir. 1999). This can be seen from the Stipulation which, in relevant part, provides: (1) "nothing . . . prevent[s] a lien from attaching to the Debtor's and/or any Non-Debtor Affiliate's insurance policies or the proceeds of such policies" [A.436, ¶ 3.c. (Stipulation)]; (2) "[n]o Plaintiff may" "create" or impose "any lien against any ***non-insurance asset(s)*** of the Debtor or any Non-Debtor Affiliate" [A.436, ¶ 3.d (*id.*)]; and (3) "no Survivor may collect, levy, execute, or otherwise enforce any judgment against any ***non-insurance asset(s)*** of the Debtor or any Non-Debtor Affiliate." *Id.* The Stipulation, in other words, permits (and arguably encourages) the attachment and enforcement of liens on the Appellants' policies. *See id.* Additionally, ***all Survivors*** are permitted to "make written settlement demands on the Debtor and any non-Debtor defendant(s) and request that the Debtor and any non-Debtor defendant(s) tender those demands on their respective insurers and request that the insurers pay those demands." [A.437, ¶ 4 (*Id.*).] It is difficult to imagine a more quintessential financial harm to intangible property.

Moreover, the Stipulation does not "provide[] for the modification or vacatur of the automatic stay" (except for the Released State Court Action/settlement demand carveout) – and it does not otherwise authorize the Appellants to act in accordance with their policies. [A.437, ¶ 5 (*Id.*).] This raises questions as to whether the Appellants may, for example, conduct an investigation in response to a settlement demand or even contest a potential lien on their policies. Given the Stipulation's (and the bankruptcy court's) failure to lift the stay fully for the Appellants, the Order "detrimentally affect[s] [their] rights." *P.R.T.C.*, 177 F.3d at 777, under any sense

of the word.

Further, the Order damages the Appellants' rights on a more substantive level, particularly with respect to their policies. By cordoning off all non-insurance assets of the Debtor and Non-Debtor Affiliates, the Debtor and Non-Debtor Affiliates no longer face the possible economic loss (of non-insurance assets) that incentivizes a robust defense against asserted claims. This exposes the Appellants to a heightened risk of inflated and/or collusive judgments in each of the Released State Court Actions (selected without any input from the Appellants), while simultaneously depriving them of the benefit of their contractual bargain – which is particularly troubling since the Debtor has not received a discharge and the Non-Debtor Affiliates are not even in bankruptcy.

District Court Judge William B. Shubb recently considered a stipulation with nearly identical language that had been approved by the bankruptcy court in *In re The Roman Catholic Bishop of Sacramento*, United States Bankruptcy Court for the Eastern District of California, No. 24-21326 ("*Diocese of Sacramento*"). In an October 27, 2025 hearing on a motion to dismiss the appeal of the bankruptcy court's order approving the stipulation, Judge Shubb raised several points about the adverse impact the stipulation would have on the insurers. He first noted that "the insurance companies are going to have to defend those [released state court] lawsuits" and "if they lose those four lawsuits, arguably they may have to pay the judgments." *Transcript of Proceedings Before the Honorable William B. Shubb, Senior United States District Judge* (Oct. 27, 2025), *Sacramento* Bankruptcy Appeal, Dkt. 59 ("*Sacramento District Court Transcript*") at 13:7-8, 10-11.[15] Judge Shubb acknowledged the insurers' argument that "it's their money, it's their money that these people are after." *Id.* at 26:17-18. Finally, Judge Shubb quoted language that is substantially the same as paragraph 4 of the Stipulation, that "The claimants may

_____

[15] The *Sacramento* District Court Transcript is attached as Exhibit B to the Appellants' Request for Judicial Notice filed contemporaneously herewith.

make written demands on defendants and require those defendants to tender those demands to their respective insurers and that the insures pay those demands," and suggested that the stipulation was arguably "directing [the insurers] to do something." *Id.* at 28:7-12. In response, counsel for the Unsecured Creditors Committee acknowledged that "the language maybe is not as carefully crafted as it could have been." *Id.* at 28:13-14.

Following the October 27 hearing, Judge Shubb issued an order in which he held that the insurers had appellate standing, finding that the stipulation "exposes [the insurers] to increased liability by its very nature, because it creates a new set of risks … stemming from impending litigation." *Sacramento* District Court Order at 5. The court found that the terms of the Stipulation were "far from 'insurance neutral'" because it "guarantees that should judgment liens result from the Released State Court Actions, those liens can only be executed against appellants." *Id.* at 6. Accordingly, the district court found that it was "hard to imagine a more evident or direct diminution of property than a stipulation providing that one's assets are the sole recourse for judgment enforcement." *Id.*

The *Diocese of Sacramento* district court then identified the insurers' "independent financial rights expressly contemplated in the Bankruptcy Court's Order" approving the stipulation, *id.*, and found that the stipulation and order would have "an objective impact" on those rights. *Id.* at 7. The district court concluded that the stipulation prejudiced the insurer appellants "because it imminently and detrimentally affects both their litigation rights and their financial interests." *Id.* Thus, "[t]he pecuniary effect of the Order – the exposure to liability it creates – is neither speculative nor anticipatory." *Id.*

Here, the bankruptcy court never addressed these issues, instead accepting the Debtor's mischaracterization that the Stipulation allowed the Released State Court Actions to "proceed to finality." [A.842 (Bankruptcy Court Stay Order).] Because the bankruptcy court had an obligation to consider the impact of the Stipulation on

non-parties but failed to do so, it did not consider all relevant factors in evaluating whether the Stipulation was reasonable, was in the Debtor's business judgment, and should be approved under Bankruptcy Rule 9019.

### III. THE COURT SHOULD VACATE AND REMAND THE ORDER TO THE BANKRUPTCY COURT WITH THE PROPOSED INSTRUCTIONS

The Appellants respectfully request that this Court vacate and remand the Order with the Proposed Instructions. The Proposed Instructions remedy the above referenced harms by making stay relief uniform, so that the insurers can appropriately investigate and respond to settlement demands allowed under the Order and exercise their rights with respect to the Released State Court Actions. Additionally, they would remedy the bankruptcy court's unsubstantiated finding that the Committee did not unilaterally select the Released State Court Actions. Moreover, the Proposed Instructions would ensure that the Appellants' rights under their policies and applicable non-bankruptcy law are fully preserved. Finally, they would prevent the Survivors from imposing liens or collecting on judgments from the Debtor's insurers, limiting the stay relief to the valuation of claims asserted in the Released State Court Actions so that the Debtor and Non-Debtor Affiliates' economic interests remain intact.

### CONCLUSION

WHEREFORE, the Appellants respectfully request entry of an order: (a) either (i) vacating the Order of the bankruptcy court and remanding with the Proposed Instructions or (ii) reversing the judgment of the Order of the bankruptcy court and remanding the case for further proceedings; and (b) granting the Appellants such other and further relief as is right and just.

//

Dated: December 2, 2025      **PARKER, HUDSON, RAINER & DOBBS LLP**

*/s/ Harris B. Winsberg*
By: Harris B. Winsberg (admitted pro hac vice)
Matthew M. Weiss (admitted pro hac vice)

Matthew G. Roberts (admitted pro hac vice)
Brian C. Aton (SBN 339266)
303 Peachtree Street NE, Suite 3600
Atlanta, GA 30308
Telephone: (404) 523-5300
Facsimile: (404) 522-8409
Email: hwinsberg@phrd.com
     mweiss@phrd.com
     mroberts@phrd.com
     baton@phrd.com

-and-

Todd C. Jacobs (admitted pro hac vice)
John E. Bucheit (admitted pro hac vice)
Two N. Riverside Plaza, Suite 1850
Chicago, Illinois 60606
Telephone: (312) 477-3305
Email: tjacobs@phrd.com
     jbucheit@phrd.com

**NICOLAIDES FINK THORPE MICHAELIDES SULLIVAN LLP**

Matthew C. Lovell (SBN 189728)
101 Montgomery Street, Suite 2300
San Francisco, California 94101
Telephone: (415) 745-3779
Facsimile: (415) 745-3771
Email: mlovell@nicolaidesllp.com

*Attorneys for Chicago Insurance Company and Fireman's Fund Insurance Company*

Dated: December 2, 2025    **PARKER, HUDSON, RAINER & DOBBS LLP**

*/s/ Harris B. Winsberg*
By: Harris B. Winsberg (admitted pro hac vice)
Matthew M. Weiss (admitted pro hac vice)
Matthew G. Roberts (admitted pro hac vice)
Brian C. Aton (SBN 339266)
303 Peachtree Street NE, Suite 3600
Atlanta, GA 30308
Telephone: (404) 523-5300
Facsimile: (404) 522-8409
Email: hwinsberg@phrd.com
     mweiss@phrd.com
     mroberts@phrd.com
     baton@phrd.com

-and-

Todd C. Jacobs (admitted pro hac vice)
John E. Bucheit (admitted pro hac vice)
Two N. Riverside Plaza, Suite 1850

Chicago, Illinois 60606
Telephone: (312) 477-3305
Email: tjacobs@phrd.com
     jbucheit@phrd.com

**SINNOTT, PUEBLA, CAMPAGNE & CURET, APLC**

Blaise S. Curet (SBN 124983)
2000 Powell Street, Suite 830
Emeryville, California 94608
Telephone: (415) 352-6200
Email: bcuret@spcclaw.com

**LAW OFFICE OF ROBIN D. CRAIG**

Robin D. Craig (SBN 130935)
6114 La Salle Ave., No. 517
Oakland, California 94611
Telephone: (510) 549-3310
Email: rdc@rcraiglaw.com

*Attorneys for Westport Insurance Corporation f/k/a Employers Reinsurance Corporation*

Dated: December 2, 2025     **PARKER, HUDSON, RAINER & DOBBS LLP**

*/s/ Harris B. Winsberg*
By: Harris B. Winsberg (admitted pro hac vice)
Matthew M. Weiss (admitted pro hac vice)
Matthew G. Roberts (admitted pro hac vice)
Brian C. Aton (SBN 339266)
303 Peachtree Street NE, Suite 3600
Atlanta, GA 30308
Telephone: (404) 523-5300
Facsimile: (404) 522-8409
Email: hwinsberg@phrd.com
     mweiss@phrd.com
     mroberts@phrd.com
     baton@phrd.com

-and-

Todd C. Jacobs (admitted pro hac vice)
John E. Bucheit (admitted pro hac vice)
Two N. Riverside Plaza, Suite 1850
Chicago, Illinois 60606
Telephone: (312) 477-3305
Email: tjacobs@phrd.com
     jbucheit@phrd.com

**ROBINS KAPLAN LLP**

Christina M. Lincoln (SBN 274352)
2121 Avenue of the Stars, Suite 2800

-28-

Los Angeles, California 90067
Telephone: (310) 552-0130
Facsimile: (310) 229-5800
Email: clincoln@robinskaplan.com

-and-

Melissa M. D'Alelio (admitted *pro hac vice*)
Taylore E. Karpa Schollard (admitted *pro hac vice*)
800 Boylston Street, Suite 2500
Boston, Massachusetts 02199
Telephone: (617) 267-2300
Facsimile: (617) 267-8288
Email: mdalelio@robinskaplan.com
       tkarpa@robinskaplan.com

*Attorneys for Appalachian Insurance Company*

**CERTIFICATION PURSUANT TO FED. R. BANKR. P. 8015**

The undersigned hereby certifies that this document, which was prepared using Times New Roman 14-point typeface, contains less than 13,000 words and complies with the word limit of Federal Rule of Bankruptcy Procedure 8015(a). This certificate was prepared in reliance on the word-count function of the word-processing system (Microsoft Word) used to prepare the document.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 2, 2025.

*/s/ Harris B. Winsberg*
Harris B. Winsberg