Paul J. Pascuzzi, SBN 148810
Jason E. Rios, SBN 190086
Thomas R. Phinney, SBN 159435
Mikayla E. Kutsuris, SBN 339777
FELDERSTEIN FITZGERALD
WILLOUGHBY PASCUZZI & RIOS
LLP
500 Capitol Mall, Suite 2250
Sacramento, CA  95814
Telephone:    (916) 329-7400
Facsimile:     (916) 329-7435
Email: ppascuzzi@ffwplaw.com
        jrios@ffwplaw.com
        tphinney@ffwplaw.com
        mkutsuris@ffwplaw.com

Barron L. Weinstein, SBN 67972
BLANK ROME LLP
2029 Century Park East
Los Angeles, CA 90067
Telephone:    (424) 239-3400
Facsimile:     (424) 239-3434
Email: barron.weinstein@blankrome.com

Jeffrey L. Schulman NY Bar No. 3903697
(*Pro Hac Vice*)
BLANK ROME LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone:    (212) 885-5145
Facsimile:     (212) 885-5001
Email: jeffrey.schulman@blankrome.com

Attorneys for The Roman Catholic
Archbishop of San Francisco

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Century Indemnity Company, *et al.*,<br><br>                Appellants,<br><br>    v.<br><br>The Roman Catholic Archbishop of San Francisco, *et al.*,<br><br>                Appellees. | Case Nos.<br>3:25-cv-08563-WHO (lead case)<br>3:25-cv-08566-WHO<br>3:25-cv-08568-WHO<br><br>**RESPONSE BRIEF OF APPELLEE THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO** |

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Bankruptcy Procedure 8012, appellee The Roman Catholic Archbishop of San Francisco (the "Appellee" or "RCASF"), submits the following Disclosure Statement:

**Rule 8012(a) - Parent Corporations for Non-Governmental Corporate Parties**

RCASF is a California corporation sole, with no parent corporation or publicly held corporation that owns any stock of RCASF.

**Rule 8012(b) - Disclosure About the Debtor**

Appellee, RCASF, is the Debtor in the underlying pending Chapter 11 case. There are no other debtors not named in the caption for this case. The disclosures required by Rule 8012(a) are provided above.

Dated: January 6, 2026   FELDERSTEIN FITZGERALD WILLOUGHBY
            PASCUZZI & RIOS LLP

        By: */s/ Paul J. Pascuzzi*
           Paul J. Pascuzzi
           Jason E. Rios
           Attorneys for The Roman Catholic
           Archbishop of San Francisco

# **Table of Contents**

I.   JURISDICTION ...................................................................................................... 1

II.  STATEMENT OF ISSUES ..................................................................................... 2

III. STANDARD OF REVIEW ...................................................................................... 2

IV.  STATEMENT OF THE CASE ................................................................................ 3

V.   SUMMARY OF THE ARGUMENT ...................................................................... 10

VI.  ARGUMENT ......................................................................................................... 12

VII. CONCLUSION ..................................................................................................... 40

# TABLE OF AUTHORITIES

**Cases**

*Fjeldsted v. Lien (In re Fjeldsted v. Lien)*, 293 B.R. 12, 24–25 (9th Cir. BAP 2003) ................................................................................................................20

*In re Conejo Enters., Inc. (In re Conejo Enters., Inc.)*, 96 F.3d at 351-52 (9th Cir. 1996)................................................................................................................18

*Benedor Corp. v. Conejo Enters.* (*In re Conejo Enters.*), 96 F.3d 346, 351 (9th Cir. 1996)..................................................................................................................2

*Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 137 S. Ct. 973 (2017) ...............15

*Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014)................................................................................................................22

*Grief & Co. v. Shapiro (In re W. Funding Inc.)*, 550 B.R. 841, 851 (9th Cir. BAP 2016), aff'd 705 F. App'x 600 (9th Cir. 2017) ..............................................35

*Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1081 (9th Cir. 2000) ................................................................................................................39

*Gugino v. Clark (In re Clark)*, 525 B.R. 442, 449 (Bankr. D. Idaho 2015).............29

*Hodges v. Casey* (*In re Hero Nutritional's, LLC*), 2025 Bankr. LEXIS 1917 (9th Cir. BAP 2025)........................................................................................................22

*In re A & C Props.*, 784 F.2d 1377, 1380 (9th Cir. 1986) ......................................2

*In re Altman*, 2018 Bankr. LEXIS 1947 (9th Cir. BAP 2018) ...............................18

*In re Arkoosh Produce, Inc.*, 2003 Bankr. LEXIS 2222, *28 (Bankr. D. Idaho 2003) ...........................................................................................................31, 35

*In re Brown*, 606 B.R. 40, 50 (B.A.P. 9th Cir. 2018)..............................................38

*In re Coast Investors, Inc.,* 388 F.2d 622, 627 (9th Cir. 1968) ...............................26

*In re Conejo Enters.*, 96 F.3d at 350 ........................................................................4

*In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984)....................................18

*In re Kronemyer*, 405 B.R. 915, 919 (9th Cir. BAP 2009) ......................................3

*In re MGS Mktg.*, 111 B.R. 264, 266-67 (9th Cir. BAP 1990)................................2

*In re PG&E Corp.*, 2019 Bankr. LEXIS 2593 (Bankr. N.D. Cal. 2019) .................19

*In re Purdue Pharma L.P.*, 603 U.S. 204, 144 S. Ct. 2071 (2024) ..........................15

*In re Rauch,* 110 B.R. 467, 474 (Bankr. E.D. Cal. 1990) .......................................26

*In re Stein*, 236 B.R. 34, 37 (D. Or. 1999) ..............................................................3

*In re Stella*, 2006 Bankr. LEXIS 1980, 2006 WL 2433443, at *4 (Bankr. D. Idaho June 28, 2006) ................................................................................................19

*In re Tactical Ordinance & Equip. Corp.*, 2005 Bankr. LEXIS 3038, 2005 WL 4705285, at *3 (Bankr. D. Idaho Mar. 17, 2005)....................................................20

*In re Windmill Farms, Inc.*, 841 F.2d 1467, 1472 (9th Cir. 1988) ............................4

*Johnson v. United States*, 520 U.S. 461, 466-67, 117 S. Ct. 1544, 137 L. Ed. 2d 718 (1997) ...........................................................................................................28

*Law v. Siegel*, 571 U.S. 415, 134 S. Ct. 1188 (2014) ...............................................15

*Los Robles Care Ctr., Inc. v. Sec'y of U.S. HHS*, 532 B.R. 308, 310 .......................22

*Martin v. Kane (In re A&C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986)........34

*Milton H. Greene Archives, Inc. v. Julien's Auction House Ltd. Liab. Co.*, 345 F. App'x 244, 248 (9th Cir. 2009) ...............................................................................28

*Schwartz v. United States* (*In re Schwartz*), 954 F.2d 569, 573 (9th Cir. 1992).........3

*Morgan v. Woessner,* 997 F.2d 1244, 1260 n. 18 (9th Cir. 1993).............................28

*Stern v. Marshall*, 564 U.S. 462 (2011)...................................................................39

*Truck Insurance Exchange v. Kaiser Gypsum Company, Inc.*, 602 U.S. 268, 144 S. Ct. 1414 (2024)........................................................................................................15

*United States v. Alaska Nat'l Bank of the N.* (*In re Walsh Constr., Inc.*), 669 F.2d 1325, 1328 (9th Cir. 1982) ......................................................................................3

*United States v. Cotton*, 535 U.S. 625, 631, 122 S. Ct. 1781, 152 L. Ed. 2d 860 (2002) ......................................................................................................................28

*United States v. Derrick*, 1991 U.S. App. LEXIS 3238 (9th Cir. 1991) ..................28

*United States v. Gadsan*, 763 F.3d 1189, 1212 (9th Cir. 2014) ...............................30

*United States v. Whitman,* 771 F.2d 1348, 1352 (9th Cir, 1985) .............................30

*Vegas Townhomes Partners, L.P. v. Graham (In re Flamingo 55, Inc.)*, 646 F.3d 1253, 1255 (9th Cir. 2011) ......................................................................................13

*Woodson v. Fireman's Fun Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988)..........................................................................................................................3

**Statutes**

11 U.S.C. § 1102....................................................................................................5

11 U.S.C. § 362(a) .................................................................................................9

11 U.S.C. 1123(a)(4) ............................................................................................42

28 U.S.C. § 157(b)(2)(G).................................................................................39, 40

v

**Other Authorities**

Bankruptcy Code Section 105 ...................................................................15

Bankruptcy Code Section 1123 .................................................................42

Bankruptcy Code Section 362(a)(4) ..........................................................17

Bankruptcy Code Section 362(d) ..............................................................39

California Insurance Code Section 11580 (b)(1)……………………………..30

**Rules**

Bankruptcy Rule 9014(c)(1) ......................................................................28

Fed R. Evid. 201(c)(2) ..............................................................................30

Fed. R. Bankr. P. 9019(a) ...........................................................................2

Fed. R. Evid. 201 ......................................................................................29

Fed. R; Evid. 403 ......................................................................................28

Federal Rule of Bankruptcy Procedure 9019 ............................................34

Chapter 11 bankruptcy debtor, The Roman Catholic Archbishop of San Francisco (the "RCASF" or "Debtor"), responds to the Opening Briefs of Appellants Certain Underwriters at Lloyd's London and Certain London Market Insurance Companies (collectively, "LMI," Lead Case No. 25-cv-08563), Century Indemnity Company, Pacific Indemnity Company, Westchester Fire Insurance Company, St. Paul Fire and Marine Insurance Company and Travelers Casualty and Surety Company, Continental Casualty Company (collectively, "Travelers," Case No. 25-cv-08568), Chicago Insurance Company, Fireman's Fund Insurance Company, Westport Insurance Corporation f/k/a Employers Reinsurance Corporation, and Appalachian Insurance Company (collectively, "Chicago," Case No. 25-cv-08566) (LMI, Travelers, and Chicago are collectively referred to as the "Insurers" or "Appellants").[1]

## I.    JURISDICTION

This Court has jurisdiction to hear this appeal.  The RCASF filed a voluntary petition for relief with the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "Bankruptcy Court") under chapter 11 of the Bankruptcy Code on August 21, 2023 (the "Petition Date").  (A119-125).[2]  The Bankruptcy Court had jurisdiction to decide the underlying Motion under 28 U.S.C.

---

[1]     The Insurers filed three separate appeals of the same Bankruptcy Court Order and three separate Opening Briefs.  The Insurers' appeals were procedurally consolidated under the lead case number 3:25-cv-08563-WHO.  To avoid unnecessary duplication, RCASF files this consolidated response to all Insurers Opening Briefs.

[2]     Citations to the Travelers appendix is indicated as "AXXX."  Chicago did not file an "appendix", but rather *Opening Brief Exhibits*.  Citations to Chicago's *Opening Brief Exhibits* is indicated as "CXXX."  References to the RCASF's Appendix will use "RXXXX."  LMI did not file or serve the appendix with its principal brief, as required by Fed. R. Bankr. P. 8018(b)(1).

1

§§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

On September 2, 2025, the Bankruptcy Court issued a Docket Text Order granting the Motion (defined below).  (A002).  On September 17, 2025, the Bankruptcy Court entered its Order Granting Debtor's Motion to Approve Compromise and Stipulation Modifying the Automatic Stay (together with Docket Text Order "Order").  (A004).  This Court has jurisdiction to hear the appeals from "final judgments, orders, and decrees" of the Bankruptcy Court.  Accordingly, this Court has jurisdiction to hear the Insurers' appeals.

## II.    STATEMENT OF ISSUES

Did the Bankruptcy Court abuse its discretion in granting the *Debtor's Motion to Approve Compromise and Stipulation Modifying the Automatic Stay* (the "Motion")?

## III.    STANDARD OF REVIEW

Both the Bankruptcy Court's decision to grant relief from the Automatic Stay and its decision to approve a compromise is discretionary.  *See Benedor Corp. v. Conejo Enters.* (*In re Conejo Enters.*), 96 F.3d 346, 351 (9th Cir. 1996) (stating that, "[t]he decision to grant or deny relief from the Automatic Stay is committed to the sound discretion of the bankruptcy court…"); *see also In re A & C Props.*, 784 F.2d 1377, 1380 (9th Cir. 1986), *cert. denied*, 479 U.S. 854 (1986); *In re MGS Mktg.*, 111 B.R. 264, 266-67 (9th Cir. BAP 1990); *see also* Fed. R. Bankr. P. 9019(a) (the standard which governs compromises and settlements in bankruptcy cases is expressly discretionary, because it expressly provides that the bankruptcy court "may approve a compromise or settlement"); *see also In re Stein*, 236 B.R. 34, 37 (D. Or. 1999) (stating that, "[p]ursuant to Bankruptcy Rule 9019(a) compromises are favored in bankruptcy; therefore, the decision of the bankruptcy judge to approve or disapprove the compromise of the parties rests in his or her sound discretion").  Given this discretion, it comes as no surprise that bankruptcy courts have "wide latitude in

crafting relief from the automatic stay*" Schwartz v. United States* (*In re Schwartz*), 954 F.2d 569, 573 (9th Cir. 1992)) and "great latitude in approving compromise agreements." *Woodson v. Fireman's Fun Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988).

Because the decisions are discretionary, the appellate court reviews the Bankruptcy Court's decisions under an abuse of discretion standard.  *See In re Kronemyer*, 405 B.R. 915, 919 (9th Cir. BAP 2009) (observing that, "[t]he decision of a bankruptcy court to grant relief from the automatic stay under [section] 362(d) is reviewed for abuse of discretion"); *see also United States v. Alaska Nat'l Bank of the N. (In re Walsh Constr., Inc.)*, 669 F.2d 1325, 1328 (9th Cir. 1982) (stating, "[b]ecause the bankruptcy judge is uniquely situated to consider the equities and reasonableness of a particular compromise, approval or denial of a compromise will not be disturbed on appeal absent a clear abuse of discretion")*; see also In re Conejo Enters.*, 96 F.3d at 350 (stating, "[t]he decision to grant or deny relief from the automatic stay is committed to the sound discretion of the bankruptcy court, and we review such decision under the abuse of discretion standard").

Accordingly, the Order cannot be reversed unless it is "based on an erroneous conclusion of law or [if] the record contains no evidence on which [the bankruptcy court] rationally could have based that decision."  *In re Conejo Enters.*, 96 F.3d at 351 (*quoting In re Windmill Farms, Inc.*, 841 F.2d 1467, 1472 (9th Cir. 1988)).

As explained above and further detailed below, review of Judge Montali's decision for abuse of discretion reveals no such abuse.

## IV.    STATEMENT OF THE CASE

In October 2019, Governor Gavin Newsom signed AB 218, known as the California Child Victims Act (the "CVA"), which expanded legal protections for survivors of child sexual abuse ("Survivors").  (A009).  The CVA went into effect on January 1, 2020, opening a three-year "revival window" during which any Survivor could file civil claims regardless of when the abuse occurred.  (A009).

During the CVA's revival window, approximately 541 Survivors filed civil actions against the RCASF, virtually all of which have been consolidated (along with other Northern California clergy cases naming other defendants) into a coordinated proceeding entitled *In re Northern California Clergy Cases*, JCCP No. 5108 in the Superior Court of California, County of Alameda (the "State Court"). (A010).

Fifty-one (51) of those actions include as named defendants at least one of the non-Debtor affiliates listed on ***Exhibit A*** to the Stipulation (the "Non-Debtor Affiliates"). (A034-A039). These actions are identified in ***Exhibit B*** and ***Exhibit C***[3] to the Stipulation (collectively, the "Affiliate State Court Actions"). (A033-A039).

On August 21, 2023 (the "Petition Date"), the Debtor filed a voluntary petition with the Bankruptcy Court under chapter 11 of the Bankruptcy Code. (A120-A125). This Bankruptcy Case is pending before the Bankruptcy Court for the Northern District of California (the "Bankruptcy Court"). (A120).

The RCASF filed the Bankruptcy Case to reorganize its financial affairs pursuant to a plan of reorganization that will, among other things, fairly, justly, and equitably compensate survivors of sexual abuse by clergy or others associated with the RCASF and bring healing to survivors, parishioners and others affected by past acts of sexual abuse. (A127-A147). The RCASF requires the Bankruptcy Court's protection and the protection of the bankruptcy laws to make fair and equitable payment on all of the claims against it, including the claims by survivors of abuse, trade creditors and others, while continuing its ministries and the support it offers to Catholic parishes and communities. (A146). Additional detailed background information on the RCASF can be found in the Passarello Background Decl. (A127-A147) and the Gaspari Decl. (C497-C501).

---

[3] Exhibit C lists the five Released State Court Actions (defined below), and Exhibit B lists the other forty-six state court actions, for a total of fifty-one Affiliate State Court Actions.

4

The United States Trustee for Region 17 (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee") on September 1, 2023, pursuant to 11 U.S.C. § 1102.  (C502-C503).

In each diocesan bankruptcy where a plan of reorganization has been confirmed, the bankruptcy court approved a pot plan negotiated through extensive mediation by and among the interested parties in the bankruptcy case, after exchanging information with statutory committee appointed by the U.S. Trustee in those cases, which mediations settled disputes over what constituted property of the bankruptcy estate and provided for a settlement of the claims of abuse survivors. (R0013-R0032).  From the outset, the RCASF has sought to negotiate a pot plan of reorganization as early as possible which will:  (a) allocate the RCASF's settlement contribution fairly among the legitimate competing interests; (b) provide a process to fully, fairly and expeditiously liquidate claims of abuse survivors; and (c) permit the RCASF to carry on the RCASF's essential ministries and services so that the RCASF can continue to meet the needs of the Non-Debtor Catholic Entities, parishioners, and others who rely on the RCASF's ministry, education, and charitable outreach. (R0013-R0032).

On July 15, 2024, the Bankruptcy Court entered an Order Referring Case to Mediation and Appointing Mediator ("Mediation Order").  (C664-C672).  The Mediation Order appointed the Hon. Daniel J. Buckley (Ret.), Timothy V.P. Gallagher, and the Hon. Christopher S. Sontchi (Ret.) as mediators (collectively, the "Mediators").  (C664-C672).

To some extent, the Debtor benefits from the experience of other dioceses who preceded the Debtor into Chapter 11.  Of the approximately thirty-two (32) Chapter 11 diocesan or religious organization cases filed prior to the Debtor's filing that have proceeded through plan confirmation, approximately twenty-two (22) of those cases have resulted in consensually confirmed reorganization plans.  In virtually all of those cases, terms for a consensual reorganization plan were reached following mediation

where the debtor, non-debtor entities, insurers and the creditors' committee representing the interests of survivors of sexual abuse participated.  Similarly, two other pending diocese cases pending in this District that have not yet reached plan confirmation filed by the Roman Catholic Bishop of Santa Rosa and the Roman Catholic Bishop of Oakland are proceeding on a similar course.  (Bankr. N.D. Cal. 23-10113 and Bankr. N.D. Cal. 23-40523.  The Debtor seeks to expeditiously advance this process to determine the parties' interests and contributions to fund a plan to provide recovery for creditors.  (R0033-R0047).

On April 28, 2025, the Debtor initiated Adversary Proceeding No. 25-03019 (the "Adversary Proceeding") by filing a complaint for declaratory and injunctive relief to prevent the Affiliate State Court Actions from proceeding for the duration of the Debtor's Bankruptcy Case.  (A149-A167).

On May 29, 2025, the Debtor and the Committee stipulated that the Committee is permitted to intervene, which was approved by the Court.  (C876-C878, and R0048-R0050).

On May 29, 2025, the Debtor filed the *Motion for Order Extending Stay to All State Court Cases in Which Debtor and/or Nondebtor Affiliate are Named as Defendants Under Bankruptcy Code Sections 105(a) and 362* along with supporting declarations and exhibits (C879-C1022; and R0051-R0061) (the "Injunction Motion"), seeking both a declaration that the Automatic Stay extends to all Affiliate State Court Actions and, in the alternative, an injunction that would prevent all Affiliate State Court Actions from proceeding for the duration of the Debtor's Bankruptcy Case.  The Debtor filed extensive declarations describing its insurance coverage, the state court litigation posture, and how allowing the Affiliate State Court Actions would severely impact the mediation and the Bankruptcy Case.  (C916-C1005 and C1006-C1022).

On June 12, 2025, the Committee filed an Opposition and supporting documents to the Injunction Motion.  (C1023-C1051; R0062-R0088).

On June 13, 2025, the Debtor and the Committee stipulated to a voluntary stay of the Affiliate State Court Actions naming the High Schools as defendants, which was approved by the Court (R0102-R0104)

On June 20, 2025, the Debtor filed a Reply to the Injunction Motion. (R0105-R0122).

With the assistance of the court appointed mediators, the Debtor and the Committee agreed to continue the court hearing on the Injunction Motion to July 17, 2025 (A045) and August 14, 2025 (A045) for the parties to seek resolution of the Injunction Motion with assistance of the court appointed mediators.

To resolve the Injunction Motion and other pending issues in the Debtor's Bankruptcy Case, the Debtor, Committee, and the Survivor Defendants (as defined in the Stipulation) (collectively, the Debtor, the Committee, and the Survivor Defendants are the "Parties"), entered into the Stipulation.  (A045).

The Stipulation provides that subject to Paragraph 3 therein, the Parties agree to a stipulated injunction pursuant to 11 U.S.C. § 105(a), enjoining prosecution of the Affiliate State Court Actions, including against the Non-Debtor Affiliates named therein (the "Stipulated Stay Injunction").  (A046).

The Stipulation further provides that ***Exhibit C*** to the Stipulation contains a list identifying five state court actions (the "Released State Court Actions") to be released from the Stipulated Stay Injunction that shall proceed to trial, subject to the following terms:

    a.  The Plaintiffs may prosecute, and any court where the action is pending may proceed with all necessary actions to adjudicate, the Released State Court Actions through final judgment, including against the Debtor and all non-Debtor defendants.

    b.  The Debtor is authorized to pay reasonable defense fees and costs in the Released State Court Actions that are not paid by an insurer, notwithstanding any prior order of the Court.

    c.  Entry of a judgment against any defendant in the Released State Court Actions shall not create a lien against any non-insurance asset of the

Debtor or any Non-Debtor Affiliate. Nothing in this Stipulation should be construed to prevent a lien from attaching to the Debtor's and/or any Non-Debtor Affiliate's insurance policies or the proceeds of such policies, or the assets of any defendant that is not the Debtor or a Non-Debtor Affiliate or the enforcement of such lien.

d.  No Plaintiff may create or take any action to effectuate the creation or imposition of any lien against any non-insurance asset(s) of the Debtor or any Non-Debtor Affiliate.  Further, no Survivor may collect, levy, execute, or otherwise enforce any judgment against any non-insurance asset(s) of the Debtor or any Non-Debtor Affiliate.

(A046).

The Parties agreed that to the extent the Automatic Stay applied it should be modified so that all Survivors (regardless of whether their claims are selected as Released State Court Actions) may make written settlement demands on the Debtor and any non-Debtor defendant(s) and requested that the Debtor and any non-Debtor defendant(s) tender those demands on their respective insurers and request that the insurers pay those demands.  (A046).  The Parties further agreed that such demands are not a violation of the Stipulated Stay Injunction or the stay imposed by 11 U.S.C. § 362(a).  (A047).

The Stipulation also provides that any Party may request that the Bankruptcy Court modify or rescind the Stipulated Stay Injunction, except that the Released State Court Actions shall not be stayed or otherwise enjoined without the consent of the Committee and the applicable Plaintiff/Survivor, or by the Court upon a showing of extraordinary circumstances.  The requesting party must give the Debtor and the Committee at least three days' written notice prior to filing the request and may not set the matter for hearing on less than thirty (30) days' notice from the time of filing. Nothing in the Stipulation modifies the Parties' respective burdens of proof in relation to the Injunction Motion.  (A047).

The Debtor filed the Motion with proper notice that is not disputed to formally seek relief from the Automatic Stay and approving the compromise in the Bankruptcy

1  Case as to the remaining relief contained in the Stipulation. The Motion is based on
2  and incorporates by reference all of the evidence, pleadings and arguments in the
3  Adversary Proceeding, the Injunction Motion (including supporting declarations and
4  exhibits) and the Declaration of Fr. Patrick Summerhays filed therewith. (A205 and
5  R0123-R0126).

6        Thus, to resolve the dispute and the pending Adversary Proceeding litigation,
7  and focus efforts on mediation to resolve this Chapter 11 bankruptcy case with the
8  mediators, the Parties reached a compromise whereby only five cases were released
9  and the remaining approximately forty-six (46) cases were stayed. (A205-206). The
10 outcome of that dispute in the Adversary Proceeding and Injunction Motion was
11 uncertain and, in fact, the Bankruptcy Court had already released two cases over the
12 Debtor's objections. (R0001-R0012).

13       The Bankruptcy Court issued the Order approving the compromise and
14 Stipulation and the insurers, who are not creditors of the Debtor's bankruptcy estate
15 and suffer no prejudice from the order, filed three appeals. (A053-A118; C742-C765,
16 and R0131-R0178).

17       On September 16, 2025, Travelers and LMI filed a Motion for Stay Pending
18 Appeal in the Bankruptcy Court (C729-C741), which the Debtor and the Committee
19 opposed (C785-C794). Judge Montali promptly issued his well-reasoned order
20 denying the Insurers' Motion to Stay, which provides insightful discussion of the
21 Debtor's bankruptcy case, the Motion, the Stipulation, and the Order on appeal and
22 should be a starting point for this Court's review of these appeals. (C840-C848).
23 Travelers and LMI then filed a Motion for Stay Pending Appeal before this Court
24 [ECF 3], which the Debtor and the Committee opposed [respectively, ECF 11 and
25 13]. This Court issued its Order denying the Insurers' Stay Motion [ECF 34] and the
26 Insurers' opening briefs followed.

27 ///

28 ///

# V. SUMMARY OF THE ARGUMENT

This Chapter 11 Bankruptcy Case was filed by RCASF to provide a forum to provide compensation for allowed claims by the sexual abuse Survivors who filed over 500 civil actions against the Debtor.  (C493 and C499-C500).  The Insurers' appeals present an array of meritless challenges to the Bankruptcy Court's exercise of its statutory discretion to lift the Bankruptcy Code's "automatic stay" to allow five of those pending state court actions to proceed in litigation.  The Bankruptcy Court's Order was entered pursuant to a stipulation and compromise entered by the Debtor, the Official Committee appointed to represent the interests of unsecured creditors, and certain sexual abuse claimants (which constitute the overwhelming largest class of creditors asserting claims against the Debtor).  (A002-A033 and A045).

While 11 U.S.C. § 362(a) (the "Automatic Stay") automatically imposes a stay prohibiting the commencement or continuation of specified acts against a bankruptcy debtor and property of the bankruptcy estate, Section 362 equally provides that the Automatic Stay is not immutable.  Section 362(d) gives the Bankruptcy Court the power to lift the Automatic Stay on terms that the Bankruptcy Court, in its discretion, may determine to be "cause" under the circumstances of the case.  The Insurers, who are not creditors and have not filed proofs of claim in this Chapter 11 bankruptcy case—where claims are estimated to exceed $100,000,000—ask this Court to declare that the Hon. Judge Montali abused his discretion in granting a limited lifting of the Automatic Stay requested by the primary parties in interest through mediation. (A144-A145).  The Insurers' request is rooted in false assertions that the Bankruptcy Court altered the Insurers' insurance contracts—an issue not raised before the Bankruptcy Court—and misplaced complaints that the Bankruptcy Court lacked sufficient evidence or "cause" for granting the limited relief from stay provided by the Bankruptcy Court's order.  The Insurers' appeals must be denied.

More specifically, after more than two years of bankruptcy proceedings and ongoing efforts to resolve the Debtor's Chapter 11 case through mediation before

10

three court-appointed experienced mediators, the Debtor was faced with the prospect that all the pending alleged sexual abuse cases against its co-insured Non-Debtor Affiliates would proceed to trial. (A120; C666; and C919-921). This would have resulted in approximately fifty-one (51) cases being released for trial and the potential exhaustion or substantial erosion of the Debtor's insurance coverage to the prejudice of the Debtor and Survivor claimants. (A197-A202; C891; and C1009-1011). Because many of the Non-Debtor Affiliates shared coverage under the same policies as the Debtor, there was a risk that the Debtor's insurance coverage could be exhausted for those claims before the Debtor could negotiate and confirm a bankruptcy plan of reorganization to fairly and equitably address all claims against the Debtor. *Id.*

To address this risk, the Debtor filed an adversary proceeding (a lawsuit under the umbrella of the main bankruptcy case) and moved for declaratory and injunctive relief barring the prosecution of actions involving the Non-Debtor Affiliates to avoid the: (1) crushing economic burden and risks of approximately fifty-one (51) cases proceeding to trial and impairing the Debtor's insurance, (2) significant risks to the Debtor and the estate of litigating dozens of sexual abuse cases with an "empty chair" for the Debtor (which, unlike the Non-Debtor Affiliates, is protected by the Automatic Stay), and (3) attendant substantial discovery burdens and risks that alone would have jeopardized the parties efforts to fund a successful resolution through mediation. (A149-A167; and C879-C1022). The outcome of that disputed request to extend the Automatic Stay, or alternatively, an injunction, was uncertain; and, in fact, the Bankruptcy Court had already released two alleged sexual abuse cases over the Debtor's objections. (R0001-R0012). To resolve the dispute, the pending litigation, the potential exhaustion of some insurance coverage needed to address all covered claims, and the empty chair/discovery problems, the Debtor and Committee reached a compromise whereby only 5 cases were released to resume litigation and the remaining approximately forty-six (46) cases remained stayed along with the

approximately 500 non-affiliate cases. (A149-A167; A197-A202; and C879-C1022). In addition, to the extent the stay applied it was modified to allow claimants to exercise their rights to send settlement demands to the Debtor, which the Debtor could tender to the Insurers. (A005 and A012).

The Bankruptcy Court issued an order approving the compromise and modifying the Automatic Stay to allow the five actions to proceed. (A004-A040). The Insurers filed three appeals asking this Court to declare that Judge Montali's Order approving the compromise and modifying the Automatic Stay was an abuse of discretion. It was not.

## VI.    ARGUMENT

The Debtor has sought in the following sections to consolidate and efficiently address the Insurers' shotgun approach of tossing up a wide range of complaints and grievances across three separate briefs.

### A. The Order Does Not Modify Insurance Policies, Create New Rights and Remedies, or Insulate the Debtor.

For the first time on appeal, the Insurers challenge the Order by asserting that it "fundamentally alters" the contractual relationship between the Debtor and its Insurers. Travelers p.1:2-5. Likewise, LMI challenges the Order by complaining that the Order "improperly alters the insurance policies subscribed by LMI." LMI p. 2:6-8. LMI further boldly asserts that the Order creates new remedies (e.g. creation/attachment of liens attachment and enforcement of liens) for enforcement of potential claims without regard to existing state law (*See* LMI p. 2:9-18, LMI Section VIII(A)(3) & (4)), and that the Order divests any rights that LMI might have to defend against a potential future coverage action (*See* LMI Section VIII(A)(2)).

First, these arguments were not raised in the bankruptcy court and, therefore, may not be raised for the first time on appeal. *See Vegas Townhomes Partners, L.P. v. Graham (In re Flamingo 55, Inc.)*, 646 F.3d 1253, 1255 (9th Cir. 2011) ("An issue not raised in the bankruptcy court is waived on appeal"); *see also* A214-A243.

Second, even if the arguments were timely raised in the bankruptcy court, they would still fail because the Insurers' challenges are patently false and misleading. It's axiomatic that the Automatic Stay arises upon the filing of a bankruptcy case to prevent a bankruptcy debtor's creditors from asserting its enforcement remedies under non-bankruptcy law. 11 U.S.C. § 362(a). Conversely, modifying or lifting the Automatic Stay simply removes that stay, to the extent allowed by the Bankruptcy Court order, to allow those same pre-existing rights and remedies to be asserted. Neither the imposition of the stay nor the lifting of the stay creates new rights or modifies existing contractual rights. Thus, the Order simply modifies the Automatic Stay imposed by Bankruptcy Code Section 362(a) within the parameters provided by the Stipulation to allow the plaintiffs in the five Released State Court Actions to proceed with their existing state law remedies. (A005). More specifically, the Order states in Paragraphs 3 and 4, as follows:

3. "Subject to the terms and conditions set forth in the Stipulation and to the extent required to implement the Stipulation, the stay imposed under 11 U.S.C. § 362(a) is hereby modified.

4. Except for the limited purpose of modifying the automatic stay as set forth in the Stipulation, the automatic stay shall otherwise remain in full force and effect."

(Order ¶¶ 3-4 at A005).

Plainly, the Order does not modify any insurance contracts, create any new rights or remedies, or strip LMI from any right to defend a potential future coverage action. (A004-A040). Rather, the Bankruptcy Court simply limited the scope of the Automatic Stay (created by federal statute upon the Debtor's bankruptcy filing to protect the Debtor and its bankruptcy estate) to allow continuation of existing rights and remedies to the extent allowed by the Stipulation and Order. On its face, nothing in these terms creates grants a lien, creates lien, or otherwise provides for any lien rights or remedies in violation of otherwise applicable law. Neither does it eliminate

1    any defenses that LMI might have to a coverage action. Rather, once again, the

2    Stipulation and Order merely modify the Automatic Stay so that the exercise of such

3    rights, if any, is not restricted by the Automatic Stay. *Id*.

4        Perhaps recognizing this reality, LMI seeks to distract, or perhaps impress, the

5    Court with citations to prominent "greatest hits" bankruptcy cases that are irrelevant

6    to this proceeding: e.g., *Law v. Siegel*, 571 U.S. 415, 134 S. Ct. 1188 (2014)

7    (addressing the Bankruptcy Court's authority to issue orders that the Bankruptcy

8    Court deems "necessary or appropriate" based *only* on Bankruptcy Code Section 105

9    – not applicable here as the Motion was based on Bankruptcy Code Section 362),

10   *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 137 S. Ct. 973 (2017) (addressing

11   when a Bankruptcy Court may approve a "structured dismissal" of a bankruptcy case

12   to provide distributions to creditors without following the procedures and

13   requirements for confirmation of chapter 11 plan – not applicable here as no request

14   for dismissal was made or granted), *In re Purdue Pharma L.P.*, 603 U.S. 204, 144 S.

15   Ct. 2071 (2024) (addressing when third party non-debtor releases may be granted –

16   not applicable here as no third party releases were requested or granted.), and *Truck*

17   *Insurance Exchange v. Kaiser Gypsum Company, Inc.*, 602 U.S. 268, 144 S. Ct. 1414

18   (2024) (addressing insurer standing in bankruptcy plan confirmation proceedings –

19   not applicable here as insurer standing was not challenged or addressed in this Motion

20   or Order).  While each of these cases address important bankruptcy issues, they are

21   not relevant to the Order that is before this Court.  (A004-A040).

22       As noted above, Section 362(d) authorizes Bankruptcy Courts to modify the

23   Automatic Stay, and they routinely do so.  The Insurers' suggestion that merely lifting

24   the bankruptcy stay to allow a creditor to proceed with its pre-existing state law rights

25   and remedies somehow improperly modifies the insurance contracts or creates new

26   enforcements remedies that did not otherwise exist, where neither the Order nor the

27   Stipulation provide for any modification of insurance contracts or the creation of new

28   remedies, is shockingly spurious.  For example, as to the Insurers claims that the

1   Stipulation improperly creates liens on insurance policies, the actual language of the

2   Stipulation states: "Nothing in this Stipulation should be construed to prevent a lien

3   from attaching to the Debtor's and/or any Non-Debtor Affiliate's insurance policies

4   or the proceeds of such policies. . ." (A174, ¶ 3(c)).  A plain reading of the Stipulation

5   and Order shows that the Order simply defines the limited lifting of the statutory stay

6   that arose upon the Debtor's filing.  (A004-A040).  Neither the Stipulation nor the

7   Order provide that any party shall have a lien.  They simply allow parties to proceed

8   with their existing rights and remedies to the extent that the stay no longer applies.

9   Partially lifting the stay does not itself create any new rights or alter pre-bankruptcy

10  petition rights.  It just restores the parties back to their status quo ante as before the

11  bankruptcy case was filed to the extent that the stay was lifted.  The Insurers'

12  assertions that the Stipulation and Order created new enforcement remedies that did

13  not exist before the bankruptcy filing reads terms into the Stipulation and Order that

14  do not exist.  Thus, the Insurers' objections to the Order should be disregarded as

15  baseless and irrelevant.

16      Travelers further demands reversal based on an inaccurate assertion that the

17  Order "insulates from any financial jeopardy all non-insurance assets of the Debtor

18  and the Non-Debtor Affiliates."  Travelers p. 1:13-14.  Chicago makes similar

19  arguments including the assertion that because of the Stipulation and Order, the

20  Debtor and the Non-Debtor Affiliates, ". . . no longer face the possible economic loss

21  (of non-insurance assets) . . ."  Chicago p. 24:2-5.  Again, a simple reading of the

22  Stipulation and Order establishes that the Bankruptcy Court did not "insulate" the

23  Debtor.  Neither the Order nor the Stipulation include a release of any claims or any

24  provision that the Debtor would not have liability for any judgment in the Released

25  Actions.  (A004-A040).  The Debtor is already subject to disputed pending claims of

26  liability for each of the Released State Court Actions, and any resulting judgments

27  against the Debtor will both establish liability and monetize the amount of those

28  claims against the Debtor and its bankruptcy estate.  Indeed, the Debtor has submitted

1  itself to the bankruptcy process for over two years, where <u>all</u> its assets remain subject

2  to a plan to treat creditor claims, including those asserted by the plaintiffs in the

3  Released State Court Actions.  (*See* A120).  While the Debtor would welcome a

4  release of claims and insulation of its assets, there is simply no provision in the Order

5  or Stipulation that releases any claims against the Debtor or any Debtor assets from

6  liability or administration through the bankruptcy process.  (A004-A040; *see also*

7  C395).

8      It seems that the language that the Insurers disapprove of is in Paragraph 3(c)

9  and (d), which provides that the Automatic Stay is not lifted to allow the Released

10  State Court Actions to create a lien on the Debtor's non-insurance assets.  (A011).

11  However, the Insurers fail to acknowledge that the stay acts to create liens against the

12  Debtor's assets is already the status quo created by the Automatic Stay itself at

13  Bankruptcy Code Section 362(a)(4), which prohibits "any act to create, perfect, or

14  enforce any lien against property of the estate."  11 U.S.C. § 362(a)(4).  Thus, their

15  complaint that a stay is in place to prevent liens on the Debtor's assets really amounts

16  to an objection to Congress having created the Automatic Stay prohibiting the creation

17  of liens when it enacted the Bankruptcy Code (not an appealable issue) and/or the

18  quizzical objection that the Bankruptcy Court erred in modifying the Automatic Stay

19  to allow certain actions against the Debtor because there should be no stay of

20  actions/liens against the Debtor.  The Insurers can't have it both ways, and the

21  Insurers' objections to the Order should be denied.

22      Alternatively, the insurers appear to argue that their coverage obligations do

23  not arise unless the insured's non-insurance assets are collectible.  If that is their

24  argument, it is baseless.  Insurance policies do not condition the insurers' contractual

25  obligations on whether a judgment can be collected against the insured's non-

26  insurance assets. And if a policy requires that a deductible, self-insurance retention or

27  the like be paid before the policy attaches, the Stipulation does not alter such policy

28  provisions.  Indeed, California law requires that every liability insurance policy such

1   as the policies here contain the following: "A provision that the insolvency or

2   bankruptcy of the insured will not release the insurer from the payment of damages

3   for injury sustained or loss occasioned during the life of such policy." California

4   Insurance Code Section 11580 (b)(1).

5   **B. The Court Applied the Appropriate Legal Standard**

6       As outlined above and explained in the Section IV(C) below, the Bankruptcy

7   Court had extensive and compelling evidence to support its decision to modify the

8   Automatic Stay. The Insurers seek to avoid this reality by attempting to manufacture

9   an error in the Bankruptcy Court's analysis by wrongly asserting that the Bankruptcy

10   Court failed to apply certain non-exclusive factors that may be considered by the court

11   to evaluate a request for relief from the Automatic Stay, as outlined in *In re Curtis*,

12   40 B.R. 795, 799-800 (Bankr. D. Utah 1984). *See* Chicago *e.g.* p. 2:9-15; LMI Section

13   VIII(D)(1).

14       However, *In re Curtis*, a decision from the Bankruptcy Court for the District of

15   Utah, is not binding on the Bankruptcy Court presiding over the Debtor's case in the

16   Northern District of California and, in any event, merely provides a non-exclusive list

17   of factors that a bankruptcy court <u>may</u> choose to consider when exercising its

18   discretion whether to lift the Automatic Stay for "cause." *See also* Chicago p.18:17-

19   23 (acknowledging that a bankruptcy court may "elect" to apply the *Curtis* factors).

20   Thus, the Bankruptcy Court was <u>not</u> required to consider the *Curtis* factors to

21   determine whether "cause" to lift the automatic stay is proper. *See In re Altman*, 2018

22   Bankr. LEXIS 1947 (stating, that "[a]lthough the above referenced factors **may be**

23   **considered by the bankruptcy court**, "cause" is a generic concept without a specific

24   definition that it committed to the sound discretion of the bankruptcy court on a case-

25   by-case basis") (emphasis added) (9th Cir. BAP 2018) (citing *Benedor Corp v.*

26   *Conejo Enters., Inc. (In re Conejo Enters., Inc.)*, 96 F.3d 346, 351-52 (9th Cir.

27   1996); *see also In re PG&E Corp.*, 2019 Bankr. LEXIS 2593 (Bankr. N.D. Cal. 2019)

28   (stating that, "cause exists to grant relief from stay, both including

and **independent** of the *Curtis* factors") (emphasis added).  Accordingly, while courts within the Ninth Circuit often look to the *Curtis* factors for guidance, a weighing of the factors is not required.  *See id*.  Section 362(d) grants the Bankruptcy Court wide discretion to determine what constitutes "cause" taking into account the facts and circumstances pertinent to the case before the Court.  Therefore, the Insurers' argument that the Order should be reversed on the grounds that the Bankruptcy Court did not strictly follow *Curtis* must fail because the Bankruptcy Court had no obligation to apply the *Curtis* factors in the first place.

And, even if this Court were to consider the *Curtis* factors, it could not find that the Bankruptcy Court abused its discretion in weighing these factors because the record demonstrates that the Bankruptcy Court properly evaluated the issues before it.  In its Docket Text Order, the Bankruptcy Court expressly noted that it considered and agreed with the Motion and related pleadings which cited to and addressed the *Curtis* factors.  (A002).

Moreover, the Insurers emphasize only those factors they perceive support their position while downplaying those that do not.  However, as the Ninth Circuit has recognized, factor-driven analyses in bankruptcy law is not a mere exercise in arithmetic.  *See In re Stella*, 2006 Bankr. LEXIS 1980, 2006 WL 2433443, at *4 (Bankr. D. Idaho June 28, 2006) (stating that, "[S]uch lists are capable of being misconstrued as inviting arithmetical reasoning but are merely a framework for analysis and not a scorecard.  In any given case, one factor may so outweigh the others as to be dispositive.") (quoting *Fjeldsted v. Lien (In re Fjeldsted)*, 293 B.R. 12, 24– 25 (9th Cir. BAP 2003)); *see also In re Tactical Ordinance & Equip. Corp.*, 2005 Bankr. LEXIS 3038, 2005 WL 4705285, at *3 (Bankr. D. Idaho Mar. 17, 2005) (considering a stay-lift request to allow a state court jury trial and noting that "[c]ertain [of the *Curtis*] factors may tilt decidedly in favor of the motion, and others in the opposite direction.  Still others may add little to the balance.  At best, these factors provide analytic tools by which proof can be sifted and weighed, assisting the

Court in appropriately exercising its discretion.").  In its Docket Text Order, the Court recognized, among other things, that: (1) the motion "represents a needed, good faith settlement of a bona fide dispute"; (2) "[t]he demand letters, if they even would be prohibited by the automatic stay, which is far from clear, are to some extent pass-throughs from the debtor as a conduit to the insurers, who cannot be surprised or harmed by them" and; (3) the objectors "have shown no meaningful prejudice." (A002).  Based on these findings, the Court's reasoning more than demonstrates that the balance of harm and the impact of the stay—the twelfth *Curtis* factor (and other factors)—favored lifting the stay, as the Stipulation would result in more benefit than harm.

**C. The Order is Supported by Substantial Evidence and Sound Judicial Discretion That There Was "Cause" for the Order**.

After disposing of the Insurers' specious arguments that the Order improperly modified contract rights and enforcement remedies by simply modifying the Automatic Stay, and that the Bankruptcy Court was constrained by the non-binding, non-exclusive *Curtis* factors, this Court can turn to the meat of the issue presented by the Motion and these appeals:  whether sufficient circumstances and evidence existed as "cause" for the limited modification of the Automatic Stay provided by the Order, as requested by Stipulation of the primary parties in interest in this Bankruptcy Case to help them come to a resolution after over two years of bankruptcy proceedings and seventeen (17) months of mediation before the three mediators.

The Insurers attempt to identify reversable error by claiming that the Bankruptcy Court did not sufficiently articulate findings of "cause" for granting relief from the Automatic Stay and/or that the Bankruptcy Court lacked sufficient evidence to find cause for modifying the stay.  However, as explained in more detail below, the Bankruptcy Court made sufficient findings of cause and its determination to modify the Automatic Stay is supported by extensive and compelling evidence.

### 1. The Bankruptcy Court Identified Cause for Granting the Motion.

The entire first section of Chicago's argument asserts that the Bankruptcy Court failed to identify cause for granting stay relief and/or that the findings were inadequate. *See e.g.* Chicago, Section I. Likewise, Travelers asserts that Judge Montali's findings were insufficient. See Travelers, p. 2 and 24. Once again, simply reading the Order refutes this argument. The Order states the Court's findings that the legal and factual bases set forth in the Motion establish cause. (A005). Thus, the Bankruptcy Court adopted the numerous reasons set forth in the Debtor's ten (10) page Motion as findings in support of the Order. The Order further finds as cause that the relief requested in the Motion is in the best interests of the Debtor, its estate, creditors, and all parties and interest. (A005). The Order further states that the Court considered all of the proceedings before the Court over the two years this case has been pending as cause for modifying the Automatic Stay. (A005). The Bankruptcy Court further noted in support of its finding of cause in its Docket Text Order that not a single abuse claimant among the remaining cases that will remain stayed (which exceed 500 cases) objected and that granting the Motion would not prejudice the Insurers as they could not be surprised or harmed, *i.e.* the insurers would only be called to perform duties that they would otherwise have if the Automatic Stay had not been imposed. (A002). Thus, the Insurers' argument that the Bankruptcy Court failed to find cause must be rejected.

The Insurers further expend much of their arguments complaining about the level of detail in Judge Montali's findings and proclaim that any deficiencies of detail require reversal. Of course, as this Court is aware, that is not the standard on appeal. The district court, acting as the appellate court, may affirm the bankruptcy court order **on any grounds supported by the record**, regardless of whether the bankruptcy court relied upon, rejected or even considered that ground. *See Los Robles Care Ctr., Inc. v. Sec'y of U.S. HHS*, 532 B.R. 308, 310 (stating that, "[t]he district court acts as

an appellate court in an appeal from a bankruptcy decision and may affirm the bankruptcy judge's order "on any grounds supported by the record," even if that ground is not the one relied upon by the bankruptcy judge"); *see also Hodges v. Casey* (*In re Hero Nutritional's, LLC*), 2025 Bankr. LEXIS 1917 (9th Cir. BAP 2025) (stating, that "[w]e may affirm on any ground supported by the record, regardless of whether the [bankruptcy] court relied upon, rejected, or even considered that ground" (citing *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014))).   Accordingly, even if this Court were to find any issue with Judge Montali's findings or the Fr. Summerhays Declaration (discussed in the following section), the record of this Chapter 11 case, which has been pending over two years, independently demonstrates overwhelmingly that cause existed to modify the Automatic Stay and the compromise was fair, equitable, and in the best interests of the estate.

## 2. The Order is Supported by Adequate and Admissible Evidence.

The Insurers further assert that the Bankruptcy Court entered the Order "without any evidence in the record either supporting cause for stay relief" (Chicago p. 21:6-7), that the evidence in support of the Order was inadmissible (*See e.g.*, Travelers Section IV), or that the many benefits of the Stipulation did not provide a "reasonable" basis for the Stipulation and Order (*See e.g.*, Travelers Sections III and V).  For example, the Insurers attempt to characterize the Fr. Summerhays Declaration filed in support of the Motion (A204-A206) as ". . . the only evidence introduced by the Debtor in support of the Motion. . .," (Chicago p. 19:20-21), as merely presenting conclusory and inadmissible hearsay (Chicago p. 12:14-15), or as failing to provide evidence that litigation of the Released State Court Actions would be helpful to resolving the Debtor's bankruptcy case (Travelers p. 12:21-24).

### a. The Stipulation Itself Justifies the Motion and the Order.

First and foremost, the Insurers inexplicably ignore the Stipulation itself submitted as evidence as part of Exhibit A to the Compromise and Relief from Stay

Motion (C001-C043) and further ignore the incorporation into the record in support of the Compromise and Relief From Stay Motion of all of the underlying pleadings, argument and evidence in support of the Injunction Motion (*See* C044-C048; see also R0127-R0130. This evidence includes but is not limited to the pending litigation before the Bankruptcy Court in the Adversary Proceeding and the Monthly Operating Reports showing millions in professional fees already incurred. (R0192-R0795; and R0796-R1391). The Bankruptcy Court's Order refers to all proceedings over the two years this case has been pending as evidence in support of the Order granting the Motion. (A005).

The Insurers ignore the reality that Judge Montali found to be true: the Stipulation strikes a careful balance among the interests of the Debtor's estate in preserving insurance and other resources in enjoining the dozens of Affiliate State Court Actions, on the one hand, and the interests of the Committee and the Survivors in allowing a small number (five) of Survivor Actions to proceed to trial. The Debtor filed the Adversary Proceeding and the Injunction Motion because the state court judge presiding over the coordinated proceeding requested clarification on the scope of the Automatic Stay. (*See* C224-C225, C920). This was addressed in the *Declaration of Paul Gaspari* and Exhibits A and B, incorporated therein, filed in support of the Injunction Motion, including:

> "On March 27, 2025, Judge Chatterjee issued a written order for the March 26 Case Management Conference, stating, in part: "Defendants who wish to seek clarification on this issue [**whether an automatic stay regarding a debtor defendant applies to non-debtor defendants**] from a bankruptcy court where a defendant in this JCCP has filed a petition seeking bankruptcy protection **shall file a request for clarification within the next 30 days…**" [C920, ¶ 11] (emphasis added).

Subsequently, and during the mediation of this Bankruptcy Case, the Debtor was able to reach a compromise with the Committee and the Survivor Plaintiffs, whereby, under the Stipulation, the operational burden of releasing five cases was

considered tolerable, under the circumstances and in light of the likely alternatives absent a compromise.[4]   The terms of the Stipulation, including the selection of the five Released State Court Actions, were negotiated in mediation.  (C224-C225).

Among the other benefits of the Stipulation is that it continues the Automatic Stay's protection of the Debtor's estate from any enforcement remedies for any judgments that might be entered against the Debtor in those five actions by lifting the stay for the five Survivor actions to be litigated and tried to judgment, but not collectible against assets of the estate or the Non-Debtor Affiliate co-defendants.[5]   As further noted above, this Stipulation puts to rest the Adversary Proceeding and the Injunction Motion, which have been heavily litigated and would otherwise detract from the resolution of this case through the mediation.  Thus, the Stipulation and relief from the Automatic Stay include the following major benefits:

- It resolved the pending hotly contested Adversary Proceeding between the Debtor and the Committee over whether the Automatic Stay should be extended to the Non-Debtor Affiliates.

- It continued a stay of proceedings for the dozens of actions pending against the Non-Debtor Affiliates other than the limited five Released State Court Actions.

- It protected the Debtor's insurance assets from being depleted by the release of all Affiliate State Court Actions.

---

[4]     Of course, if the Court were to grant the Injunction Motion in full as requested, there would be no need for a compromise.  However, given the risks and damage to the estate and mediation process that would occur had the Court not granted the Injunction Motion in full, the Debtor viewed the compromise to be the best course of action.  (*See generally* C49-C51).

[5]     As noted above, this continued stay did not release or insulate the Debtor or the Non-Debtor affiliates from any liability.  It only continued the stay of enforcement so that the Debtor can have the breathing room to confirm a Chapter 11 bankruptcy plan of reorganization.

- It provides a tool that the Parties all determined could be helpful towards the shared goal of reaching a successful Mediation.

- By resolving the Adversary Proceeding and facilitating the mediation, the Stipulation provides an opportunity to minimize the substantial professional fees and costs of administration of the bankruptcy estate.

The Stipulation does not require the Debtor to pay any monies and does not require the Debtor to give any release. Each of these benefits alone would provide cause to modify the Automatic Stay.

The Insurers attempt to brush aside the voluminous evidence of the costs, risks and burdens from the pending Adversary Proceeding as beyond the Bankruptcy Court's ability to consider or by asserting that Judge Montali did not grant the Debtor's request for judicial notice. See e.g. Chicago p. 20:16-22; Travelers p. 23. But this argument too must fail. First, as noted above, the Debtor incorporated that evidence in support of the Motion, not just as judicial notice. (R0123-R0126). Second, Judge Montali was not compelled to evaluate the Motion in a vacuum and clearly took judicial notice of the matters requested by the Debtor. He has overseen this case for over two years and has first-hand judicial oversight of the Adversary Proceeding and the evidence submitted therein. Because the Court has presided over this bankruptcy case and the related adversary proceedings, it may call upon its general familiarity with the issues and proceedings involved in disposing of the issues. *See In re Coast Investors, Inc.,* 388 F.2d 622, 627 (9th Cir. 1968) (the appellate court gave due consideration to the lower court's knowledge of the administration of the estate and its familiarity with the course of the proceedings in fixing fees); *In re Rauch,* 110 B.R. 467, 474 (Bankr. E.D. Cal. 1990) (in deciding a trustee's fee, a bankruptcy court may rely on its review of the nature of the case and its familiarity with the trustee's performance of his fiduciary duties). Thus, Judge Montali was fully empowered to consider, for example, the Gaspari Declaration

24

submitted in support of the Debtor's Injunction Motion, which details the risks faced by the Debtor and the benefits of the Stipulation.

Travelers further attempts to avoid all of these reasonable justifications for the Stipulation and Order by pointing to additional discussion regarding matters that it says were not sufficiently addressed in the Motion or Fr. Summerhays Declaration such as further detail about why the specific five Released State Court Actions were selected, why the mediation would benefit from the Released State Court Actions, why the mediation would not be successful without the release of the five Released State Court Actions.  See Travelers, p. 21-23.  Of course, the parties and Judge Montali could have spent endless hours and briefing discussing further detail about every nuance of every potential benefit or burden.  But that would not be productive and was not necessary here.  The Fr. Summerhays Declaration, the Stipulation, the Motion, and the Order all set forth and recognized the fundamental benefits outlined above that would help resolve this Chapter 11 Bankruptcy case which has been pending for over two years without a resolution under the status quo that the Insurers want to preserve.

Thus, separately and together, the evidence in support of the Motion and the Order is overwhelming.  The Insurers' asserted lack of evidence and asserted lack of reasonable basis for supporting the Stipulated Order simply does not hold water.

> **b. The Fr. Summerhays Declaration and Other Supporting Evidence Support Judge Montali's Discretion to Issue the Order**.

Travelers, for the first time on appeal, objects to the admission of the Fr. Summerhays Declaration on the grounds of hearsay.  See Travelers p. 21:14-17. However, Travelers did not assert a hearsay objection to the Fr. Summerhays Declaration in its opposition to the Motion.  Since Travelers failed to preserve this

objection for appellate review, the issue may, at best, be reviewed for plain error.[6] *See Morgan v. Woessner,* 997 F.2d 1244, 1260 n. 18 (9th Cir. 1993) ("[A] party fails to preserve an evidentiary issue for appeal not only by failing to make a specific objection, but also by making the wrong specific objection"); *see also Milton H. Greene Archives, Inc. v. Julien's Auction House Ltd. Liab. Co.*, 345 F. App'x 244, 248 (9th Cir. 2009) (deeming the issue **waived** and declining to address it since Archives did not object (on hearsay grounds) to the testimony regarding the availability of Marilyn Monro images on various internet sites") (**emphasis added**); *cf. United States v. Derrick*, 1991 U.S. App. LEXIS 3238 (9th Cir. 1991) (reviewing a Fed. R; Evid. 403 argument for plain error because it was not raised at the lower court).  Plain error is "(1) error, (2) that is plain, and (3) that affects substantial rights." *United States v. Cotton*, 535 U.S. 625, 631, 122 S. Ct. 1781, 152 L. Ed. 2d 860 (2002) (quoting *Johnson v. United States*, 520 U.S. 461, 466-67, 117 S. Ct. 1544, 137 L. Ed. 2d 718) (1997)).

In any case, and even under the plain error standard, the statements in Fr. Summerhays' Declaration were not hearsay.  The statements were based on Fr. Summerhays' personal knowledge and observations.  Travelers' argument that the Fr. Summerhays Declaration "improperly stated legal conclusions, not facts" similarly fails.  To the extent the declaration included his opinions, which are not statements of fact offered for the truth of the matter asserted, such statements were properly offered to consider the context of the Stipulation and are routinely considered by bankruptcy courts in evaluating motions.  The Bankruptcy Court in a later order that denied the Insurers' motion for stay pending appeal stated, "[d]espite protestation that the court

---

[6]    Travelers improperly attempts to shift responsibility to the Bankruptcy Court for its failure to cross-examine Fr. Summerhays. Travelers, p. 3: 1-5.  Because the Motion was a contested matter, Travelers had the right to seek discovery under Bankruptcy Rule 9014(c)(1).  Having declined to exercise that right, Travelers cannot now complain that they lacked an opportunity to cross-examine Fr. Summerhays.

allowed conclusory statements to lead to factual conclusions," "it did not do so." (A414). Indeed, the Bankruptcy Court observed that "this court and any court can tell the difference between facts and legal conclusions and consider lay opinions as appropriate." *Id*.

Finally, even without the benefit of Fr. Summerhays' testimony, other evidence in the record was sufficient to show that the compromise was fair and equitable, in the best interests of the estate, and reasonable. Indeed, the notice of hearing incorporated all of the evidence, pleadings and arguments in the Adversary Proceeding, the Injunction Motion (including supporting declarations and exhibits), and the Declaration of Fr. Summerhays, and it is well settled that the bankruptcy court may take judicial notice of its "files and records in order to explain the history of the case, to address certain procedural aspects, and to place the evidence in appropriate context with events in the case and adversary proceedings." Fed. R. Evid. 201, *see Gugino v. Clark (In re Clark)*, 525 B.R. 442, 449 (Bankr. D. Idaho 2015) (referencing Fed. R. Evid. 201); see also R0123-R0126. Travelers' argument that "there is no basis for this Court to conclude that the bankruptcy court ever considered the docket items for which judicial notice was sought," ignores the fact that the Bankruptcy Court took into consideration "all of the proceedings had before the Court,"[7] (A005) and the merits of the parties briefing, which it reiterated in its later order denying the Insurers' motion for stay pending appeal. It similarly ignores the fact that the court "*must"* take judicial notice if a party requests it and the court is supplied with the necessary information under Fed R. Evid. 201(c)(2).

Travelers also argues, for the first time on appeal, that the statements within the documents for which the Debtor had requested judicial notice constituted

---

[7]    A similar argument was made by Chicago that the "Debtor cannot salvage the record by pointing to the RJN, which the bankruptcy court never granted." Chicago p. 20:16-17.

inadmissible hearsay. *See* Travelers p. 23:23-23. Again, this issue was waived by Travelers' failure to object and, in any event, such statements within those documents are not hearsay. *See, e.g.*, *United States v. Whitman,* 771 F.2d 1348, 1352 (no hearsay problem because statements were introduced for the purpose that they were made, not for the truth of the matter asserted); *United States v. Gadsan*, 763 F.3d 1189, 1212 (9th Cir. 2014) (same); *see also* A214-A243. Indeed, the statements contained therein were not offered for the truth of the matter asserted, but to demonstrate the nature of the parties' positions, the posture and complexity of the litigation, and that the litigation was reasonably expected to be contentious and costly given the volume and scope of the briefing, rendering the likelihood of success uncertain.

### D. The Insurers' Objections Regarding the Selection of the Released State Court Actions Do Not Warrant Reversal.

The Insurers further attempt to challenge the Order by asserting that the Committee unliterally selected the Released State Court Actions (*see e.g.* Chicago p.1:24 to 2:4) and/or that the released cases are not sufficiently representative to be "bellwether" cases for the other abuse claims (*see e.g.* Travelers p. 24-26). This objection is a red herring. Contrary to the Insurers' mischaracterization, the Committee did not unilaterally select the Released State Court Actions as they are included in the joint Stipulation entered by the Committee, the Survivors, and the Debtor. Thus, the Bankruptcy Court approved a joint stipulation, not a unilateral request. The Bankruptcy Court saw through this objection specifically stating the Committee did not unilaterally select the test cases in its Docket Text Order. (A002). And, regarding the supposed "bellwether" issue, the Insurers did not even attempt to show how or why the five cases, negotiated by the Parties with the assistance of the mediators, are inappropriate. They offered no evidence, nor argument explaining how the cases are not representative and just complained about the selection. The Bankruptcy Court recognized that it should not embark on a process to select different cases than were selected by the Parties with the assistance of the Mediators and further

recognized that this issue was irrelevant, stating that, "[t]here was no burden for the Debtor or Committee to show that these cases were representative of most other lawsuits. This was a compromise…" (A414). Judge Novack in the *In re Roman Catholic Bishop of Santa Rosa* case similarly rejected this argument because it was not the primary function of the Motion. (*See* R1392-R1550; *see also* C225.)

Travelers argues that the released cases were not properly selected; however, this position effectively seeks a rewrite of the Stipulation. (*See* A011 at ¶ 3) (providing that, "[a]attached as Exhibit C is a list identifying 5 state court actions…to be released from the Stipulated Stay Injunction that shall proceed to trial…"); *see also* Travelers Section V, p. 24. A bankruptcy court cannot rewrite the agreement, and by doing so, approve terms that differ from those to which the parties agreed. *See In re Arkoosh Produce, Inc.*, 2003 Bankr. LEXIS 2222, *28 (Bankr. D. Idaho 2003) (recognizing that to allow courts to effectively rewrite the terms of settlement agreements is contrary to the principle that courts should not substitute their preferences for the trustee's business judgment); (*see also*, R1394-R1550) ("It's their stipulation. It's not my stipulation. Their stipulation is this is what we want. Please grant relief from the automatic stay to allow these things to occur. And you're right. I can say, okay I'll do X, I'll do Y, and they can say, no, no, thank you. And then we're back to square one…").

Again, without providing any evidence, Travelers boldly asserts that "the only possible justification for allowing [f]ive cases to proceed immediately in the State Court, while more than 500 other claims remain subject to the automatic stay for months or years, is that the Five Cases will somehow serve as "test cases…" *See e.g.*, Travelers p. 24:11-13. However, their argument ignores two crucial facts: (1) the Debtor entered into this compromise to prevent the significant disruption to the estate and the mediation process that could have occurred if the Injunction Motion had been denied, and (2) the Debtor and the Committee (likely the two most critical voices before the Court) believe the Stipulation serves a useful purpose. (C226).

29

1    Like Judge Montali and Judge Novack, this Court should not rewrite the

2  Stipulation and it certainly should not find that Judge Montali abused his discretion

3  in approving the Stipulation as presented.

4        **E. The Insurers' Objections to Lifting the Automatic Stay to Allow**
         **Abuse Claimants to Send Demand Letters to the Debtor Does Not**
5        **Warrant Reversal**

6

7        The Insurers further assert that the Stipulated Order should be overturned on

8  appeal because it lifted the Automatic Stay to allow the claimants to submit demand

9  letters to the Debtor.  *See e.g.*, Travelers p. 13:17-28.  This argument too must fail.

10 First, and most simply, the Insurers conduct their analysis as if this were the only

11 element of the Stipulation and the only effect of the Stipulated Order.  As noted above,

12 the Stipulation attempted to balance multiple interests and the Bankruptcy Court's

13 Order approving the Stipulation did the same.  Thus, the Insurers' criticism of the

14 Bankruptcy Court's findings as unsupported by evidence or not reasonably justified

15 is made in a vacuum that does not consider the Bankruptcy Court's approval of the

16 Stipulation as a whole, in its discretion.

17       Second, the Insurers objection—that modifying the Automatic Stay to allow

18 demand letters to be sent would negatively impact the mediation process—is

19 speculative and self-serving.  *See, e.g.*, Travelers p. 9:1-4.  The Insurers presented no

20 evidence to support their claim that sending demand letters would hinder the

21 mediation and serve no legitimate purpose in this case.  Moreover, it's axiomatic that

22 insurance carriers routinely request detailed information about cases within their

23 policy periods.  (C227).  Permitting individual demand letters for each plaintiff would

24 require plaintiffs to evaluate the settlement value of their case and provide a basis for

25 the demand.  This process should provide information to the Debtor and its Insurers

26 so that they may evaluate the settlement value of the cases in their policies.  Therefore,

27 the Insurers' assertion that currently available information is insufficient to respond

28

to such demand letters disregards the established procedure designed to provide that very information.

Third, the Automatic Stay was imposed by Bankruptcy Code Section 362(a) to provide the Debtor and its estate the breathing room need to confirm a Chapter 11 plan of reorganization.  The Automatic Stay does not extend to protect the Insurers, who are not bankruptcy debtors.  The Insurers' complaints that lifting the Automatic Stay may require them to perform their duties as insurers is hollow grousing as the Automatic Stay was not in place to protect the Insurers in the first instance.  That the Insurers may have tangentially enjoyed the benefit of the Automatic Stay by not having to address the Survivor's claims while the stay remained in effect is not relevant to the best interests of the Debtor, its bankruptcy estate, or the Survivor creditors.

Finally, permitting the Survivors to make settlement demands to the Debtor will not cause the Insurers any prejudice.  As Judge Montali recognized in his order denying the Insurer's Motion for Stay Pending Appeal, the Insurers will not suffer any harm by receiving demand letters as there is no requirement that the Insurers pay those demands unless the policies require them to do so.  (*See* A415).  To the extent that the Insurers want the stay to be lifted further, they can submit their own request to the Bankruptcy Court for further modification of the Automatic Stay. (A415).  This Court agreed in its own Order Denying Motion to Stay, wherein the Court found that "the insurers' concerns about responding to the demand letters hold little weight." [ECF 34, p.7:18].

### F. The Stipulation and Order Satisfy Any Settlement Approval Standards.

The Insurers further attempt to challenge the Order by asserting that Judge Montali did not consider the standards for approving a settlement and/or that he failed to properly apply the standards.  *See e.g.*, Chicago, Section II; Travelers p. 20:14-19.

31

1  Once again, the Insurers arguments ignore the language of the Order and the
2  overwhelming evidence in support of the Motion and Order.

3      To start, Federal Rule of Bankruptcy Procedure 9019 provides that the court
4  may approve a compromise or settlement on a noticed motion.  As noted in the
5  Motion, the Ninth Circuit has instructed that "[i]n determining the fairness,
6  reasonableness and adequacy of a proposed settlement agreement, the court must
7  consider:  (a) The probability of success in litigation; (b) the difficulties, if any, to be
8  encountered in the matter of collection; (c) the complexity of the litigation involved,
9  and the expense, inconvenience and delay necessarily attending it; (d) the paramount
10 interest of the creditors and a proper deference to their reasonable views in the
11 premises." *Martin v. Kane (In re A&C Properties)*, 784 F.2d 1377, 1381 (9th Cir.
12 1986).  The law favors compromise, and "as long as the bankruptcy court amply
13 considered the various factors that determined the reasonableness of the compromise,
14 the court's decision must be affirmed."  *Id*.  "Each factor need not be treated in a
15 vacuum; rather, the factors should be considered as a whole to determine whether the
16 settlement compares favorably with the expected rewards of litigation."  *Grief & Co.*
17 *v. Shapiro (In re W. Funding Inc.)*, 550 B.R. 841, 851 (9th Cir. BAP 2016), aff'd 705
18 F. App'x 600 (9th Cir. 2017).  It is important to note that in deciding whether the
19 proposed settlement meets the four-part *A&C Props* test, the proposed settlement
20 should be viewed as a whole and, consequently, approved or denied as a whole.  *In re*
21 *Arkoosh Produce, Inc.*, 2003 Bankr. LEXIS 2222, *28 (Bankr. D. Idaho 2003).  "To
22 do otherwise would allow courts to effectively rewrite the terms of settlements
23 contrary to the principle…that courts should not substitute their preferences for the
24 trustee's business judgment."

25     Contrary to the Insurers assertions, Judge Montali did consider and apply the
26 *A&C Properties* factors in granting the Motion.  Indeed, the Docket Text Order states:
27 "The motion is well-taken, easily satisfies the A & C test **by considering and**
28 **weighing the factors, as the court does independently here**, and represents a

needed, good faith settlement of a bona-fide dispute" (A002, (**emphasis added**)). And there was ample support for Judge Montali to reach this conclusion. To begin with, the Stipulation did not require the Debtor or the bankruptcy estate to release any claims or defenses, and it did not require the payment of any money. (A004-A040). Rather, as already noted above, it merely modified the Automatic Stay to allow the five Released Cases to proceed to trial and to permit claimants to submit settlement demands for the insurers' consideration while furthering the many important benefits outlined in Section VI(c) above. In short, the Debtor was able to reach a compromise that it considered tolerable, in light of the potential serious adverse alternatives that the Debtor faced without a compromise. (C229).

As set forth below and in the Motion, the *A&C Properties* factors support the Court's determination that the Stipulation is adequate, fair, and reasonable, and is in the best interests of the estate and creditors.

### 1. The Probability of Success in Litigation.

Given the inherent uncertainty for in the Debtor's dispute with the Committee over extension of the Automatic Stay in the Adversary Proceeding, this factor weighs heavily in favor of the approval. (C229). Although the Debtor remained confident in the merits of its position, there was no guarantee the Injunction Motion would succeed. (C229; R0011-R0012). The Injunction Motion and supporting evidence demonstrate the adverse impact on the estate if the approximately fifty-one (51) cases were allowed to proceed against the Non-Debtor co-defendants. (C229; C879-C1022; and R0011-R0012). Yet, bankruptcy courts in other diocesan cases, including the Bankruptcy Court, have shown a trend toward granting relief from the Automatic Stay in similar scenarios, a risk that was carefully weighed by the RCASF. *See* R0011-R0012 (granting in part certain trial-ready survivors relief from the automatic stay to pursue state court litigation); *see also The Roman Catholic Bishop of Oakland*, Bankr.N.D.Cal., Case No. 23-40523 ECF No. 2168 (granting the renewed motion of

the Official Committee Of Unsecured Creditors to lift the automatic stay to permit plaintiff's personal injury claims to proceed in state court).

### 2. The Difficulties, if any, in Collection.

This factor is not applicable.

### 3. The Complexity of the Litigation, and the Expense, Inconvenience, and Delay Attending it.

The expense, inconvenience, and delay that would ensue without the Stipulation supports approval of the Stipulation. Litigating the Adversary Proceeding involved the adjudication of complex legal and factual issues. Litigation also would divert the Debtor's attention from working on the resolution of its chapter 11 case. (*See* A205-A206, ¶ 5). Absent the Stipulation, the Debtor would be required to incur significant fees and costs in the Adversary Proceeding. (C230). Furthermore, if the Court were to have denied the Injunction Motion, litigating the 51 Affiliate State Court Actions on a piecemeal basis would cause the detriments and risks outlined in the Injunction Motion and supporting declarations. (C230, C879-C1022; and R0051-R0061). The estate had already incurred significant fees and costs early in the Adversary Proceeding, indicating a sufficient complexity and high likelihood that litigating the Adversary Proceeding would result in considerable administrative costs to the estate. (C230). Furthermore, throughout this case, the Debtor has emphasized its goal of negotiating a plan of reorganization as early as possible. (A146, ¶ 63). The Stipulation is consistent with that objective.

### 4. The Paramount Interest of Creditors.

The paramount interest of creditors is sometimes said to be the most significant factor supporting approval. The Committee joined the Motion (C52-C57), and no survivors opposed the Motion. (A002). Rather, a good number of survivors, and a good number of counsel for all survivors, approved the Stipulation. (A007-A024).

As set forth in the Declaration of Fr. Patrick Summerhays filed in support of the Motion, modifying the stay upon the limited terms set forth in the Stipulation, to

allow the **five** Released State Court Actions to go forward on a limited basis, dramatically alleviates the burden of litigation, and allows the Debtor, the Debtor's professionals, and many of the Non-Debtor Affiliates and their professionals, to focus their attention on the mediation, and on their collective efforts to reach a prompt consensual resolution of this Bankruptcy Case. (A205-A206, ¶ 5]. Litigation of the approximately fifty-one (51) Affiliate State Court Actions on a piecemeal basis would result in all of the detriments and risks outlined in the Injunction Motion and supporting declarations, including substantial concerns about eroding the estate's insurance coverage by cases going forward against co-insureds without the Debtor. (C230, C879-C1022; and R0051-R0061).

Having weighed the four factors set forth by the Ninth Circuit in *A&C Properties*, the Bankruptcy Court's determination that the Stipulation is fair and equitable, and that approval of the Stipulation is in the best interest of the estate and its creditors, cannot be reversed as an abuse of discretion.

### G. The Bankruptcy Court Applied Appropriate Procedures to Decide the Motion.

The Insurers object to the Court's management of its docket by complaining that the Court decided the Motion without oral argument and a live hearing for cross-examination, or a sur-reply brief from the Insurers. *See e.g.* Chicago p. 29:15-20, *Travelers* p. 21:14-17, p. 28:22-29:3. These procedural arguments also must fail on appeal. There is no requirement that the Court hold oral argument, take live testimony, or provide a party opposing a motion with a second opportunity to object to the motion after the movant's reply brief. The Court has the discretion to manage its own docket and motion proceedings.

This is particularly true where, as here, there was no dispute as to any material facts. *See e.g. In re Brown*, 606 B.R. 40, 50 (B.A.P. 9th Cir. 2018) (finding that the Browns' procedural arguments that factual findings and an evidentiary hearing were required lacked merit, because "there were no disputed material issues of fact"). The

Insurers' attempt to manufacture disputed issues of fact but none of those facts were material. The reality was that the Court could and did grant the Motion even assuming those disputes might have been decided in favor of the Insurers because the material facts all supported granting the Motion i.e. the numerous benefits and evidence detailed in Section VI(C)(2)(a) and (b) above.

This Court cannot find an abuse of discretion in the Bankruptcy Court's entry of its Order after briefing by the Debtor, the Committee, and the Insurers.

### H. The Bankruptcy Court had Jurisdiction and Authority to Issue the Order.

LMI seeks reversal by asserting that the Bankruptcy Court lacked jurisdiction to enter the Order and/or that the Motion seeking relief from the Automatic Stay was a non-core proceeding that should have been presented to the District Court with proposed findings and recommendations. *See* LMI Section VIII(C). LMI cites to several cases, including the seminal bankruptcy jurisdiction case *Stern v. Marshall*, 564 U.S. 462 (2011), to declare that a bankruptcy court may hear and enter final judgments in all core proceedings arising in or under title 11, but not on non-core claims. While jurisdiction is certainly an important issue, and the distinction between what constitutes a core proceeding vs. a non-core proceeding can present challenging distinctions, this case does not. Whether to grant or deny a request to modify the Automatic Stay is as "core" as any issue can be. The Automatic Stay does not exist outside of bankruptcy. It only exists by virtue of Bankruptcy Code Section 362(a) and arises upon the Debtor filing its bankruptcy petition. Relief from the Automatic Stay is governed by Bankruptcy Code Section 362(d). Thus, whether the Automatic Stay should be modified unquestionably arises under or in a proceeding under title 11 of the United States Code i.e. a bankruptcy proceeding. *See* 28 U.S.C. § 157(b)(2)(G); *see also Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1081 (9th Cir. 2000) (stating that "Congress has declared that actions to "terminate, annul, or modify" the automatic stay are core bankruptcy proceedings") (citing 28 U.S.C. §

157(b)(2)(G)). Thus, LMI's asserted jurisdictional challenges must be summarily denied.

### I.  The Insurers' Self-Focused Objections do Not Warrant Reversal.

The Insurers further seek reversal by asserting that the Bankruptcy Court did not consider the impact of the Order on the Insurers or that the Bankruptcy Court should have rewritten the proposed Stipulation to include additional provisions that the Insurers consider more reasonable or beneficial to them.  *See e.g.*, Chicago Sections II & III, Travelers Section III (asserting the Stipulation would not be reasonable or helpful from the Insurers' view).

These complaints do not provide a basis for an appellate court to reverse the Order as an abuse of discretion.  Chicago's assertion that the Judge Montali did not consider the impact of the Order on the Insurers (see Chicago p. 22) is contradicted by the Judge Montali's statements in the Order.  The Docket Order reflects the Bankruptcy Court's evaluation of the evidence and specifically includes a finding that the Insurers cannot be surprised or harmed by the order or the limited relief from stay granted to the claimants.  (A002).  Thus, Judge Montali considered the impact of the Order on the Insurers and determined that impact to be negligible.  *Id*.  Further, Judge Montali explained in his order denying the Insurers' first motion for a stay pending appeal, that the Bankruptcy Court did take the potential impact of the Stipulation on the Insurers into consideration and determined that there would be no material impact and, in any event, any impact would pale in comparison to the benefits of the Stipulation and Order.  (A410-A417).

The Insurers provide no evidence in taking the presumptuous position that the Bankruptcy Court did not understand the Insurers' opposition to the Motion or that the Bankruptcy Court abused its discretion in weighing the balance of interests.  Even if an appellate court were to assume that the Insurers being asked to perform their contractual duties under their insurance policies constitutes some impact to the Insurers, there is no basis for that appellate court to find that the Bankruptcy Court

abused its discretion in weighing the interests advanced by the Stipulation and the Stipulated Order as being more beneficial to the Debtor's estate and the parties in interest.  The Insurers have not filed proofs of claim in this case and are not creditors of the Estate.  The Insurers have further failed to explain how being called to perform their duties as insurers causes them any harm.  (A415).  While a party performing its duties under a contract may require some effort, the Insurers offer no evidence or explanation of how that effort could be considered "harm."

The Insurers attempt to avoid this reality and inflate their significance by referring to rulings made by Eastern District Court Judge Shubb regarding Insurer standing to challenge a relief from stay order.  *See e.g.*, Chicago p. 2-3.  This challenge misses the mark for multiple reasons.  First, aside from not being binding on this Court, Judge Shubb only found that the Insurers were sufficiently interested in the debtor's bankruptcy case to have jurisdictional standing to appeal the bankruptcy court's order granting relief from the Automatic Stay in the Roman Catholic Bishop of Sacramento bankruptcy case.  Merely finding standing to appeal does not provide any basis for finding that the Insurer's asserted interests are paramount to the interests of the Debtor, its estate, and the interests of creditors.  Second, insurer standing to appeal does not provide a basis for the Bankruptcy Court or the District Court to rewrite the Stipulation.  The Motion presented a Stipulation negotiated through mediation.  (C224-C225).  The Bankruptcy Court did not write the Stipulation, and it cannot be found to have abused its discretion for refusing the Insurer's request that the Bankruptcy Court rewrite the Stipulation which would have risked upsetting the negotiated agreement.  Likewise, this Court should decline the Insurers' request for this Court to modify the Stipulation and Order to include the unnecessary additional self-serving provisions requested by the Insurers.

Thus, the Insurers' attempt to put their self-interests above the interests of the Debtor, their insured, and the creditors of the Debtors estate as represented by the Committee must be denied.

**J.  The Order Does Not Violate Bankruptcy Code Section 1123.**

Travelers argues that "[t]he Stipulation improperly injected discrimination into the plan confirmation process."  *See* Travelers, Section II.  Travelers asks this Court to look into the future and determine the Debtor's not yet filed potential Chapter 11 plan of reorganization will violate Bankruptcy Code Section 1123 provisions for classification and treatment of claims.  The Debtor understands that the Committee will respond to this argument, and the Debtor incorporates that response by reference to avoid duplication.  Suffice it to say that neither the Stipulation nor Order set forth any Chapter 11 plan or classification of claims that may be included in a plan to be filed in the future, so this argument is completely without merit.

Moreover, this argument ignores the second clause of section 11234(a)(4) of the Bankruptcy Code, which states that disparate treatment of a claim is permissible if the holder of that claim "agrees to a less favorable treatment."  11 U.S.C. 1123(a)(4).  Therefore, even if the Stipulation did by some chance treat certain claims less favorably, *all* other survivor claimants who filed actions that included claims against the Non-Debtor Affiliates, have agreed to such "less favorable treatment" by entering the Stipulation.  Travelers' reliance on *In re Diocese of Camden, In re Archbishop of Agaña, and In re the Roman Catholic Church of the Archdiocese of New Orleans*, is misplaced as, those cases involved stipulations not signed by any individual survivors or their counsel (*Camden*), uncertainty about which cases would receive stay relief (*Agaña*), or a motion brought by only a handful of claimants (*New Orleans*).  Similarly, Travelers' purported concern for the other Survivor plaintiffs (see Travelers p. 13-14 asserting the Released State Court Actions will get a head start on other Survivors) is not a reason to reverse the Order.

1

## VII.  CONCLUSION

The Debtor respectfully requests that this Court dismiss Appellants' appeal from the Order and that it affirm the order appealed from.

Respectfully submitted,

Dated: January 6, 2026    FELDERSTEIN FITZGERALD WILLOUGHBY PASCUZZI & RIOS LLP

By:  */s/ Paul J. Pascuzzi*
Paul J. Pascuzzi
Jason E. Rios
Attorneys for The Roman Catholic
Archbishop of San Francisco

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1.      This document complies with the type-volume limit of Fed. R. Bankr. P. 8015(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. Bankr. P. 8015(g), this document contains 12,948 words.

2.      This document complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6) and Civil L.R. 3-4(c)(2) because this document has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: January 6, 2026    FELDERSTEIN FITZGERALD WILLOUGHBY
             PASCUZZI & RIOS LLP

          By: */s/ Paul J. Pascuzzi*
             Paul J. Pascuzzi
             Jason E. Rios
             Attorneys for The Roman Catholic
             Archbishop of San Francisco