UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO | Case Nos. 25-cv-08563-RFL (lead case), 25-cv-08566-RFL, 25-cv-08568-RFL<br><br>**NOTICE OF QUESTIONS FOR HEARING**<br><br>Re: Dkt. Nos. 60, 61, 62 |
| WESTPORT INSURANCE CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO,<br><br>Defendant. | Case No. 25-cv-09314-RFL<br><br><br><br>Re: Dkt. No. 47 |
| ST. PAUL FIRE AND MARINE INSURANCE COMPANY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO,<br><br>Defendant. | Case No. 26-cv-01138-RFL<br><br><br><br>Re: Dkt. No. 1 |

The Court requests that the parties be prepared to provide their views on the following summary of its tentative views at the hearing on the bankruptcy appeals, motion to stay in the Westport case, and motion to withdraw the reference in the St. Paul case, all of which are set for

1

April 21, 2026, at 2:00 p.m., in Courtroom 15 at the San Francisco Courthouse.

**Bankruptcy Appeals.**   The Court is tentatively of the view that the bankruptcy court's decision should be affirmed, for reasons similar to those stated in *Interstate Fire & Cas. Co. v. Roman Cath. Bishop of Sacramento*, No. 2:25-CV-02262-WBS, 2026 WL 508073 (E.D. Cal. Feb. 24, 2026) and *In re Roman Cath. Bishop of Oakland Bankr. Automatic Stay Appeal*, No. 25-CV-06836-JSC, 2026 WL 936942 (N.D. Cal. Apr. 7, 2026).

The bankruptcy court did not abuse its discretion in finding cause to lift the automatic stay.  The order "determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted."  (Dkt. No. 61-1 at 9.)[1]  That ruling incorporated by reference and adopted the legal standard and facts as set forth in the Roman Catholic Archbishop of San Francisco's ("RCASF") motion, including the associated request for judicial notice.  The *Curtis* factors were analyzed in the motion, and in any event, are "discretionary considerations a bankruptcy court <u>may</u> employ when determining cause."  *See Interstate*, 2026 WL 508073, at *2.

The bankruptcy court reasonably applied this standard to find cause to partially lift the automatic stay.  RCASF faced the risk of 51 cases proceeding against its affiliates, which would require it to incur significant costs to participate in discovery and would likely drain insurance assets from being available for the remaining cases against RCASF.  Additionally, it faced litigation risk from judgments issued against its affiliates if it is later found to be an alter ego or in privity with those affiliates.  By implementing the agreement to allow five cases to proceed against RCASF together with its affiliates in exchange for staying the remainder of the affiliate cases, the bankruptcy court reasonably acted to promote an "expeditious and economical determination of litigation" (*Curtis* factor 10) and the "partial or complete resolution of the issues" (*Curtis* factor 1).  *See Interstate*, 2026 WL 508073, at *4; *In re Roman Cath. Bishop of Oakland*, 2026 WL 936942, at *7.  It is beside the point whether the five released cases were truly representative.  Even if the trials selected by the survivors were their strongest cases, a

---

[1] All citations to page numbers in filings on the docket refer to ECF pagination.

worst-case scenario for litigation exposure could reasonably be viewed as providing relevant information for settlement.  *See In re Roman Cath. Bishop of Oakland*, 2026 WL 936942, at \*7.  Nor does the maxim that cause is determined on a "case-by-case" basis impose a requirement that the bankruptcy court enter individualized findings for each case released from the automatic stay.  *See In re Tucson Ests., Inc.*, 912 F.2d 1162, 1166 (9th Cir. 1990).  In sum, the bankruptcy court did not abuse its discretion by finding cause to lift the automatic stay.

Furthermore, the order did not modify the insurance policies, so the bankruptcy court did not exceed its jurisdiction in granting relief from the automatic stay.  The order disclaimed that it would prevent a lien from attaching to the insurance policies, but it did not affirmatively authorize the attachment of such a lien.  Nor did the demand letter process modify the insurance policies, since the insurers "remain free to assert whatever coverage defenses and policy limitations exist."  *See Interstate*, 2026 WL 508073, at \*6.

The bankruptcy court also did not abuse its discretion in weighing the order's impact on non-settling parties.  The bankruptcy court's text order expressly applied the "A & C test" under *In re A & C Props.*, 784 F.2d 1377, 1381 (9th Cir. 1986).  (Dkt. No. 61-1 at 6.)  In doing so, it considered the Insurers' interests and found they had shown "no meaningful prejudice."  (*Id.*)  That was a reasonable conclusion.  It is "common practice for bankruptcy courts to approve stay relief that allows for attachment to insurance policies."  *See Interstate*, 2026 WL 508073, at \*5 (citations omitted).  That does not mean that RCASF's non-insurance assets are entirely walled off from satisfying survivors' claims.  Instead, the insurers face initial liability, followed by RCASF's non-insurance assets through the plan confirmation process.  Though this could change some incentives in the present moment, the fact remains that both insurance and non-insurance assets will eventually have to satisfy claims.  The bankruptcy court reasonably concluded that any such prejudice to the Insurers was outweighed by the risk that RCASF would have to participate in additional litigation and the risk of that litigation unequally diminishing assets for creditor recovery.

The bankruptcy court did not improperly discriminate among claimants either.  Section

1123 applies to plan confirmation, not modification of the automatic stay. *See In re Roman Cath. Bishop of Oakland*, 2026 WL 936942, at *8. Even if it applied here, "the stay relief does not inevitably prejudice claims in a hypothetical future plan," because the claimants in the five cases proceeding to trial will still not be able to enforce any judgment obtained against RCASF's non-insurance assets, and the bankruptcy court still retains the ability to balance the interests of those claimants with the others in developing the plan as to those assets. *See id.* Indeed, none of the remaining claimants appears to have objected to this arrangement, and the Committee representing them agreed to the stipulation.

Finally, the bankruptcy court complied with all procedural requirements. A hearing on the motion was not required. *See* Bankr. L.R. 9013-2(a), 9014-1(b)(1)(A). Nor was the bankruptcy court required to preemptively offer the Insurers an opportunity to submit a surreply. Similarly, the bankruptcy court was not required to make findings of fact and conclusions of law under Fed. R. Civ. P. 52. *See Interstate*, 2026 WL 508073, at *4 n.2. And since "a complete understanding of the issues may be had [from the record] without the aid of separate findings," formal findings are unnecessary for appellate review. *See In re Leavitt*, 171 F.3d 1219, 1223 (9th Cir. 1999) (citation omitted).

***RCASF's Motion to Stay in the Westport Case.*** The Court is tentatively of the view that the motion should be granted in part and denied in part. As this is a procedural matter, federal law governs. The *Landis* factors focus on: (1) "possible damage which may result from the granting of a stay"; (2) "the hardship or inequity which a party may suffer in being required to go forward"; and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (citation omitted).

Westport has not shown that it could suffer material damage from a stay. Courts generally find that an insurer's advancement of defense costs "is part of an insurer's obligation and costs of doing business." *See, e.g.*, *RLI Ins. Co. v. ACE Am. Ins. Co.*, No. 19-CV-04180-LHK, 2020 WL 1322955, at *4 (N.D. Cal. Mar. 20, 2020) (citation omitted). Westport

distinguishes this case as involving an excess insurer and a bankrupt insured.  But that is not a persuasive basis to apply a different rule.  An excess insurer still has a duty to defend, even if that duty is contingent on exhausting the primary policy's limits.  And an insurer always faces the risk that an insured will become bankrupt, possibly preventing a complete recovery of any erroneously paid benefits.  Finally, that Westport might enter settlements without completely understanding the risk it faces is an ever-present concern in litigation and does not place this case in a different category.  *Cf. Lockyer*, 398 F.3d at 1112 ("[B]eing required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' . . . .").

Conversely, RCASF has shown it would suffer hardship unless most of Westport's claims are stayed.  Both California and federal courts acknowledge that simultaneous litigation of third-party actions and insurance coverage of those underlying actions is prejudicial because it allows the insurer to "join forces with the plaintiffs in the underlying actions as a means to defeat coverage," forces the insured to "fight a two-front war," and risks the unequal application of collateral estoppel.  *Montrose Chem. Corp. v. Superior Ct.*, 25 Cal. App. 4th 902, 910 (1994); *U.S. Specialty Ins. Co. v. Bell Painting*, No. 3:22-CV-03787-WHO, 2023 WL 5725582, at *4 (N.D. Cal. Aug. 9, 2023).  Westport agrees that its third, fourth, and sixth claims could cause this prejudice, but says its remaining claims would not.  (Dkt. No. 47-6 at 23–24.)

Litigating Westport's first claim would also prejudice RCASF, though.  Westport will have to show RCASF "knew or believed its conduct was substantially certain or highly likely to result in" Father Pritchard's abuse, not just that it "should have known."  *See Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal. App. 4th 715, 748 (1993).  Though Westport contends that this claim only requires considering the *Kavanaugh* jury verdict, the jury only determined that RCASF "kn[e]w *or* ha[d] reason to know" of Father Pritchard's abuse.  (*See* Dkt. No. 1-5 ¶ 30 (emphasis added).)  Thus, it seems almost certain that this claim will require Westport to present additional, highly prejudicial evidence.

By contrast, litigating Westport's second claim would not be prejudicial.  That claim centers on a settlement agreement between RCASF and several insurers (including Westport).

(*Id.* ¶¶ 56–58.)  Determining if that settlement agreement released Westport from defending or indemnifying certain claims would only require considering non-prejudicial issues of contract formation and enforceability, in addition to whether the claimants are related to those listed in the settlement and make claims "arising out of" acts of sexual abuse.  (*See id.*)

Westport's fifth claim concerns whether its excess coverage has been triggered yet. RCASF previously agreed that excess coverage had not been triggered yet, though it is not clear if it still has that view after the *John SF-1 Doe* settlement.  (Dkt. No. 47-9 at 13; Dkt. No. 61 at 3–4.)  If most of Westport's other claims are stayed, this claim should be stayed too, given the likelihood of triggering such coverage in the future.

Finally, the orderly course of justice will be advanced by a stay.  The state court findings in the underlying actions will bear on the issues in this case, simplifying the issues to be adjudicated.  *See RLI*, 2020 WL 1322955, at *7–8.

In sum, the case should be stayed except as to the second claim.  That includes a stay of discovery.  The prejudice suffered by RCASF would be caused just as much by discovery as by motions practice and trial.  For example, an insurer's deposition of individuals working for RCASF would raise similar problems and expenses as those raised by an insurer's examination of those individuals at trial.  The court's decision in *Diocese of Oakland* does not counsel otherwise, because it arose in a distinctly different factual context: the Diocese moved to stay its own declaratory judgment action, based on the pendency of bankruptcy plan confirmation proceedings and after discovery had already opened.

With respect to the duration of the stay, the prejudice to RCASF appears likely to continue until completion of *all* underlying actions that implicate Westport's policy.  Even if one underlying action is done, the coverage dispute about that action would likely involve evidence concerning RCASF's knowledge and intent that would be prejudicial as to the remaining pending underlying actions.  Though Westport would not be precluded from seeking to lift the stay earlier if appropriate, it seems unlikely that such a motion will succeed until the completion of all underlying actions.

Since the second claim would proceed, a case schedule would be set for that claim. The parties' proposed schedule in their case management statement seems appropriate.

***Motion to Withdraw Reference in the St. Paul Case.*** The parties' case management statement indicates that they believe the reference has already been withdrawn, though no such order appears to have been formally entered. In any event, withdrawing the reference is appropriate. *See Westport Ins. Corp. v. Off. Comm. of Unsecured Creditors of Roman Cath. Archbishop of S.F.*, No. 25-CV-09314-WHO, 2025 WL 3545838, at *1 (N.D. Cal. Dec. 10, 2025); *In re Roman Cath. Bishop of Oakland*, No. 24-CV-00709-JSC, 2024 WL 1160907, at *1 (N.D. Cal. Mar. 18, 2024). The motion is timely, as it was filed 12 days after filing the complaint. There is also cause, as this is a non-core proceeding and there is substantial overlap with the Westport case.

The parties should be prepared to address the following case management proposal: Within 21 days after the entry of an order on the Westport motion to stay, Plaintiffs shall file any amended complaint, and within 28 days after that deadline, either RCASF shall file a motion to stay or the parties shall file a stipulation and proposed order staying some or all of the claims and proposing a case schedule for any claims that will not be stayed.

* * *

The parties should be prepared to address the Court's tentative reasoning regarding their respective cases at the hearing. The parties **shall not** file written responses to this Notice of Questions.

**IT IS SO ORDERED.**

Dated: April 17, 2026

RITA F. LIN
United States District Judge

7